# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

IN RE: CROP PROTECTION PRODUCTS
LOYALTY PROGRAM ANTITRUST
LITIGATION

This document relates to:  ALL ACTIONS

No. 1: 23-md-03062-TDS-JEP

**BRIEF IN SUPPORT OF MOTION TO APPOINT DICELLO LEVITT LLC AND
PRETI, FLAHERTY, BELIVEAU & PACHIOS, CHARTERED, LLP
AS INTERIM CO-LEAD CLASS COUNSEL AND
MULLINS DUNCAN HARRELL & RUSSELL PLLC AS LIAISON COUNSEL**

DiCello Levitt LLC, Preti, Flaherty, Beliveau & Pachios, Chartered, LLP and Mullins Duncan Harrell & Russell PLLC (together, "Movants") respectfully apply to this Court for appointment of DiCello Levitt and Preti Flaherty as interim co-lead class counsel and Mullins Duncan as liaison counsel. We submit that our appointment is in the best interest of the proposed class under Federal Rule of Civil Procedure 23(g).

*First*, DiCello Levitt and Preti Flaherty are two of the nation's leading antitrust firms with decades of antitrust and complex class action litigation experience drawn from former federal and state antitrust enforcers and attorneys from the antitrust practices at top defense and plaintiff firms. And they have the results to show for it—billions of dollars in settlements on behalf of the classes they have represented as co-lead counsel in antitrust class actions. Importantly, the firms are recognized trial firms; indeed, DiCello Levitt was co-lead counsel in one of the few antitrust class actions to have gone to trial over the last several years. Both firms are regularly appointed by federal courts nationwide to lead, co-lead, or serve on leadership committees, including in some of the largest antitrust cases ever litigated. Also, the two firms have worked seamlessly together on antitrust class actions in the past. They are consummate professionals with distinguished reputations in the plaintiffs' antitrust bar, and the class will be well-served under their leadership.

*Second*, Allison Mullins and Cooper Harrell of Mullins Duncan in Greensboro— proposed liaison counsel—need no introduction in this District. Mullins Duncan, a highly-regarded litigation boutique, will be an essential part of the team in this case.

2

Often, liaison counsel plays only a marginal, ministerial role. Not so here. Movants have been working extensively together since the inception of the case, and Ms. Mullins and Mr. Harrell have provided invaluable knowledge and expertise on District and Court rules, practices, and procedures. But that is just the start—if Movants are selected to lead the case, Mullins Duncan will play an integral role in strategy, discovery, trial preparation, and the trial itself. The class will greatly benefit from Mullins Duncan's substantive multi-district, complex litigation experience and the well-earned reputations of Ms. Mullins and Mr. Harrell in this District.

*Third*, Movants offer a lean structure of two interim co-lead class counsel, following the trend by courts today, which will increase efficiency and substantially reduce costs for the proposed class by minimizing duplication and inefficiencies that plague larger structures. Efficiency is an important concern in appointing interim class counsel. *See Manual for Complex Litigation*, Federal Judicial Center § 10.221 (4th ed. 2004) ("*Manual*") (recognizing that the most important factor in leadership appointments is "achieving efficiency and economy without jeopardizing fairness to the parties"). Reduced costs for the proposed class can mean more money in the pockets of farmers if there is a recovery; indeed, maximizing recovery for the class is a critical function of interim class counsel, and Movants take this responsibility seriously.

*Fourth*, Movants distinguish themselves by their extensive agricultural industry and generic products expertise from which they can draw to effectively litigate the action. DiCello Levitt boasts an agriculture and biotechnology practice which has achieved

3

billions of dollars in settlements on behalf of U.S. farmers in several of the largest and most successful agriculture cases in history involving the contamination of the U.S. rice supply on behalf of long-grain rice farmers (settled), the contamination of the U.S. corn supply on behalf of corn farmers (settled), an herbicide that killed millions of non-targeted trees on behalf of property owners (settled), patent infringement of crop inputs (winning fourth largest patent infringement jury verdict in U.S. history), and the increased risk of Parkinson's disease from exposure to the herbicide Paraquat (ongoing). And both DiCello Levitt and Preti Flaherty have represented farmers in an antitrust class action alleging price-fixing of fresh and processed potatoes (settled).

In addition, among the firms applying to lead this case, only DiCello Levitt can say it will bring efficiencies to this action from its experience currently serving on the steering committee of another antitrust case on behalf of farmers against the same defendants here. That case alleges similar conduct intended to keep lower-priced crop inputs, including pesticides (such as here) and seeds, off the market.

Lastly, both DiCello Levitt and Mullins Duncan have experience litigating against Defendant Syngenta.

*Fifth*, the Federal Trade Commission ("FTC") has described Defendants' conduct here as a "pay-to-block" generic entry case and has likened it to the "pay-for-delay" cases in the generic drug industry, both of which involve manufacturers of branded products paying would-be generic competitors to stay off the market. DiCello Levitt has extensive experience litigating pay-for-delay cases, up through and including trial.

