# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF NORTH CAROLINA

# WINSTON-SALEM DIVISION

| | |
|---|---|
| IN RE CROP PROTECTION PRODUCTS LOYALTY PROGRAM ANTITRUST LITIGATION<br><br>This document relates to: ALL ACTIONS | Case No. 1:23-MD-03062-TDS-JEP |

## BRIEF IN SUPPORT OF MOTION TO APPOINT WILLIAM M. AUDET OF AUDET & PARTNERS, LLP AS INTERIM CLASS COUNSEL AND/OR E-DISCOVERY COORDINATOR

William M. Audet, managing partner at AUDET & PARTNERS, LLP, respectfully submits this application pursuant to this Court's April 7, 2023, Case Management Order ("CMO") No. 1 at ¶ 6, seeking appointment of himself and his law firm Audet & Partners, LLP as Interim Class Counsel and/or electronic discovery coordinator ("E-Discovery Coordinator" or "Coordinator").

## I.     INTRODUCTION

There is no dispute that this litigation will be expansive and complex. Respectfully, the early appointment of an e E-Discovery Coordinator as part of interim class counsel will not only promote the efficient prosecution of this case but also aid the Court in managing the e-discovery issues sure to arise. As one judge in a recent survey stated, "[t]he best attorneys are able to work out their e-discovery issues without judicial intervention"[1] and the appointment of a Coordinator will facilitate that outcome. Undersigned counsel

---

[1] Skolnik, Sam. Bloomberg Law, *Judges Frustrated by Lawyers' Lack of E-Discovery Expertise* https://news.bloomberglaw.com/ip-law/judges-frustrated-by-lawyers-lack-of-e-discovery-expertise

William M. Audet does not seek the traditional appointment as lead counsel in this matter but instead applies for appointment as Plaintiffs' E-Discovery Coordinator in conjunction with being a member of a Plaintiffs' Steering Committee ("PSC") or Plaintiffs' Executive Committee ("PEC") that will likely be created. As discussed in detail below, Mr. Audet not only possesses the requisite experience and expertise, but his firm's collective experience and the presence of an eminently-qualified ESI Technology Specialist as a member of the firm's staff make this appointment especially appropriate.

## II.   CREATION OF PLAINTIFFS' COMMITTEE AND NECESSITY OF APPOINTING AN ELECTRONIC DISCOVERY COORDINATOR OR CHAIR

As the Court noted, through adoption of a process for leadership applications, "designat[ing] interim counsel during the pre-certification period [is] necessary to protect the interests of the putative class." Fed. R. Civ. P. 23(g), 2003 Advisory Comm. Notes; *see also* Fed. Judicial Ctr., *Manual for Complex Litigation* § 21.11 (4th ed. 2004) (hereafter, "Manual"). Here and "[i]n complex cases, appointment of interim class counsel can clarify the responsibilities of the parties prior to class certification." *In re Shop-Vac Mktg. & Sales Practices Litig.*, No. MDL No. 2380, 2013 U.S. Dist. LEXIS 7023, at *6 (M.D. Pa. Jan. 17, 2013). Clarifying these duties or responsibilities and otherwise "[i]nstituting special procedures for coordination of counsel early in the litigation will help to avoid…problems" associated with duplication of effort, "waste [of] time and money, confus[ion] and misdirect[ing] the litigation, and burden[ing] the court unnecessarily." Manual § 10.22.

To effectuate this goal, many courts approve of, create, and appoint members to "[Plaintiffs' Steering or Executive] Committees [which] are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making." Manual § 10.221. Creating a steering committee is routinely done to promote efficient litigation in consolidated and multi-district litigation.

2

*In re January 2021 Short Squeeze Trading Litig.*, No. 21-2989-MDL-ALTONAGA/Torres, 2021 U.S. Dist. LEXIS 96549, at *23 (S.D. Fla. May 18, 2021).

In creating a PSC or PEC, this Court should also appoint an E-Discovery Coordinator or chairperson as courts across the federal judiciary continue to witness the ongoing "explo[sion]" of e-discovery issues in complex cases, and, as one court succinctly put it, e-discovery's growing importance is the result of a deluge of information and efficiency that was not possible in the "days of searching warehouses of documents by looking at them one-by-one[.]" *Begay v. United States*, No. CIV 15-0358 JB/SCY, 2018 U.S. Dist. LEXIS 10520, at *25 n.3 (D.N.M. Jan. 23, 2018).