4

**Sixth**, Diversity is a key element of any litigation team as it injects a wide variety of perspectives based on different experiences into case strategy and litigation techniques to benefit the class. Movants are committed to having diverse attorneys play a leading role in the action. Movants' team consists of numerous attorneys from historically underrepresented groups, including gender, ethnicity, and sexual orientation. Movants are recognized leaders in fostering diversity and inclusion; indeed, a federal court recently recognized DiCello Levitt's commitment to diversity in appointing it to a leadership role.

**Seventh**, Movants offer several attorneys with prior experience working for government enforcers, as described in more detail below, including for the U.S. Department of Justice's ("DOJ") Antitrust Division and Civil Division and the New York State Office of the Attorney General Antitrust Bureau. This experience will enhance the working relationship with the FTC and State Attorneys General here. In addition, Ms. Mullins clerked for the Honorable N. Carlton Tilley, Jr. in this District, followed by a clerkship for the Honorable Susan H. Black in the United States Court of Appeals for the Eleventh Circuit, and Mr. Harrell clerked for the Honorable James A. Beaty, Jr., in this District.

**Eighth**, Movants are committed to providing all necessary resources—financial and personnel—in representing the class. In addition, Movants have included with this submission a template for strictly controlling time spent and expenses incurred, fulfilling our duty to maximize the recovery for the proposed class members.

## BACKGROUND

On September 29, 2022, the FTC, along with 12 states, sued Syngenta and Corteva, alleging they artificially inflated the prices that farmers pay for certain crop protection products—*i.e.*, pesticides, which include insecticides, herbicides, and fungicides—through a set of anticompetitive "loyalty programs." Shortly thereafter, dozens of class actions brought on behalf of farmers, largely based on the allegations in the government complaints, were filed across the country. On February 6, 2023, the various class actions were centralized in this Court.

Movants represent Jones Planting Co. III, a Mississippi farm which purchased crop protection products from Defendants, including products containing the chemical Azoxystrobin, one of the chemicals alleged to be overpriced due to Syngenta's anticompetitive loyalty programs. Like the other plaintiffs in this MDL, Jones alleges that Defendants, through their loyalty programs, paid wholesalers and retailers substantial incentive payments in exchange for their agreeing to limit sales of generic crop protection products. These loyalty programs were designed to hinder the entry and expansion of generic manufacturers, resulting in higher prices for crop protection products and costing Jones and members of the class millions of dollars in overcharges.

## LEGAL STANDARD

### I.    Movants Are Best Able to Represent the Interests of the Class Under Rule 23(g)

In selecting interim class counsel, courts "appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). In making this

determination, courts generally "look to the same factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A)." *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008). Thus, courts consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A); *accord Johnson v. Pozen Inc.*, No. 1:07CV599, 2008 WL 474334 (M.D.N.C. Feb. 15, 2008). Courts may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The overriding principle guiding leadership appointment is the efficient promotion of the class's best interests. *See Manual* §§ 10.22, 10.221.

## A.   Movants Have Investigated Potential Claims in the Action

Movants satisfy the first factor "in identifying or investigating potential claims in the action." Fed. R. Civ. P. 23(g)(1)(A)(i). The FTC filed the first action alleging anticompetitive loyalty programs by Syngenta and Corteva to block lower-priced generic crop input products from gaining a foothold in the market.[1] Prior to filing their complaint,

---

[1] Here, no weight should be given to which firm filed the first class action, as all of the class action complaints followed and are based on the FTC's case *Federal Trade Commission v. Syngenta Crop Protection AG*, No. 22-cv-00828 (M.D.N.C.). Thus, the proverbial "race to the courthouse" added no benefit to the class. *See, e.g., In re Scrap Metal Antitrust Litig.*, No. 1:02-CV-0844, 2002 WL 31988203, at *1 (N.D. Ohio Aug. 5, 2002) ("[G]iven the long history of governmental investigation and prosecution of the scrap metal industry in the relevant market … ***first-to-file status is simply not meaningful***.") (emphasis added).

7

Movants researched the allegations in the FTC's complaint as well as conducted independent research into the crop input products market, including conferring with their client and colleagues who have litigated agriculture cases, researching the products at issue and the chain of distribution, and identifying potential experts for the case. Movants conducted legal research into the claims as well, including state law claims. Movants' investigation is ongoing.

In addition, Movants have been working cooperatively with other plaintiffs' counsel on various preliminary tasks, while attempting to avoid duplicative efforts, including organizing leadership, coordinating discovery efforts with the FTC, negotiating proposed CMO No. 1 with Defendants, working on the brief in support of Plaintiffs' request for production of the FTC documents, and preparing for and attending the hearing. Movants are prepared to hit the ground running if appointed by the Court.