Survey evidence from the federal bench also indicates that a majority (almost three out of four federal judges) found it necessary to issue warnings or schedule additional conferences to solve e-discovery problems more than once in a 12 month span – indicative of the growing need to address e-discovery disputes early and obviate further problems.[2] As one survey respondent stated in agreement, the "best attorneys are able to work out their e-discovery issues without judicial intervention."[3] Proper appointment of a Coordinator involves selecting attorneys who have the expertise to select the best methods and thus reduce costs related to e-discovery.[4] *See also Moore v. Weinstein Co., LLC*, 40 F. Supp. 3d 945, 953 (M.D. Tenn. 2014) ("use of e-discovery consultants often results in cost savings and efficiency.") The benefit of finding and appointing those "best attorneys" is evidenced by countless e-discovery disputes that ultimately siphon away time and resources from the efficient prosecution an action. *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 2843, 2021 U.S. Dist. LEXIS 264067, at *14-15 (N.D. Cal. Oct. 9, 2021) (dispute related to technology-assisted review; *Trusted Data Sols., LLC v. Kotchen & Low, LLP*,

---

[2] *Id.*
[3] *Id.*
[4] Pace, Nicholas M. & Zakaras, Laura. Where the Money Goes: Understanding Litigant Expenditures for Producing Electronic Discovery. RAND Institute for Civil Justice.
https://www.rand.org/content/dam/rand/pubs/monographs/2012/RAND_MG1208.pdf. at 99.

No. l:14-cv-1419-TCB, 2015 U.S. Dist. LEXIS 180380, at *2 (N.D. Ga. Feb. 5, 2015) (describing discovery dispute relating to an MDL party's mishandling of e-discovery leading to the court directing one party to hire a discovery expert at the party's expense); *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-HSG (DMR), 2015 U.S. Dist. LEXIS 43908, at *20-21 n.2 (N.D. Cal. Apr. 1, 2015) (court suggesting forcing Defendant to cooperate with Plaintiffs and hire their own ESI consultant in the midst of a discovery dispute).

The clear takeaway from surveys, case law, and public commentary is that appointment of an E-Discovery Coordinator at the outset of highly complex litigation can mitigate, if not avoid, these types of issues and disputes from arising by allowing experienced e-discovery firms or personnel help shape these disputes for quick resolution or, as more often is the case, resolve them in an efficient manner beneficial to the Parties and to the Court. *Series, LLC v. Progressive Corp.*, No. 1:18-cv-2273, 2020 U.S. Dist. LEXIS 263026, at *2 (N.D. Ohio June 4, 2020). The Court can then focus on the overall efficient prosecution of this litigation rather than on the management of discovery disputes related to e-discovery methods or disputes. *See supra.*

*In Re: Philips Recalled CPAP, Bi-Level PAP, And Mechanical Ventilator Prods. Litig.*, No. 21-mc-1230 (W.D. Pa.) is instructive. There, the court appointed a four-firm plaintiffs' co-lead counsel leadership team and also facilitated the creation and appointment of a twelve-person Plaintiffs' Steering Committee, with the duties of the steering committee outlined in part as "conduct[ing] all discovery in a coordinated and consolidated manner on behalf of and for the benefit of all plaintiffs, in a fashion in keeping with practice guidelines to be established in subsequent discovery plans or orders of this court." *Id.* Dkt. 395. From there, the co-lead counsel and PSC self-organized, with an early focus on discovery issues. This case should be an exemplar for the present litigation, given the nationwide class in both cases, the multitude of involved parties, including international

4

defendants (directly comparable to the present situation), and the sprawling and complex nature of the case (involving variable types of claims, different classes and subclasses, and heavy involvement of scientific data and expertise).

For these reasons, respectfully, this Court should allow for the appointment of members to a PSC or PEC and the appointment of Mr. Audet as an E-Discovery Coordinator for the Committee. Mr. Audet is highly qualified for such a position for the reasons below.

## III. APPOINTMENT OF WILLIAM M. AUDET OF AUDET & PARTNERS LLP AS E-DISCOVERY COORDINATOR

### A. The Expertise of Audet & Partners, LLP Warrants Appointment

Audet & Partners, LLP has a long history of prosecuting class actions to a successful resolution. *See* **Exhibit A** (*Curriculum Vitae* of William Audet, "Audet *CV*") and **Exhibit B** ("Audet Firm Resume"). In recent years, the demands of complex class cases have veered more and more towards having sufficient expertise and resources to commit to e-discovery issues to effectuate successful resolution of the cases. Audet & Partners, LLP has the commitment and will commit the time, firm-wide resources (including Mr. Yuen, the ESI Technology Specialist described below, *see infra*, section III.D.), finances and e-discovery expertise necessary to prosecute this action efficiently to a successful resolution—whether by settlement or trial.