## B.    **Movants Have Substantial Expertise Litigating Antitrust Class Actions and Are Knowledgeable of Applicable Law**

Movants' significant experience in prosecuting antitrust class actions and their experience in agriculture cases amply satisfies the second and third factors the Court must consider. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii), (iii).

### 1.    Antitrust and Class Action Litigation Experience

**DiCello Levitt:** DiCello Levitt is a national trial firm with over 70 attorneys in six offices across the U.S., practicing in multiple areas of complex litigation on behalf of plaintiffs. The firm has a substantial antitrust class action practice with national and international recognition.

8

DiCello Levitt's experienced antitrust attorneys have led the charge on some of the most significant private antitrust cases over the past two decades. Its antitrust team is regularly appointed to lead antitrust class actions because of its depth of experience and record of success, as well as being recognized by courts for its commitment to diversity and providing real opportunities to attorneys from historically underrepresented groups. *See* Ex. 1 (DiCello Levitt's antitrust *curriculum vitae* with complete listing of firm's leadership appointments in antitrust cases). DiCello Levitt has litigated some of the largest antitrust class action lawsuits in the U.S., often filing the first case and advancing novel theories through its efforts. The firm handles claims ranging from price-fixing and market allocation conspiracies among competitors to monopolization of markets by industry giants. The practice's sophisticated client base includes small businesses—like our client here—corporations, public pension funds, health funds, municipalities, and consumers.

Below is a small sampling of the firm's recoveries and appointments in antitrust class actions (see Exhibit 1 for complete listing):

-- *In re: Air Cargo Shipping Services Antitrust Litigation*, No. 06-md-1775 (E.D.N.Y.) (co-lead counsel; $1.2 billion in settlements)

-- *Alaska Electrical Pension Fund v. Bank of America, Corp.*, No. 14-cv-7126 (S.D.N.Y.) (class counsel; $504 million in settlements)

-- *Fusion Elite All Stars v. Varsity Brands, LLC*, No. 2:20-cv-2600 (W.D. Tenn.) (co-lead counsel; $43.5 million settlement; preliminary approval pending)

-- *In re: Novartis and Par Antitrust Litigation*, 1:2018-cv-04361 (S.D.N.Y.) (lead counsel; $30 million settlement; preliminary approval pending)

--  *In re: European Government Bonds Antitrust Litigation*, No. 19-cv-2601 (S.D.N.Y.) (co-lead counsel; $13 million in partial settlements to date)

DiCello Levitt's antitrust attorneys are trial-ready. Last year, as co-lead counsel, our team tried *In re Opana ER Antitrust Litigation,* No. 14-cv-10150 (N.D. Ill.), and, mid-trial, reached a settlement of $15 million with one of the defendants on behalf of classes of consumers and health plans. In *In re Aftermarket Automotive Lighting Products Antitrust Litigation*, No. 09-ml-02007 (C.D. Cal.), as co-lead counsel the team demonstrated its willingness to litigate a global price-fixing conspiracy involving automotive lighting products all the way to trial, with the last remaining defendants settling shortly before trial ($50 million). The firm's credible threat to take a case up to and through trial,[2] in Movants' experience, enhances the chances for an earlier, greater recovery for the class.

The proposed DiCello Levitt leadership team includes:

**Greg Asciolla** is Chair of DiCello Levitt's Antitrust and Competition Litigation Practice, Managing Partner of the New York office, and co-chair of the firm's Diversity, Equity, & Inclusion Committee. With three decades of antitrust experience, Mr. Asciolla is a highly-regarded practitioner who represents his clients in complex antitrust class actions. He is regularly appointed to leadership positions in antitrust class actions, including *In re Crop Inputs Antitrust Litigation*, No. 21-md-02993 (E.D. Mo.), *In re*

---

[2] In October 2022, in *Raul Siqueiros, et al. v. General Motors LLC*, Case No. 3:16-cv-07244, (N.D. Cal.), the firm won a $102.6 million jury verdict in a class action against General Motors alleging engine defects.

*Generic Pharmaceuticals Pricing Antitrust Litigation*, No. 16-md-02724 (E.D. Pa.) (one of the largest antitrust cases on record alleging price-fixing of 200+ generic drugs against 35+ manufacturers), and *In re European Government Bonds Antitrust Litigation*. He has been recognized for his accomplishments in the antitrust bar: Titan of the Plaintiffs Bar by Law360; leading plaintiffs' competition lawyer by Chambers & Partners USA and Global Competition Review; "Leading Plaintiff Financial Lawyers in America" by Lawdragon; and "Leading Lawyer" by The Legal 500, with sources describing him as "very effective plaintiffs' counsel" and "always act[ing] with a good degree of professionalism."