If appointed, Mr. Audet and his firm will advocate for utilizing evolving technology associated with complex litigation, including in the collection of electronic data, review and storage on appropriate e-discovery platforms, and the use of cutting-edge artificial intelligence to assist in the document review process, where applicable. Mr. Audet, the managing partner of Audet & Partners, LLP, is also the co-author of a well-respected practice guide on federal discovery (and e-discovery) and is thus uniquely suited to employ that body of knowledge to ensure electronic discovery proceeds smoothly here. *See* Audet,

et al., *Handling Federal Discovery* (James Publishing); *see e.g.*, *In re Navistar MaxxForce Engines Marketing, Sales Pracs. and Prods. Liab. Litig.*, No. 1:14-cv-10318, (N.D. Ill.) (appointed co-lead counsel in a case with over millions of documents electronically produced); *see also* Audet *CV*. Mr. Audet will personally undertake, and when appropriate, delegate to other counsel all critical tasks associated with the role of E-Discovery Coordinator, in close coordination with Lead Counsel here. *See* Court's CMO No. 1, ¶ 6; *see also Manual for Complex Litigation* (Fourth), §21.27.

Further, if appointed as Interim Class Counsel and/or e-Discovery Coordinator, Mr. Audet and his office is committed to resolving the case, by trial or settlement, in three years or less—the "minimum" time needed to prosecute this case that was provided to the Court. *See* April 6, 2023 Status Conference H'rg Tr. at 22:8-9, 26:12 ("At the very least, we're probably looking at three years. That's with everything going pretty quickly." … "[A]nticipates at a minimum a three-year schedule"). To do so, Mr. Audet intends to deploy significant resources, in close coordination with Plaintiffs' Lead Counsel, to: (i) ensure preservation of evidence, especially electronically stored information ("ESI") given its ephemeral nature in certain circumstances not yet addressed; (ii) negotiate, in coordination with defense counsel and enter into detailed agreements on collection and production of ESI on an expedited timeline; (iii) negotiate with defense counsel on the production and timing of privilege logs, as modern privilege logs are frequently associated with electronic platforms where e-discovery is conducted; (iv) negotiate, in coordination with Plaintiffs' lead counsel, with defense counsel and enter into a dispute resolution process that avoids burdening the Court early on; and (v) contribute to a proposed discovery plan that hews closely to achievable e-discovery deadlines.

Mr. Audet firmly believes that in complex cases such as these, steadfast focus on e-discovery issues will naturally lead to earlier depositions and, ultimately, resolution of

the case. Mr. Audet expects that Plaintiffs will be able to move for class certification in no more than one year from the appointment date, an ambitious but achievable goal here.

**B. Specific Case Examples of E-Discovery Expertise**

In recent years, Mr. Audet and Audet & Partners, LLP have demonstrated how e-discovery could facilitate the efficient resolution of complex cases. For example, ***In re Navistar MaxxForce Engines Marketing, Sales Pracs. and Prods. Liab. Litig.***, No. 1:14-cv-10318, (N.D. Ill.) ("*Navistar*") provides an excellent example of the firm's expertise related to e-discovery issues. In *Navistar*, William M. Audet of Audet & Partners LLP was appointed Co-Lead Class Counsel. Acting as Class Counsel in that case, Mr. Audet's office and other members of the plaintiffs' leadership team effectively and efficiently reviewed, analyzed, and made use of over 2 million documents produced by the defendant and third parties, conducted dozens of interviews, and proceeded with over 25 depositions of critical witnesses—deploying cutting-edge (at the time) technology like Technology-Assisted-Review ("TAR") to ensure this was done efficiently and on an expedited basis. *See* Audet *CV*.

On the other end, Mr. Audet and the leadership oversaw the plaintiffs' collection, review for privilege, and production of over a half million documents to Navistar. Audet & Partners helped defend dozens of named plaintiffs' deposition, located key witness documents and assisted in the preparation of the witnesses. Consistent with the recommendations in Mr. Audet's book on federal discovery (*Handling Federal Discovery*), Audet & Partners effectively worked out many disputes over e-discovery and other issues with defense counsel without motion practice. This case was ultimately resolved due to a $165 million settlement that afforded the class considerable compensation. *See* Audet *CV*.