A member of the LGBTQ+ community and active in the antitrust bar, Mr. Asciolla was recently appointed as Vice-Chair of the ABA Antitrust Section's Diversity Advanced committee. Mr. Asciolla also serves on the Executive Committee of the Antitrust Law Section of the New York State Bar Association and is its Finance Officer, as well as Co-Chair of the Antitrust Committee of the New York County Lawyers' Association. He is on the Advisory Board of the American Antitrust Institute and serves as Treasurer and Membership Director of the Committee to Support the Antitrust Laws.

**Karin Garvey** is a partner in the New York office of DiCello Levitt. Having spent 18 years on the defense side, Ms. Garvey is uniquely able to deploy the knowledge she gained there to the strategic advantage of her clients on the plaintiffs' side. Ms. Garvey brings significant experience to managing complex, multi-jurisdictional cases from initial case development through resolution and appeal and has engaged in all phases of trial

11

preparation and trial and has briefed and argued appeals. With 25 years of litigation experience, Ms. Garvey has been appointed to a leadership position in multiple antitrust class actions, including, most recently, *Fusion Elite All Stars v. Varsity Brands, LLC* (W.D. Tenn.); *In re Surescripts Antitrust Litigation* (N.D. Ill.); *In re Crop Inputs Antitrust Litigation* (E.D. Mo); and *In re Xyrem (Sodium Oxybate) Antitrust Litigation* (N.D. Cal.). Ms. Garvey played a large role at the *Opana* trial, mentioned above, including plaintiffs' opening statement and closing argument. Ms. Garvey is recommended by *Chambers & Partners USA*, Band 2 for Antitrust Mainly Plaintiff in New York, and *The Legal 500* for excellence in the antitrust practice. She has been described as "an experienced and thoughtful litigator. She has been in the trenches and knows how to work through complex issues." She has been recognized by *Lawdragon* as one of the "Leading Plaintiff Financial Lawyers in America." Ms. Garvey also serves as an adjunct faculty member in the trial advocacy program at Northwestern University Pritzker School of Law.

DiCello Levitt's antitrust practice has garnered national and international recognition, including in *Chambers & Partners*, *The Legal 500*, *Benchmark*, *Lawdragon*, *The Best Lawyers In America*, and *Global Competition Review*.

**Preti Flaherty:** Preti Flaherty is a 95-lawyer, full service law firm and has represented plaintiffs and defendants, including many Fortune 500 corporations, in class actions and other complex litigation. It is nationally recognized for its antitrust practice, recovering $500+ million on behalf of the classes it has represented. *See* Ex. 2 (Preti

12

Flaherty's antitrust *curriculum vitae* with complete listing of firm's antitrust cases and leadership appointments). Courts have appointed Preti Flaherty co-lead counsel on behalf of plaintiffs in numerous antitrust class actions, including:

     --     *In re: Automotive Parts Antitrust Litigation,* MDL No. 2311 (E.D. Mich.) (co-lead counsel for direct purchasers in a case stemming from the largest DOJ criminal antitrust investigation in U.S. history; over $300 million in settlements to date)

     --     *In re: Foundry Resins Antitrust Litigation,* MDL No. 1638 (S.D. Ohio) (co-lead counsel; settlements over $14 million)

     --     *In re: Marine Hose Antitrust Litigation,* MDL No. 1888 (S.D. Fla.) (co-lead counsel, with attorneys on the DiCello Levitt team; settlements over $31 million)

     --     *In re Pillar Point Partners Antitrust and Patent Litigation,* MDL No. 1202 (D. Ariz.) (Executive Committee member; primary counsel for sole class representative; $50 million settlement)

Preti Flaherty and its antitrust attorneys have received numerous accolades, including by the *Antitrust Annual Report* as a Top Antitrust Law Firm for 2020. It has also been recognized by federal court judges for its work prosecuting antitrust cases: As co-lead counsel in *In re: Iowa Ready-Mix Concrete Antitrust Litigation*, No. C 10-4038 (N.D. Iowa) ($18.5 million settlement), U.S. District Judge Mark Bennett stated, "Through their extremely skilled and efficient efforts, class counsel marshaled sufficient evidence and archived settlements that were highly favorable to the class members, all within a year and a half of the original case filing." Order, November 9, 2011. The Court went on to say the case was "a model for the nation that class actions can, indeed, work exactly as Congress and the federal courts intended," and "[t]his case has been to me

13

what it was like when I stood before da Vinci's 'Mona Lisa' and Michelangelo's 'David,' observing the great masters' works."