Additionally, it bears mentioning that the methods employed to litigate e-discovery issues are often more important than the actual result—a favorable outcome

that takes a long time to may harm the overall litigation. In *Navistar*, Audet & Partners LLP encouraged speed and expediency so long as it did not harm the prosecution of the case. Mr. Audet and his firm would routinely set up or participate in early teleconferences on e-discovery issues like the identification of electronic devices containing relevant data for discovery purposes (Mr. Audet is a huge proponent of taking a 30(b)(6) deposition early in this area, sometimes a practice welcomed by defendants, to focus the e-discovery collection efforts which can sometimes be too expansive). The Audet firm in *Navistar* committed significant hours in coordinating e-discovery obligations associated with the documents and depositions, inspection and review of data, and related discovery tasks. *See* Audet Firm Resume. William M. Audet and other attorneys at the firm helped effectuate a highly successful resolution of this matter.

In another matter, ***Andrews et al. v. Plains All American Pipeline***, Case No. 2:15-cv-04113, Audet & Partners also served as Co-Lead Class Counsel, heavily leveraging their expertise with e-discovery to assist with extensive discovery-related work in that case. Ultimately, this case involved the production of over 360,000 documents by the parties and third parties, totaling over 1.5 million pages, including numerous highly technical documents and data sets relating to mechanical engineering and pipeline integrity, calculations relating to spill volume, and geographic analyses of fish landings. *See id*. Class Counsel was also charged with comprehensively reviewing and understanding the defendant's highly technical documents, which required substantial time by document review lawyers, additional review and analysis by the lawyers using the documents in depositions and briefing, and extensive consultation with experts and consultants. Early management of e-discovery issues was paramount to the effective and efficient management of the documents and information made available in this case. Class Counsel also had to review Defendants' voluminous privilege logs (multiple logs and multiple sets were produced), totaling more than 50,000 withheld and redacted

entries that were produced or reproduced as part of a motion to compel. *See* Audet Firm Resume. As discussed, *supra*, privilege logs in modern discovery practices are highly integrated with e-discovery issues.

Additionally, the document productions in this case involved over 7,000 documents (36,000 pages) produced by plaintiffs, including financially sensitive documents that required careful pre-production review by Class Counsel. This is a relatively large production by named plaintiffs in a class action case, and given the sophisticated plaintiffs and entities in this matter (involving large communities of farmers and related small businesses), a similarly large, if not larger, production can be expected. As a result of these sizeable productions (by all parties), more than 100 depositions were taken in this matter, all of which could only proceed timely because e-discovery issues were resolved early on and to the benefit of the efficient resolution of the case. *See* Audet Firm Resume.

In another recent highly complex matter, referenced above, that shares some factual similarities with the present case, Mr. Audet serves a leadership position on the PSC in ***In Re: Philips Recalled CPAP, Bi-Level PAP, And Mechanical Ventilator Prods. Litig.***, No. 21-mc-1230 (W.D. Pa.). This is an MDL with both personal injury claims and claims for economic injury, necessitating wide-ranging and expansive discovery. Mr. Audet and his office are heavily involved in both sides of discovery— offensive and defensive. *See* Audet Firm Resume.

In the aggregate, Audet & Partners helped oversee the drafting of an ESI Protocol for the defendants, including a corporation with subsidiaries in the United States and a parent in the Netherlands—similar to the international nature of at least one of the primary defendants in the instant litigation. Audet & Partners used their expertise in ESI to advise on and provide a roadmap to the capabilities of the Philips data storage systems and software to efficiently target the best locations to conduct e-discovery and propose

the most agreeable manner in which to extract said data. While disputes still arose, early identification of these ESI custodial locations and related collection methods can provide a far earlier way to address these disputes.

Audet & Partners also assisted with class counsel's efforts of identifying custodians and managing the massive swathe of e-discovery produced, working with vendors to find the most efficient and functional way of handling hundreds of thousands of pages of discovery and using technology to assist the review of those documents. Class Counsel and the PSC's efforts there have led to the efficient evaluation of hundreds of thousands of pages of documents and have set Plaintiffs off on a solid start as the litigation continues to advance. *See* Audet Firm Resume. For defensive discovery, Audet & Partners assisted with the production of class representative documents for plaintiffs, ensuring compliance with their negotiated ESI protocol and preventing any issues from cropping up in relation to their production. While discovery in class actions is often focused on the defendants' productions, ensuring compliance and accuracy for plaintiffs' productions is critical in the efficient prosecution of that litigation.