The proposed Preti Flaherty leadership team includes:

**Randall Weill** has decades of expertise as an antitrust attorney representing plaintiffs in antitrust class actions. He concentrates on the resolution of business disputes with a focus on complex litigation, including class actions, antitrust claims, and government investigations. Mr. Weill is a former Trial Attorney in the Civil Division of the U.S. Department of Justice and a former U.S. Army Airborne Ranger. He is an experienced trial lawyer who has successfully tried cases before judges and juries in state and federal courts. Mr. Weill has a Martindale-Hubbell® AV Preeminent™ Peer Review Rating and is recognized by *Best Lawyers in America* for Antitrust Law, Commercial Litigation, and Antitrust Litigation. He also represents corporate defendants in antitrust litigation, thus bringing an invaluable strategic perspective to the team. Representative antitrust class actions in which he served as co-lead counsel include *In re Auto Parts Antitrust Litigation; In re Iowa Ready-Mix Concrete Antitrust Litigation;* and *In re Marine Hose Antitrust Litigation.*

**Greg Hansel** is experienced in class actions and antitrust and trade regulation. Representative antitrust class actions include *In re Auto Parts Antitrust Litigation*; *In re Iowa Ready-Mix Concrete Antitrust Litigation*; and *In re Marine Hose Antitrust Litigation.* He has an AV Preeminent™ rating from the Martindale-Hubbell® and has been recognized in Woodward/White's *The Best Lawyers in America* for Commercial

14

Litigation, Litigation – Securities, Mass Tort Litigation / Class Actions - Defendants and Mass Tort Litigation / Class Actions – Plaintiffs and *Chambers USA: America's Leading Lawyers for Business,* which stated "Greg Hansel stands out for his prowess in relation to complex business litigation work. One interviewee also heralded him as 'a master of class action litigation.'" He has also been selected as a *New England Super Lawyer* in Antitrust Litigation, Business Litigation and Class Action/Mass Torts, named a Litigation Star in *Benchmark: Litigation, the Guide to America's Leading Litigation Firms and Attorneys*, and is Board Certified in Antitrust and Trade Regulation Law by The Florida Bar.

**Mullins Duncan:** Mullins Duncan is a highly-regarded litigation boutique located in Greensboro, North Carolina focusing on complex trial and appellate matters, including all types of commercial litigation and business disputes, representing plaintiffs and defendants. The firm also has substantial multi-district litigation and class action experience and will bring that experience to this case on day one. It has represented the North Carolina State Bar in a case alleging antitrust claims as well as public utility customers in a class action that resulted in a 100% recovery returned to class members. The firm takes on the most challenging and complex cases and brings to the table tenacity, advocacy, intellect, and innovation in pursuit of the best solution for every challenge. *See* Ex. 3 (Mullins Duncan CV complete list of cases and appointments).

The proposed Mullins Duncan team includes:

**Allison Mullins** co-founded the litigation boutique now known as Mullins Duncan in 2013. She focuses on jury trials and appeals in complex commercial and civil matters.

15

Ms. Mullins clerked for the Honorable N. Carlton Tilley, Jr. in this District, followed by a clerkship for the Honorable Susan H. Black in the United States Court of Appeals for the Eleventh Circuit. She is widely recognized for her skills as a trial lawyer, having received numerous professional accolades: fellow in the American College of Trial Lawyers, in which she is Vice Chair of the Federal Civil Rules Committee; Chambers & Partners, Benchmark Top 250 Women in Litigation; and consistently named to "top" lists by SuperLawyers, Best Lawyers, and Legal Elite.

Ms. Mullins successfully represented Senator John Edwards in a criminal campaign finance trial. She was a key member of the trial team in the transvaginal mesh multi-district litigation and tried the first bellwether case to a favorable $2 million verdict. She was recently appointed liaison counsel in *In re Gardasil Products Liability Litigation*, MDL No. 3036 (W.D.N.C.). Ms. Mullins has served on the Local Rules Committee for this Court for many years and currently serves on the North Carolina Judicial Standards Commission, The North Carolina Chief Justice's Commission on Professionalism, and several committees aimed at improving legal practice, lawyer civility, and court rules.

**Cooper Harrell** is an accomplished litigator whose extensive experience includes cases before the Eastern, Middle, and Western Districts of North Carolina. In addition to his trial work, Mr. Harrell is a recognized appellate lawyer. He has written briefs and argued cases before the North Carolina Court of Appeals and the North Carolina Supreme Court. He also has briefed numerous cases before the federal appellate courts,

16

including the United States Supreme Court. Mr. Harrell clerked for the Honorable James A. Beaty, Jr., in this District. He has been widely recognized for his legal talents, including by SuperLawyers, Business North Carolina's Legal Elite, Young Guns (2014), and Triad Business Journal's 40 Leaders Under Forty (2011), awarded to the Triad's outstanding young business and community leaders. He was actively involved in the transvaginal mesh MDL and litigated a patent infringement case in this Court against Syngenta.

2. <u>Industry Experience: Agriculture and Other Generic Products</u>

DiCello Levitt's background is particularly well suited for this case given its extensive experience in agricultural matters. Indeed, Ms. Garvey and Mr. Asciolla were both appointed to the Executive Committee in *In re Crop Inputs Antitrust Litigation*, No. 21-md-02993 (E.D. Mo.)—the only firm moving for leadership here that can make that claim. Like this case, *Crop Inputs* is an antitrust class action on behalf of farmers who allege they overpaid for crop inputs, including pesticides and seeds. Additionally, both Syngenta and Corteva are defendants in that case. DiCello Levitt will be able to take advantage of any efficiencies to be gained by its involvement in both cases to the benefit the class. Additionally, DiCello Levitt and Preti Flaherty worked together on another agricultural antitrust class action, *In re Fresh and Processed Potatoes Antitrust Litigation*, No. 10-md-02186 (D. Idaho) (settled $19.5 million).