**C. The Expertise of Attorneys at Audet & Partners, LLP**

**William M. Audet** has prosecuted almost exclusively complex litigation and class actions for nearly four decades. *See* Audet *CV*. He has helmed cases that have collectively achieved billions of dollars in relief during these years. Mr. Audet has an exceptionally qualified academic and judicial clerkship background necessary to contribute to this case. After receiving his J.D. in 1984 with highest honors from Golden Gate School of Law, an L.L.M. from the U.W. School of Law in 1987 (where he was also a clinical Professor of Law on civil rights and staff attorney), he received his LL.D., Doctorate of Law (hc), in 2013 from Golden Gate U. School of Law. *Id.* He has held three clerkships: for the Ninth Circuit Court of Appeals and separately served as the inaugural clerk to Judge Fern Smith (N.D. Cal.), and the final clerk to Judge Alphonso

Zirpoli (N.D. Cal.). *Id.* Indeed, complex cases like the one before this Court are never identical, and plaintiffs' counsel must demonstrate a high degree of creativity to achieve a successful (and efficient) resolution and Mr. Audet has demonstrated this ability time and again in pursuit of a number of unique theories of claims in class actions. Among other examples, he filed the first-ever class action case in Mexico under its recently adopted class action statutory regime and certified the first ever class on behalf of Mexican-based fishers harmed by the Deepwater Oil Spill (***Elidio Capela Vela, et al., v. BP***, Case No. 717/2012 (8th District)), as well as the first US class action asserting a violation of the Chinese Constitution against a Chinese-based manufacturer. ***Spoiled Pet Food Clients v. Chinese Pet Food Production Company***, San Francisco (1999). *Id.* Using unique maritime law, he managed the arrest and seizure of an oil tanker in an oil spill case (***Loretz v. Regal Stone, Ltd.*** **(Cosco Busan)**, No. 07-cv-05800, (N.D. Cal.). *See* Audet Firm Resume. This is just a small list of his efforts to undertake novel and first-of-its-kind cases and formulate and adopt unique strategies to effectuate resolution.

Given Mr. Audet's experience and creative approach to litigation, he is routinely placed onto leadership positions in complex cases throughout the U.S. Most recently, on a leadership position in the PSC for *In Re: Philips Recalled CPAP, Bi-Level PAP, And Mechanical Ventilator Prods. Litig.*, No. 21-mc-1230 (W.D. Pa.), where after competing applications for leadership, saw the appointment of 33 attorneys and law firms to serve as plaintiffs' leadership given the complexity of the case. *See* Audet *CV*. Mr. Audet is also involved with the Sedona Conference Working Group Series (where members collaborate on tipping point issues in the areas of electronic document retention and production; international electronic information management, discovery, and disclosure; and data security, among other topics), and a committee member that formulates model protective order guidance and ESI recommendations. Audet Firm Resume.

The team at Audet & Partners will include **Ling Kuang**, the managing associate at

Audet & Partners, LLP, where he has significant experience in complex cases that involve consumer protection, antitrust, privacy rights, multidistrict litigation, and especially in matters against defendants in technology-laden complex litigation. *See id*. Mr. Kuang was recently appointed as the youngest member of the Plaintiffs' Steering Committee in *In re: Deere & Co. Repair Servs. Antitrust Litig*., MDL 3030, No. 3:22-cv-50188 (N.D. Ill.), an expansive MDL alleging nationwide monopolization of highly complex repair software technology. *See id*. Mr. Kuang also successfully presented oral arguments at preliminary and final approval for a nationwide settlement affecting purchasers of fraudulently labeled consumer products in this District. *Morrison v. Ross Stores, Inc*., No. 4:18-cv-02671-YGR (N.D. Cal.). *See id*. Mr. Kuang has significant experience in the realm of e-discovery as well, including drafting and negotiating ESI protocols as well as search terms with sophisticated corporate defendants. *See id*.

The Audet team will also include **Kurt Kessler**, an associate with extensive experience and background in consumer protection as well as antitrust, with a focus on representing classes of consumers in the face of unfair business practices by corporations. *See* Audet Firm Resume. Mr. Kessler led the briefing in opposition to numerous motions to dismiss, demurrers, motions for summary judgment, and in support of motions for the approval of class settlements and class certification. *See id*. Mr. Kessler has additionally spearheaded discovery efforts in several cases, including recently managing a team tasked with the discovery for a defendant and key third party in *In Re: Philips Recalled CPAP, Bi- Level PAP, And Mechanical Ventilator Prods. Litig*., No. 21-mc-1230 (W.D. Pa.). *See id*. Mr. Kessler also has experience in negotiating and drafting ESI protocols with sophisticated corporate defendants with wide-ranging data storage capabilities. *Id*.