Outside of antitrust, DiCello Levitt has led several of the largest and most successful agricultural and biotechnology class action cases in history. That institutional

17

industry expertise will provide templates and strategies for litigating this case, again

bringing efficiencies that will benefit the class:

       --    *In re Genetically Modified Rice Litigation*, No. 06-md-1811 (E.D. Mo.) (co-lead counsel; achieved settlements exceeding $1.1 billion for long-grain rice farmers in class action alleging contamination of the U.S. rice supply)

       --    *In re StarLink Corn Products Liability Litigation*, MDL No. 1403 (N.D. Ill.) (co-lead counsel; achieved $110 million settlement for corn farmers in class action alleging contamination of the U.S. corn supply)

       --    *In re Imprelis Herbicide Marketing, Sales Practices and Products Liability Litigation*, No. 11-md-02284 (E.D. Pa.) (co-lead counsel; achieved $600 million settlement for property owners in class action alleging Imprelis turf herbicide killed millions of non-targeted trees)

       --    *Monsanto Co. v. E.I. DuPont de Nemours & Co.*, No. 09-cv-00686 (E.D. Mo.) (won $1 billion jury verdict in case involving patent infringement of crop inputs)

       --    *In re Paraquat Products Liability Litigation*, No. 21-md-03004 (S.D. Ill.) (Plaintiffs' Executive Committee; ongoing case against Syngenta and Chevron alleging herbicide Paraquat exposure increased risk of Parkinson's disease)

DiCello Levitt's experience litigating pharmaceutical antitrust class actions will

further benefit the class. As the FTC remarked in filing its case here, its allegations of a

pay-to-block scheme designed to keep lower-priced generic crop protection products off

the market in favor of higher-price branded products resemble anticompetitive "pay-for-

delay" schemes by branded drug companies designed to keep cheaper generic drugs off

the market.[3] DiCello Levitt is at the forefront of litigating these similar pay-for-delay

---

[3] *See* Press Release, "FTC and State Partners Sue Pesticide Giants Syngenta and Corteva for Using Illegal Pay-to-Block Scheme to Inflate Prices for Farmers" (Sept. 29, 2022), *available at* https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-state-partners-sue-pesticide-giants-syngenta-corteva-using-illegal-pay-block-scheme-inflate.

cases, including going to trial in *Opana* last year.[4] This experience will lend itself well here.

In sum, Movants' extensive experience in antitrust, class actions, other complex litigation, and industry experience demonstrates they will be best able to represent the class's interest.

**C.** **Movants Will Commit the Necessary Resources to Effectively Represent the Best Interests of the Class**

Under the fourth factor the Court must consider, Fed. R. Civ. P. 23(g)(1)(A)(iv), Movants already have committed and will continue to commit the financial and personnel resources necessary to prosecute this case through trial and appeal if necessary. Antitrust class actions can require significant resources, and Movants have dedicated extraordinary resources in past cases to effectively and vigorously litigate them in the best interest of the class. This case will be no different.

That said, that does not mean the case will not be litigated as efficiently as possible. Movants will strictly manage the time spent and the costs incurred, thus fulfilling the duty to maximize the potential recovery for the proposed class. Towards that end, Movants have included in this submission a time and expense template for use in this case. *See* Ex. 4 (Time and Expense Protocol).

---

[4] *See, e.g.*, *In re Novartis and Par Antitrust Litigation*, No. 18-cv-04361 (S.D.N.Y.) (lead counsel in pay-for-delay case involving drug Exforge); *In re Opana ER Antitrust Litigation*, No. 14-cv-10150 (N.D. Ill.) (co-lead counsel in pay-for-delay case involving drug Opana). *See* Ex. 1 for additional cases.

**D.** **Other Pertinent Factors Weigh in Favor of Appointing Movants to Lead this Action**

There are several experienced firms that will be seeking a leadership position in this case. Under Federal Rule 23(g)(1)(B), courts may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class" when selecting class counsel. Here, Movants distinguish themselves by offering a diverse group of attorneys to lead the case, a lean co-lead structure to reduce waste and duplication, and prior government experience to facilitate coordination with the FTC.