### D.  ESI Technology Specialist at Audet & Partners, LLP

Recognizing that e-discovery and ESI-related issues will only continue to grow in importance for complex litigation, Audet & Partners, LLP very early on decided that the

retention of a highly capable ESI Technology Specialist was vital to be sufficiently prepared to handle these issues early and often. Towards that end, **Justin Yuen** has worked at Audet & Partners, LLP, for more than ten years. Mr. Yuen not only assists in the e-discovery aspects of litigation but also actively runs the information technology space at Audet & Partners, LLP. *See* Audet Firm Resume.

Mr. Yuen has a degree in Information Science and has worked in the IT industry for almost 20 years. Before joining Audet & Partners, LLP, Mr. Yuen worked as System and IT Administrator, Network Administrator, IT Manager, and IT Director in various corporate and startup companies. *See id*. This has allowed Mr. Yuen to gain knowledge in many business practices, user experiences, and IT methodologies that are indispensable for his current role at Audet & Partners LLP, where complex cases confront a myriad of potential IT systems and technologies deployed. Mr. Yuen also regularly attends IT and security conferences to meet with other professionals to stay abreast of new technology, best practices, and current security protocols. *See id*. Some cases that Mr. Yuen has been instrumental in helping the Audet firm with include:

- *In re Raptiva Litigation, Hedrick v. Genentech*, Case No. RG 09-446158 (Cal. Super. Ct., Alameda County 2009). Defense counsel was highly protective of their client's data interests, and Audet & Partners required significant expertise to effectively litigate and propose resolutions to entrenched positions that Defendants took. Mr. Yuen was instrumental in assisting associates in drafting ESI protocol, maintaining the discovery database, and CMO responses. *See id*.

- *Yamada v. Nobel Biocare Holding AG*, Case No. 2:10-CV-04849, (C.D. Cal. 2010), While Audet & Partners, LLP received a large amount of data in this case, the defendant often produced unusable or technically acceptable but practically not helpful ESI in this litigation. Mr. Yuen was tasked with and assisted counsel with resolving file access problems, OCR issues, and native file access. *See id*.

- *City of Perry vs. Proctor & Gamble et al*. Case no. 1:15-cv-08051. The discovery process of this case involved offsite data and email acquisition. Mr. Yuen provided a resolution that allowed for efficient off-site data access and extraction. Additionally, Mr. Yuen managed the file collection and processing timelines to allow for the review of the materials collected efficiently. *See id*.

To continue to develop his ESI expertise and skillsets, all of which are relevant to understanding how a potential party stores, can collect, preserve, and otherwise produce ESI-related data, Mr. Yuen has been involved in several projects in the past, including:

- Data Centers Farm—Mr. Yuen has set up and maintained a Tier 4 server farm in a Las Vegas location. This was for a startup that collects video on their Avigilon security footage and provides analytics to their clients. *See* Audet Firm Resume.
- Mobile device management—Remote working is now the new normal, and the challenge of managing all employees' devices comes with that. Using JamF, Mr. Yuen has helped his venture capitalist firm manage their mobile devices. Each device can now be remotely updated, installing apps, remote apps, password resets, etc. *See id*.
- Network assessment and upgrade—At Doremus Inc., Mr. Yuen was tasked with upgrading an outdated network that was not compliant with Sarbanes-Oxley. During his tenure, Mr. Yuen upgraded the Sonicwall firewall, Aruba Access Points, Dell, and EMC storage arrays, drafted new IT policy, and educated users on Data policy to bring Doremus Inc. up to Sarbanes Oxley Standards. *See id*.
- Cellular upgrade—In partnership with Seamless Cellular, Mr. Yuen has designed and implemented cellular signal improvements Commscope, Nod A DAS, or Cel-FoI small cell technology. Mr. Yuen has implemented these solutions in Beverly Hills, San Francisco, and New York, allowing users to have cell signal in areas with no cell service. *See id*.