1. Movants Offer a Diverse Slate of Attorneys

Courts have recently paid particular attention to diversity in appointing interim class counsel. *See, e.g.*, *Borozny v. Pratt & Whitney*, No. 21-cv-01657, Dkt. 333 at *8 (D. Conn. Mar. 11, 2022) (in appointing DiCello Levitt co-lead counsel, court stated "As a recent study notes, diversity enhances the quality of decision-making process[es] and results. . . . This is particularly important where, as here, the size of the plaintiff class numbers in the tens of thousands and the class is likely to be diverse itself.") (quoting James F. Humphreys Complex Litigation Center, George Washington Law School, *Inclusivity and Excellence: Guidelines and Best Practices for Judges Appointing Lawyers to Leadership Positions in MDL and Class-Action Litigation* (March 15, 2021)) (Ex. 5); *In re Fico Antitrust Litig.*, No. 1:20-CV-02114, 2021 WL 4478042, at *3 (N.D. Ill. Sept. 30, 2021) ("[C]ourts have routinely recognized … the value of a legal team that is diverse across axes of gender, race, and other aspects of identity."); *City of Providence v. Abbvie Inc.*, No. 20-cv-5538, 2020 WL 6049139, at *6 (S.D.N.Y. Oct. 13, 2020) ("For well over

20

a decade now, the courts have emphasized the importance of diversity in their selection of counsel." (citing cases)).

Movants are committed to diversity in leadership appointments in MDLs such as here because different voices based on different experiences can offer unique tools for solving the complex problems that arise in antitrust litigation. These are not merely hollow words or number games. Movants are proposing a slate of attorneys drawing heavily from historically underrepresented groups, particularly with respect to gender, ethnicity, and sexual orientation—and they have been doing this for years. These attorneys are not figureheads—they have been and will continue to lead the case if appointed by the Court. Indeed, courts have recognized DiCello Levitt's antitrust group's commitment to diversity as a factor in appointing them as co-lead counsel: in one recent case, the court noted that the group "demonstrate[s] a commitment to diversity through [its] ranks" and "harbors a [] commitment to diversity and to recruiting, retaining, and promoting the most talented lawyers best able to represent the class." *City of Providence v. Abbvie Inc.*, No. 20-cv-5538, 2020 WL 6049139, at *7 (S.D.N.Y. Oct. 13, 2020). Similarly, another court recognized the antitrust group's "commitment to diversity amongst their assigned attorneys" and their commitment to "recruiting, cultivating, and utilizing talent from a diverse pool of lawyers who will work on this matter." *Borozny*, No. 21-cv-01657, Dkt. 333 at *8 (Ex. 5).

The class's interests will only be strengthened with the diverse talent they and the rest of the team bring to this case.

21

2. <u>Movants Lean Two-Firm Co-Lead Structure Will Best Serve
   Interests of Efficiency</u>

Movants propose, based on their extensive experience leading antitrust class actions, that a lean, two-firm co-lead structure is appropriate here. Appointing DiCello Levitt and Preti Flaherty as interim co-lead class counsel will increase efficiency and substantially reduce costs for the proposed class. Efficiency is an important concern in appointing class counsel. *See Manual* § 10.221 (recognizing that the most important factor in leadership appointments is "achieving efficiency and economy without jeopardizing fairness to the parties"). Reduced costs for the proposed class—U.S. farmers—means any recovery puts more money in their pockets; indeed, maximizing recovery for the class is a critical function of lead counsel that Movants take seriously.

A hard look should be given to any application proposing a large co-lead structure, or structures that have numerous firms supporting it, in considering whether it meets the litigation needs of the class. A two-firm structure minimizes duplication and inefficiencies that plague larger structures. Despite the best intentions of a larger group, if every member is going to provide value-added work product, every member will have to stay abreast of every piece of the litigation. This is unavoidable, and it results in multiplying the group's time and expenses incurred in litigating the case. That is money out of the class's pocket.

Courts, including in the Fourth Circuit, recognize that large, complicated leadership structures can lead to inefficiencies. *See In re Zetia (Ezetimibe) Antitrust Litigation*, No. 18-md-02836 (E.D. Va. Aug. 15, 2018), Dkt. 105 ("The streamlined [two

22

firm] co-lead counsel arrangement … will produce significant efficiencies over a larger, committee-based structure.") (Ex. 6); *In re Crude Oil Commodity Futures Litig.*, No. 11-cv-3600, 2012 WL 569195, at *2 (S.D.N.Y. Feb. 14, 2012) (appointing two firms co-lead instead of proposed four-firm structure; a court must balance "desire to create a 'dream team' against the competing considerations of efficiency and economy"); *see also Manual* § 10.221 ("Committees of counsel can sometimes lead to substantially increased costs, and they should try to avoid unnecessary duplication of efforts and control fees and expenses"). Such inefficiencies manifest themselves not only in higher costs to the class but also in slower decision-making, preventing counsel from pushing the case forward. *See In re Int. Rate Swaps Antitrust Litig.*, No. 16-MD-2704, 2016 WL 4131846, at *4 (S.D.N.Y. Aug. 3, 2016) ("[H]aving more than two interim co-lead counsel will likely yield needless duplication of effort and inefficient decision making."). Accordingly, the trend is to appoint fewer firms as interim class counsel, especially when they will commit the necessary resources and deploy the attorneys needed throughout the case.[5] DiCello Levitt and Preti Flaherty—with Mullins Duncan—can more efficiently manage this