- Technology "investigator" – Technology changes so quickly that what technology you are familiar with can be considered ancient in a few years. In particular, user data can be stored in multiple places. One of Mr. Yuen's responsibilities is to identify where data might be stored, draft report and worked with attorney to formulate a comprehensive ESI plan. In the John Deere case, John Deere uses multiple apps and server farm to collect and store their customer's data. Mr. Yuen reviewed John Deere's IT ecosphere, identify relevant data might be stored and project report to the attorney to lead discuss in ESI strategy. *See id*.

As described above, the law firm Audet & Partners, LLP, the attorneys at the firm (including Mr. William M. Audet), and staff members of the firm, such as Mr. Yuen, have the requisite expertise to serve the interests of the Court towards efficient litigation of this case. The Court should appoint William Audet as a member of the PSC or PEC and as the E-Discovery Coordinator.

## IV.   THE 23(g) FACTORS ARE ALSO SATISFIED AND FURTHER SUPPORT APPOINTMENT OF WILLIAM AUDET

In determining whether to appoint interim counsel or members of a steering committee, Courts "look[] to the same factors as it would when making the class counsel appointment decision" under Fed. R. Civ. P. 23(g)(1)(A)-(B). *In re Vanguard Chester Funds Litig*., No. 22- 955, 2022 U.S. Dist. LEXIS 158013, at *7 (E.D. Pa. Sep. 1, 2022). Specifically, the Court will look at (i) work counsel has done in identifying or investigating potential claims; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; (iv) the resources that counsel will commit to representing the class; and (v) any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. *Id.*

In regard to the work counsel has done in identifying or investigating potential claims, this is highlighted in the work Audet & Partners put into filing the *Bonin* matter, and researching the indirect purchaser requirements and relevant factual circumstances for their client. *In re Vanguard Chester Funds Litig.*, , 2022 U.S. Dist. LEXIS 158013, at *13 (E.D. Pa. Sep. 1, 2022) (work done in interviewing potential class members and identifying claims sufficient).

As evidenced in the previous sections of this application, *supra*, Audet & Partners has extensive experience handling class actions and other complex litigation, as well as the antitrust claims asserted here. The decades of collective experience Mr. Audet and his firm will put towards this litigation is evidence of their qualifications under the second requirement of rule 23(g). The same holds for counsel's knowledge of the applicable law – Mr. Audet and his firm have a wealth of experience in antitrust law and prosecuting multinational corporations on behalf of classes of Plaintiffs. *See* Audet Firm Resume; *In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, No. 1:21-cv-269 (MSN/JFA), 2022 U.S. Dist. LEXIS 85405, at *21 (E.D. Va. May 10, 2022) (knowledge of law and deep history of class action practice sufficient).

Given Mr. Audet and Audet & Partners, LLP's track record in cases of this magnitude, the last criteria under Fed. R. Civ. P. 23(g)(1)(A), the resources that will be committed to this action are readily met. All plaintiffs' counsel also fully understand that prosecuting this action will require substantial resources in determining the scope of the antitrust violations, the extent of the harm, and the remedial measures available now and in the long term. The several cases now consolidated, which assert varying federal and state antitrust claims on behalf of a putative class that will likely number in the hundreds of thousands, will take a considerable amount of discovery, particularly to uncover the total damage and economic impact of the monopolistic actions undertaken by defendants. As other courts have recognized in cases where—as here—the harm is significant, the

"magnitude of the [actions] justifies the pooling of resources and experience." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, No. MDL CIV. 12-2358-SLR, 2012 WL 5833604, at *1 (D. Del. Nov. 16, 2012) (citation omitted). The creation of a Plaintiffs' Steering Committee, and Mr. Audet's appointment onto it as e-discovery coordinator, will ensure the collective plaintiffs' leadership has not just sufficient but substantial financial resources, staffing, and time to dedicate to this action from start to finish.

Fed. R. Civ. P. 23(g)(1)(B) also provides that the courts may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Given the diverse population that typically make up most putative classes in complex litigation settings, and such is undoubtedly the case here given the scope of the data breach affecting states from Oregon on the West Coast to Maryland on the East Coast, district courts throughout the United States have in recent years focused on the issue of diversity as a critical factor in considering appointments. *See, e.g., In Re: Elmiron (Pentosan Polysulfate Sodium) Prods. Liab. Litig.*, No. 2:20-md-2973-BRM-ESK, MDL No. 2973, Dkt. No. 2 at 9 (D.N.J. Dec. 18, 2020) (explicitly stating in Case Management Order No. 1 that plaintiffs' "[l]eadership and the committees are expected to be diverse in gender, ethnicity, geography, and experience."); *see also In re Google Play Developer Antitrust Litig.*, No. 3:20-cv-05792, Dkt. No. 79 at 1 (N.D. Cal. Dec. 11, 2020) (proposed leadership structure should ensure "a diverse slate of law firms and attorneys" to represent the putative class).