---

[5] *See, e.g.*, *Borozny*, No. 21-cv-01657, Dkt. 333 at *7 (appointing two firms as co-lead class counsel) (Ex. 5); *In re Int. Rate Swaps*, 2016 WL 4131846, at *4 (appointing two firms as co-lead counsel); *City of Providence*, 2020 WL 6049139, at *8 (same, for end-payor plaintiffs); *In re Platinum & Palladium Antitrust Litig.*, No. 14-cv-9391, Dkt. 32 (S.D.N.Y. Mar. 20, 2015) (same) (Ex. 7); *In re Credit Default Swaps Antitrust Litig.*, No. 13-MD-2476, Dkt. 244 (S.D.N.Y. Dec. 5, 2013) (same) (Ex. 8), Dkt. 250 (S.D.N.Y. Dec. 13, 2013) (same) (Ex. 9); *In re Opana ER Antitrust Litig.*, No. 14-cv-10150 (N.D. Ill. Apr. 2, 2015), Dkt. 78 (same, for end-payor plaintiffs) (Ex. 10); *see also In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-cv-7789, (S.D.N.Y. Feb. 13, 2014) Dkt. 103, Hr'g Tr. at 43 (rejecting four-firm leadership structure in favor of two-firm structure because of efficiency concerns) (Ex. 11).

23

litigation, including tighter controls on attorney time and expenses, while still bringing substantial resources to bear, all for the benefit of the Class. *See* Ex. 4 (Time and Expense Protocol).

The FTC and States and most private cases have sued two principal defendants— Syngenta and Corteva. And while additional defendants may be added in a consolidated complaint, this will not become the sort of case with so many defendants that more than two firms are required to serve as co-lead counsel. Movants have a core group of experienced attorneys who are prepared to lead the litigation, but should there be a need for additional resources given certain factual or legal complexities, or other firms' clients are selected to be class representatives, the two co-lead firms can work selectively with other class counsel while still acting as the "gatekeepers" to constrain costs and maintain efficiency. Indeed, we value our long-standing relationships with many who have applied for leadership here and certainly would look to include these talented lawyers in the event that, at some point later in the litigation, the best interests of the class require it.

        3.   Government Experience Will Facilitate Coordination with FTC and States

Movants offer several attorneys with prior experience working for government enforcers, including Mr. Asciolla, who worked as a trial attorney at DOJ's Antitrust Division, Matthew Perez of DiCello Levitt, who worked as an attorney at the New York State Office of the Attorney General Antitrust Bureau, and Mr. Weill, who worked as a trial attorney at DOJ's Civil Division. This experience will enhance the working

24

relationship plaintiffs will have with the FTC and State Attorneys General when coordinating the cases.

**<u>CONCLUSION</u>**

For the foregoing reasons, Movants respectfully request that the Court appoint DiCello Levitt and Preti Flaherty as interim co-lead class counsel and Mullins Duncan as liaison counsel in this action.

Date: April 20, 2023

*/s/ Gregory S. Asciolla*
Gregory S. Asciolla
N.Y. State Bar No. 2635241
Karin E. Garvey
N.Y. State Bar No. 2997831
**DICELLO LEVITT LLC**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Telephone: (646) 933-1000
gasciolla@dicellolevitt.com
kgarvey@dicellolevitt.com

*/s/ Randall B. Weill*
Randall B. Weill
Maine Bar No. 2836
Gregory Hansel
Maine Bar No. 8465
**PRETI, FLAHERTY, BELIVEAU &
PACHIOS, CHARTERED, LLP**
One City Center
P.O. Box 9546
Portland, ME 04101
Telephone: (207) 791-3000
rweill@preti.com
ghansel@preti.com

*/s/ Allison Mullins*
Allison Mullins
N.C. State Bar No. 23430
L. Cooper Harrell
N.C. State Bar No. 27875
**MULLINS DUNCAN HARRELL &
RUSSELL PLLC**
300 North Greene Street, Suite 2000
Greensboro, NC 27401
Telephone: (336) 645-3320
amullins@turningpointlit.com
charrell@turningpointlit.com

*Counsel for Plaintiff Jones Planting Co.
III*

## **CERTIFICATE OF COMPLIANCE WITH WORD COUNT**

Pursuant to Local Rule 7.3(d) and the Court's Case Management Order No. 1 (ECF No. 31), the undersigned hereby certifies that the forgoing document has less than 6,250 words according to Microsoft Word's word count feature in the body of the brief, headings, and footnotes.

This the 20th day of April, 2023.

*/s/ Allison Mullins*
Allison Mullins

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document has been filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record in this action.

This the 20th day of April, 2023.

*/s/ Allison Mullins*
Allison Mullins