Geographic diversity can be addressed by the inclusion of Mr. Audet as the law firm of Audet & Partners, LLP is based in California (as an added consideration, Plaintiff Bonin is a resident of Wisconsin). Given the diverse group of putative class members that hail from across the United States, the appointment of lead counsel or steering committee members should similarly reflect this geographic diversity. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 8:10-ml-02151

(C.D. Cal. May 14, 2010), ECF No. 169 (addressing gender diversity and appointing applicant to steering committee who argued that women were a majority of the class and needed to be represented on the leadership committee).

Moreover, diversity in ethnicity and experience levels will be more adequately achieved by appointing Audet & Partners, LLP to the PSC. Audet & Partners, LLP is a highly diverse firm. *See* Audet Firm Resume. Managing associate Ling Y. Kuang of Audet & Partners, LLP will also work closely with Mr. Audet in this litigation and discussed *supra*. Mr. Kuang not only has a proven track record – having recently been appointed to the leadership committee in MDL No. 3030 – but his diverse background and his younger experience level brings a unique perspective that is lacking amongst the current groups of proposed appointees. *In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 9:20-md-02924-RLR, Pretrial Order No. 20, Dkt. No. 685 (S.D. Fla. May 8, 2020) (MDL leadership groups, and those of the class it represented, would "benefit from [less experienced attorneys'] enthusiasm and fresh perspective.")

## V.     APPOINTMENT OF LIAISON COUNSEL

CMO No. 1 at ¶ 6 states that "[a]ll motions for appointment of Interim Class Counsel shall include the appointment of a 'Liaison Counsel.'" Audet & Partners, LLP filed the case with attorney Joel Rhine, whose firm has an office in Wilmington, North Carolina. Mr. Rhine is a well-known and renowned trial attorney in the state of North Carolina, and has worked with the Mr. Audet for over two dozen years on a variety of legal cases. Mr. Rhine intends to assists Mr. Audet and/or the Court appointed lead counsel as needed in the case. With the Court's location in Winston Salem, Mr. Rhine and Mr. Audet believe that a more 'local' attorney to the Middle District of North Carolina would more effectively serve the Court and Plaintiffs' counsel in this case. Based on the filings to date and prior positive experience, it appears that Attorney Daniel Kent Bryson of Milberg Coleman

Bryson Phillips Grossman, PLLC would be an excellent choice to serve as Liaison Counsel for the plaintiffs.

## VI.     CONCLUSION

Respectfully, while this Court will see many qualified applicants, none possess the unique background and knowledge that I or my firm will collectively offer. I stand ready to assume any role the Court wishes to appoint me to. I hope to leverage my experience and expertise in e-discovery to resolve this case efficiently and provide guidance to the future plaintiffs' bar.

Dated: April 20, 2023                    Respectfully submitted,

*/s/ William M. Audet*
William M. Audet (CA SBN 117456)
Ling Y. Kuang (CA SBN 296873)
Kurt D. Kessler (CA SBN 327334)
**AUDET & PARTNERS, LLP**
711 Van Ness, Suite 500
San Francisco, CA 94102-3229
Telephone: 415.568.2555
waudet@audetlaw.com
lkuang@audetlaw.com
kkessler@audetlaw.com

*/s/ Joel Rhine*
Joel Rhine (SBN 16028)
Martin Ramey (SBN 33617)
Ruth A. Sheehan (SBN 48069)
**RHINE LAW FIRM, P.C.**
1612 Military Cutoff Road
Suite 300
Wilmington, NC 28403
Tel: (910) 772-9960
Fax: (910) 772-9062
Email: jrr@rhinelawfirm.com
mjr@rhinelawfirm.com
ras@rhinelawfirm.com

*Counsel for Plaintiff Bonin and Proposed Class*

19

**CERTIFICATE OF WORD COUNT**

I hereby certify that this Motion does not exceed 6,250 words in length, including the body of the brief, headings, and footnotes. This the 20th day of April, 2023.

*/s/ William M. Audet*
William M. Audet

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document has been filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record in this action. This the 20th day of April, 2023.

*/s/ William M. Audet*
William M. Audet

Case 1:23-md-03062-TDS-JEP   Document 42   Filed 04/20/23   Page 21 of 21