# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

IN RE CROP PROTECTION PRODUCTS
LOYALTY PROGRAM ANTITRUST
LITIGATION

Case No: 1:23-md-3062-TDS-JEP

This document relates to: ALL ACTIONS

## BRIEF IN SUPPORT OF MOTION FOR APPOINTMENT OF
## THE FIRST-FILED GROUP—COHEN MILSTEIN, KOREIN TILLERY,
## LOWEY, AND QUINN EMANUEL—AS INTERIM CO-LEAD CLASS COUNSEL
## <u>AND  PINTO COATES AS LIAISON COUNSEL FOR THE PUTATIVE  CLASS</u>

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 3

I.    THE FIRST-FILED GROUP HAS DONE THE MOST WORK TO
      INVESTIGATE AND CHALLENGE DEFENDANTS' CONDUCT ................... 4

II.   COUNSEL HAVE SIGNIFICANT EXPERIENCE AND DEEP
      KNOWLEDGE OF THE APPLICABLE LAW ..................................................... 5

      A.    Counsel Have Significant Antitrust and Class-Action Experience .............. 6

      B.    Counsel Also Have Extensive Agricultural Experience ............................ 11

      C.    Counsel Have Significant Experience Working Cooperatively with
            Government Enforcers. ............................................................................. 14

III.  COUNSEL WILL BRING EXTENSIVE HUMAN AND FINANCIAL
      RESOURCES TO LITIGATE THIS PROPOSED CLASS ACTION ................. 15

      A.    Human and Capital Resources ................................................................. 15

      B.    Trial Resources ....................................................................................... 19

      C.    Local, National, and International Resources ........................................... 20

      D.    Other Resource Considerations ............................................................... 21

IV.   OTHER FACTORS ALSO SUPPORT THIS APPLICATION ........................... 22

      A.    A Four-Firm Structure is Warranted on the Facts of This Case ................ 22

      B.    Separate Counsel Is Not Required For Sub-Classes ................................ 24

CONCLUSION ................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Dairy Farmers of America*
    (D. Vt.) ............................................................................................................... 13

*In re Amaranth Natural Gas Comm. Litig.*,
    No. 07-cv-6377 (S.D.N.Y) ................................................................................. 18

*Apple Inc. v. Pepper*,
    139 S. Ct. 1514 (2019) ....................................................................................... 24

*Borozny, et al. v. Raytheon Techs. Corp., et al.*,
    No. 21-cv-1657 (D. Conn.) ................................................................................ 15

*In re Broiler Chicken Antitrust Litigation*
    (N.D. Ill.) ..................................................................................................... 13, 14

*Budicak v. Lansing Trade Grp.*,
    No. 19-cv-2499 (D. Kan.) .................................................................................. 12

*In re Cardizem CD Antitrust Litig.*,
    MDL No. 1278 (E.D. Mich.) .............................................................................. 12

*In re Cattle and Beef Antitrust Litigation*
    (D. Minn.) ........................................................................................................... 13

*Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc.*,
    No. 2:15-cv-09814 (C.D. Cal.) ............................................................................ 7

*In re Credit Default Swaps Antitrust Litig.*,
    No. 13-md-02476 (S.D.N.Y.), Dkt. 244 ............................................................ 19

*Dennis v. The Andersons Inc.*,
    No. 20-cv-04090 (N.D. Ill.) ............................................................................... 12

*Dennis v. JP Morgan Chase & Co.*,
    No. 16-cv-06496 (S.D.N.Y.) .............................................................................. 11

*In re Egg Products Antitrust Litigation*
    (E.D. Pa.) ............................................................................................................ 13

*Ehler v. IPEX, Inc.*,
    2009 WL 1392075 (D. Colo. May 15, 2009) .................................................... 23

*In re FICO Antitrust Litig. Related Cases,*
2021 WL 4478042 (N.D. Ill. Sept. 30, 2021) ............................................................. 25

*In re Foreign Exchange Benchmark Rates Antitrust Litig.,*
No 13-cv-7789 (S.D.N.Y) ...................................................................................... 8, 17

*Fund Liquidation Holdings LLC v. Citibank N.A.,*
No. 16-cv-5263, Dkt. 572 (S.D.N.Y. Nov. 29, 2022) .................................................. 10

*Fund Liquidation Holdings v. UBS AG,*
No. 15-cv-5844 (S.D.N.Y.) ....................................................................................... 10

*In re Generics Pharmaceutical Price Fixing Litig.,*
MDL 2724 (E.D. Pa.) ............................................................................................... 14

*In re GSE Bonds Antitrust Litig.,*
2020 WL 3250593 (S.D.N.Y. Jun. 16, 2020) ............................................................ 10

*In re GSE Bonds Antitrust Litigation,*
No. 19-cv-01794 (S.D.N.Y.) ..................................................................................... 19

*Hershey v. Pacific Investment Management Corp.,*
No. 05-cv-4681 (N.D. Ill.) ......................................................................................... 19

*In re Interest Rate Swaps Antitrust Litig.,*
No. 1:16-md-02704 (S.D.N.Y.) .................................................................................. 15

*Jien v. Perdue Farms*
(D. Md.) .................................................................................................................... 13

*Keepseagle v. Vilsack,*
No. 99-cv-3119 (D.D.C.) ........................................................................................... 13

*Laydon v. Mizuho Bank,*
No. 12-cv-03419 (S.D.N.Y.) ...................................................................................... 10

*In re Lidoderm Antitrust Litig.,*
2017 WL 679367 (N.D. Cal. Feb. 21, 2017) .............................................................. 23

*McFadden v. Microsoft Corp.,*
2020 WL 5642822 (W.D. Wash. Sept. 22, 2020) ........................................................ 3

*McIntosh v. Monsanto Co.,*
No. 01-cv-65 (E.D. Mo.) ............................................................................................ 13

*Meadows v. Syngenta Crop Protection,*
No. 22-cv-01128, Dkt. 1 (M.D.N.C. Dec. 26, 2022) ..................................................... 4

*In re Nat'l Football Leagues Sunday Ticket Antitrust Litig.*,
    2016 WL 6693146 (C.D. Cal. May 23, 2016) ............................................................ 23

*In re Natural Gas Comm. Litig.*,
    No. 03-cv-6186 (S.D.N.Y.) ..................................................................................... 19

*Ploss v. Kraft Foods Grp.*,
    No. 15-cv-2937 (N.D. Ill.) ...................................................................................... 12

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
    No. 1:19-md-02878 (D. Mass.) ................................................................................ 12

*Senne v. Office of the Commissioner of Baseball*,
    No. 3:14-cv-00608 (N.D. Cal.) ............................................................................ 8, 9

*Sullivan v. Barclays PLC*,
    No. 13-cv-02811 (S.D.N.Y.) .................................................................................... 11

*In re Sumitomo Copper Litig.*,
    No. 96-cv-4854 (S.D.N.Y.) ...................................................................................... 18

*In re Treasury Securities Auction Antitrust Litig.*,
    No. 1:15-md-02673 (S.D.N.Y.) ............................................................................... 15

*In re Urethane Antitrust Litig.*,
    MDL No. 1616, Dkt. 3273 (D. Kan. July 29, 2018) .................................................... 9

Pursuant to the Court's Case Management Order No. 1 (Dkt. 31), Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), Korein Tillery LLC ("Korein Tillery"), Lowey Dannenberg, P.C. ("Lowey"), and Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel" and collectively, "the First-Filed Group") respectfully submit this application in support of their appointment as "Interim Co-Lead Counsel" and the appointment of Pinto Coates Kyre & Bowers, PLLC ("Pinto Coates") of Greensboro, North Carolina, as "Liaison Counsel."

## INTRODUCTION

From the beginning, the First-Filed Group has sought to organize, coordinate, and advance this litigation. Korein Tillery and Lowey filed the first action in this Court to ensure that this litigation could be most effectively coordinated with the government case. They successfully worked with the government and private counsel to organize the cases and move them forward.

Following centralization of the actions in this District, Quinn Emanuel and Cohen Milstein coordinated with Korein Tillery and Lowey to form a leadership structure that almost all Plaintiffs agree would best represent the interest of the class. Indeed, a supermajority of the active MDL plaintiffs—41 out of 52—have voiced their support (some privately, some openly) for this group. The only reason we have not achieved full unanimity is because certain smaller firms have insisted on seeking their own appointments.

1

The factors set forth in Federal Rule of Civil Procedure 23(g)(3) demonstrate that the First-Filed Group is "best able to represent the interests of the class." FED. R. CIV. P. 23(g)(2).

First, the First-Filed Group invested substantial time and resources to investigate, file, consolidate, and litigate these claims. It includes the firms that were *first* to file civil cases, as well as firms that filed subsequent complaints based on an expanded investigation, including interviews with over sixty industry insiders and proprietary expert analysis.

Second, the First-Filed Group has deep experience prosecuting complex class actions and antitrust cases as well as unparalleled trial experience. The specific attorneys who lead the First-Filed Group have, individually and collectively, recovered *billions* for antitrust victims. We also bring to the table unique expertise in agricultural matters, including the specific issues raised by this case.

Finally, the First-Filed Group, which combines nationally known class-action experts with the largest litigation-only firm in the world, offers the class significantly more resources and clout than its competitors by a wide margin. While rival applications may attack the size of our group, this case will demand significant resources. Defendants are well-funded and sophisticated, represented by top defense firms. The issues are complex, standing at the intersection of antitrust, patent, and regulatory law. And there are additional complexities caused by the need to coordinate with numerous government

actors. The Court should resist calls to cut corners in terms of the resources available to the classes.

The First-Filed Group's work investigating and developing the claims, substantial experience and unparalleled resources make it "best able to represent the interests of the class[es]." FED. R. CIV. P. 23(g)(2).

## ARGUMENT

Rule 23(g)(3) allows the Court to designate interim class counsel "to act on behalf of a putative class before determining whether to certify a matter as a class action." *McFadden v. Microsoft Corp.*, No. C20-0640-RSM-MAT, 2020 WL 5642822, at *1 (W.D. Wash. Sept. 22, 2020). Where, as here, such appointments are necessary, courts consider: the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of the applicable law; the resources that counsel will commit to representing the class; and any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. FED. R. CIV. P. 23(g)(1). With competing proposals for leadership, the Court's task is to appoint the lawyers "best able to represent the interest of the class." *Id.* 23(g)(2).[1]

---

[1] Under Rule 23, the question for the Court is which *attorneys* will best represent the class. This is in contrast with, for instance, the Private Securities Litigation Reform Act, which directs a court to restrict its analysis to an accounting of the *named plaintiffs*. The PSLRA of course applies to securities fraud cases only.

3

## I. THE FIRST-FILED GROUP HAS DONE THE MOST WORK TO INVESTIGATE AND CHALLENGE DEFENDANTS' CONDUCT

Rule 23(g)(1)(A)(i)—"the work counsel has done in identifying or investigating potential claims in the action"—strongly favors the First-Filed Group.

Korein Tillery and Lowey, in cooperation with other law firms who are no longer seeking a leadership role, filed the *first* class complaint in this Court, in October 2022. Cohen Milstein and Quinn Emanuel filed after conducting a comprehensive investigation. For months, the firms reached out to over sixty industry participants. This resulted in significant, detailed factual allegations that go beyond the FTC's public complaint. *See, e.g.*, Complaint at ¶¶ 79, *Meadows v. Syngenta Crop Protection*, No. 22-cv-01128, (M.D.N.C. Dec. 26, 2022), Dkt. 1 (quoting former Defendant employee); *Id.* at ¶¶ 79, 80, 83, 87 101-02 (quoting former employees of distributors), ¶¶ 125-26, 137 (quoting former employees of manufacturers of generic alternatives).

As is encouraged by the Manual for Complex Litigation, Fourth, § 10.22, the First-Filed Group began to organize the plaintiffs in this litigation from the beginning. Korein Tillery and Lowey immediately reached out to counsel in the Indiana actions to coordinate transfer and then eventually led the argument before the Judicial Panel on Multidistrict Litigation. Thus, the First-Filed Group is the only applicant who was *both* first to file *and* to have identified the correct venue.

When the MDL was created, there was *no* consensus among the various firms that had filed actions as to which firm or firms should lead the case. Korein Tillery and Lowey on the one hand, and Cohen Milstein and Quinn Emanuel on the other, made the

first attempts at private ordering, resulting in the two formerly separate teams merging into one—the First-Filed Group—in the hopes of avoiding disputed leadership applications. The First-Filed Group then coordinated to move the case forward in other ways, such as: (i) continuing consultations with industry participants; (ii) organizing and leading conferences among plaintiffs' counsel regarding case management; (iii) communicating and coordinating with the government plaintiffs; (v) drafting the proposed case management order, getting consensus among plaintiffs' counsel, and leading the conferrals with Defendants; (vi) organizing the roles of counsel in preparation for the April 6 conference; and (v) in conjunction with other firms, drafting the brief in support of Plaintiffs' request for reproduction of the Government Documents. Pursuant to the Court's Case Management Order, the First Filed Group convened a meet and confer with the competing Movants, but, despite good faith efforts, could not reach agreement. The First Filed Group will continue to engage with the competing Movants after the filing of these briefs.

These efforts—which eventually resulted in supermajority support for the First-Filed Group—weigh strongly in favor of this application.

## II.     COUNSEL HAVE SIGNIFICANT EXPERIENCE AND DEEP KNOWLEDGE OF THE APPLICABLE LAW

The factors in Rule 23(g)(1)(A)(ii) and (iii)—"counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action" and "counsel's knowledge of the applicable law"—also strongly favor the proposed leadership structure.

5

## A.    Counsel Have Significant Antitrust and Class-Action Experience

The First-Filed Group have vast experience with and knowledge of antitrust cases generally, antitrust cases involving agriculture products, and antitrust class actions. They also boast leading attorneys with unparalleled *trial* experience. Below is a short summary of the firms' respective qualifications and accomplishments. Further details can be found in the firm resumes, attorney "bios", and other materials attached to the accompanying declarations of Mr. Brockett (Quinn), Mr. Burke (Korein Tillery), Mr. Eisenkraft (Cohen Milstein), and Mr. Briganti (Lowey).

***Quinn Emanuel*** is the largest and most successful law firm in the world devoted solely to business litigation. It has over 1,000 attorneys, most of whom graduated from of the nation's top law schools, and many of whom are former federal prosecutors, circuit-level clerks, and Supreme Court clerks. Quinn Emanuel is consistently ranked among the top five firms in virtually every category of business litigation. It is the "most feared law firm" in the country: three times in the past four years, a survey of over 350 major companies conducted by independent BTI Consulting Group identified Quinn Emmanuel as the firm they least wanted to face as opposing counsel. Quinn Emanuel has been ranked in the "fearsome foursome" for twelve years. Quinn Emanuel has also been named a "litigation powerhouse" by *The American Lawyer*, and a "global force in litigation" by *The Wall Street Journal*. Quinn Emanuel has obtained four 10-figure verdicts, seven 9-figure jury verdicts, fifty-one 9-figure settlements, and twenty 10-figure

6

settlements. It has won nearly $80 billion for plaintiffs; $28 billion in a recent two-year period.

Quinn Emanuel's deep bench has allowed it to develop the nation's premier practice for handling massive antitrust cases, particularly from the plaintiffs' side. The *Global Competition Review* named Quinn Emanuel's antitrust and competition practice among the "25 Global Elite 2023," and number five in their list of the world's top ten competition litigation practices. The firm has been ranked a "Tier One" antitrust practice by *Benchmark Litigation*, "Antitrust Litigation Department of the Year" by *The Recorder*, and "Class Action Group of the Year" by *Law360*.

Quinn Emanuel has recovered billions for clients in the antitrust space, specifically. For instance, Quinn Emanuel served as co-lead counsel in the antitrust case *In re Credit Default Swaps Antitrust Litigation*, where the mediator Judge Weinstein (Ret.), submitted a report recommending approval of $1.87 billion in settlements, saying "in 30-plus years of mediating high-stakes disputes, this was one of the finest examples of efficient and effective lawyering by plaintiffs' counsel that I have ever witnessed." Decl. of Daniel Weinstein at 2, No. 13-md-02476 (S.D.N.Y. Oct. 16, 2015), Dkt. 447.

The Honorable Judge Denise Cote later explained "the existence and size of this Settlement is attributable in no small measure to the skill of Class Counsel and the litigation strategy it employed." *Id.*, Opinion & Order at 22-23, Dkt. 557. *See also, e.g.*, *Ala. Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), (S.D.N.Y.) ($500 million in settlements in antitrust case); *Polyurethane Foam Antitrust Litig.*, No. 10-md-

02196 (N.D. Ohio) ($430 million in settlements in antitrust case); *Complete Ent. Res LLC v. Live Nation Ent., Inc.*, No. 2:15-cv-09814 (C.D. Cal.) ($110 million settlement in monopolization case).

Unlike most traditional plaintiff firms, Quinn Emanuel operates on both sides of the "v." In the past three years alone, Quinn Emanuel represented defendants in class actions dozens of times, including in *antitrust* class-actions. Quinn Emanuel's ability to operate on both sides gives it unique insights into the strategies employed by antitrust defendants and creates credibility with courts and adversaries.

***Korein Tillery.*** Korein Tillery is one of the country's leading and most successful plaintiffs' complex-litigation firms, representing a broad array of clients in high-stakes lawsuits and delivering over $18 billion in verdicts and settlements over the last sixteen years. The National Law Journal has put the firm on its "Plaintiffs' Hot List" seven times, and named it to its "50 Elite Trial Lawyers" list in 2014 and 2015. Between 2011 and 2016, Korein Tillery (along with co-counsel) recovered more than $5.1 billion for NCUA in sprawling securities litigation spanning three circuits.

Korein Tillery and its co-counsel were first to file antitrust claims that were consolidated into *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No 13-cv-7789 (S.D.N.Y), which recovered $2.3 billion for class members. Recently, in *Senne v. Office of the Commissioner of Baseball*, No. 3:14-cv-00608 (N.D. Cal.), Korein Tillery achieved a ground-breaking settlement on behalf of minor league baseball players for $185 million—one of the largest wage-and-hour settlements in history. In the final

8

approval order, Judge Spero wrote that Korein Tillery "has handled this case skillfully and with professionalism, diligently pursuing the interests of the players. The significant relief they have obtained under the Settlement Agreement is, in no small part, due to their expertise and dedication." *Id.*, Order at 12, Dkt. 1190.

*Cohen Milstein.* Cohen Milstein is one of the oldest, largest, and most successful law firms in the nation dedicated primarily to the prosecution of class actions. Cohen Milstein's antitrust prowess in particular has been recognized by numerous industry associations and legal publications. For instance, Cohen Milstein was chosen: by the Legal 500 for nine straight years as one of the top antitrust class action firms in the country; by American Lawyer Media and The National Trial Lawyers' as their Antitrust Law Firm of the Year; as The Legal 500's Leading Plaintiff Class Action Antitrust Firm; and as the National Law Journal's Elite Trial Lawyers—Antitrust Law 360's Competition Practice Group of the Year. Forbes has called Cohen Milstein a "class action powerhouse," while Inside Counsel has dubbed Cohen Milstein "[t]he most effective law firm in the United States for lawsuits with a strong social and political component."

Cohen Milstein secured the largest ever price-fixing jury verdict in United States history and obtained a $1.06 billion judgment. Remarking on Cohen Milstein's efforts, Judge Lungstrum wrote, "In almost 25 years of service on the bench, this Court has not experienced a more remarkable result." *In re Urethane Antitrust Litig.*, Memorandum and Order at 10-11, No. 04-md-1616, (D. Kan. July 29, 2018), Dkt. 3273. Other notable Cohen Milstein antitrust wins include its $575 million settlement on the eve of trial in

*Sutter Health Antitrust Litigation* (San Fran. Cnty., Cal.) and its $560 million settlement in *Electronic Books Antitrust Litigation* (S.D.N.Y.), both achieved while working closely with state attorneys' general.

**Lowey.** Since its founding in 1967, Lowey has successfully prosecuted complex antitrust class actions against some of the largest corporations in the world, recovering billions of dollars for class members. Lowey is recognized in the antitrust class action bar for its ability to lead complex, high-stakes actions.

Lowey's work has been repeatedly acknowledged. For example, in June 2020, Judge Rakoff praised "the high quality of [Lowey's] work, both in briefs and oral argument," and Lowey's achievements in the face of opposition from adversaries of "caliber and vigor[.]" *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2020 WL 3250593, at *4 (S.D.N.Y. Jun. 16, 2020) (approving settlements of $386.5 million). Judge Hellerstein similarly remarked: "Well, I think you've done astounding work. You've been persistent, took on a field of law that's extremely difficult. You were pressed by excellent counsel into successive motion practices in my court and defended in the Second Circuit." *Fund Liquidation Holdings LLC v. Citibank N.A.*, Transcript of Conference Proceeding at 29:18-22, No. 16-cv-5263, (S.D.N.Y. Nov. 29, 2022), Dkt 572 (approving $155 million settlement).

Lowey's expertise as lead or co-lead counsel in complex antitrust cases is demonstrated by the results. *See, e.g.*, *Laydon v. Mizuho Bank*, No. 12-cv-03419 (S.D.N.Y.) and *Fund Liquidation Holdings v. UBS AG*, No. 15-cv-5844 (S.D.N.Y.)) (sole

lead counsel in actions regarding conspiracy to manipulate Yen LIBOR and Euroyen TIBOR; $329 million in settlements); *Sullivan v. Barclays PLC*, No. 13-cv-02811 (S.D.N.Y.) (co-lead class counsel in actions regarding conspiracy to manipulate EURIBOR; $651.5 million in settlements); *Dennis v. JP Morgan Chase & Co.*, No. 16-cv-06496 (S.D.N.Y.) (co-lead counsel in case regarding conspiracy to manipulate Australian Bank Bill Swap Reference Rate; $185 million in settlements).

***In sum***, collectively, these four firms will bring a level of credibility with the Defendants that, we submit, competing applicants simply cannot match. Defendants know that we are capable of taking this case *through trial* and winning. That will inform their settlement calculus—all to the class's benefit.

### B.    Counsel Also Have Extensive Agricultural Experience

The First-Filed Group also brings experts who have specifically litigated in the narrow fields at issue here—agricultural products and antitrust issues arising from attempts to stymie the development of generic alternatives.

Korein Tillery's attorneys have unique expertise in prosecuting crop protection cases. Korein Tillery developed the scientific evidence and brought the paraquat and atrazine cases against Syngenta. Following successful resolution of that litigation, Public Justice recognized the KT team as Trial Lawyer of the Year Finalists. Korein Tillery maintains a group of toxicologists, chemists, and biologists on retainer and consults with them frequently in agricultural chemical cases. No other firms possess these resources.

11

A core member of the Korein Tillery team, Rosemarie Fiorillo, is a member of the Society of Toxicology who has published original scientific research regarding the herbicides paraquat, atrazine, and 2,4-D. She has an extensive background in environmental engineering, and successfully led the litigation team in both the atrazine water pollution case and paraquat case against different Syngenta entities. Having litigated environmental cases for the last thirteen years, Ms. Fiorillo is well-versed in the agrochemical industry and will be a unique resource for the class.

Lowey's experience includes prosecuting antitrust actions based on alleged restraints of trade similar to the loyalty programs at issue here—a defendant's alleged scheme to block manufacturers of generic products from competing in the market. *See, e.g.*, *In re Cardizem CD Antitrust Litig.*, No. 99-md-1278 (E.D. Mich.) (generic delay antitrust class action, resulting in affirmance of partial summary judgment and $80 million class settlement). Most recently, Lowey and its co-lead counsel obtained a $485 million settlement on behalf of drug purchasers based on allegations that the defendant manufacturer unlawfully foreclosed competition from generic brands. *In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. 1:19-md-02878 (D. Mass.).

Lowey also has served as lead counsel in three separate cases alleging price manipulation of agricultural products. *See Dennis v. The Andersons Inc.,* No. 20-cv-04090 (N.D. Ill.) (alleging manipulation of the wheat futures and options market by, among others, Cargill Incorporated); *Ploss v. Kraft Foods Grp.*, No. 15-cv-2937 (N.D. Ill.) (co-lead class counsel in certified class action alleging manipulation of wheat futures

12

and options); *Budicak v. Lansing Trade Grp.*, No. 19-cv-2499 (D. Kan.) ($18 million settlement on behalf of wheat futures and options traders). Lowey also partnered with Korein Tillery to file the first complaint in *In re Crop Inputs Antitrust Litigation*, a multidistrict litigation against the major suppliers of crop inputs (including several Defendants here). And Lowey's experience includes litigating against Defendant Syngenta for violating the antitrust laws through restrictions on sales of genetically modified seeds. *See McIntosh v. Monsanto Co.*, No. 01-cv-65 (E.D. Mo.).

Cohen Milstein is co-lead counsel in *In re Broiler Chicken Antitrust Litigation* (N.D. Ill.), representing a class of end-user consumers of broiler chicken who allege that defendants agreed to restrict supply. Six defendants have settled for $181 million, and the case is ongoing. The firm is also currently litigating *Jien v. Perdue Farms* (D. Md.) and *Brown v. JBS* (D. Col.), antitrust class actions representing plant workers, with partial settlements for $134.6 million. The firm also previously served as co-lead counsel in *Allen v. Dairy Farmers of America* (D. Vt.), recovering $50 million for the class. Outside of the antitrust space, Cohen Milstein recovered $760 million for Native American farmers and ranchers in a class action against the USDA. *See Keepseagle v. Vilsack*, No. 99-cv-3119 (D.D.C.).

Finally, Quinn Emanuel also has experience in agri-business litigation —again, on both sides of the "v." Quinn Emanuel represented plaintiffs in the *In re Egg Products Antitrust Litigation* (E.D. Pa.), achieving over $135 million in settlements for the class. Quinn Emanuel obtained groundbreaking class certification and recovery in

13

bankruptcy court in the *Tomato Products Antitrust Litigation*. The firm also represents defendants in *In Pork Antitrust Litigation* (D. Minn.), *In re Cattle and Beef Antitrust Litigation* (D. Minn.), and *In re Broiler Chicken Antitrust Litigation* (N.D. Ill.) cases, involving sweeping allegations of antitrust violations that require an understanding of the entire food supply chain. Of note, the firm is adverse to Syngenta (the Defendant here) in a trade-secret case involving the Farmer's Business Network, and has been involved in patent litigation regarding bovine growth hormones.

## C.   Counsel Have Significant Experience Working Cooperatively with Government Enforcers.

The First-Filed Group knows how to cooperate with the government in parallel proceedings to achieve the best results for the class in private litigation. For example, Cohen Milstein worked hand-in-glove with the attorneys general from thirty-three U.S. states en route to recovering more than $560 million for the class in *eBooks*. Similarly, in *Sutter*, Cohen Milstein partnered with the California Attorney General and recovered $675 million for the class along with injunctive relief. Over its fifty-year plus history, Lowey has repeatedly worked alongside the DOJ, CFTC and various State agencies in price fixing, generic delay, and commodity manipulation cases. *See, e.g.*, *In re Generics Pharmaceutical Price Fixing Litig.*, No. 16-md-2724 (E.D. Pa.) (coordinating with over forty-eight States Attorney General in pretrial proceedings, including document discovery and analysis, depositions, and expert reports).

For its part, Quinn Emanuel has one of the most elite investigations and government enforcement practices in the Country and includes among its partners

14

numerous former federal prosecutors and DOJ and FTC antitrust lawyers. Quinn Emanuel regularly works with the DOJ and FTC in parallel antitrust enforcement matters, including (currently) the aerospace "no-poach" case in Connecticut (*Borozny, et al. v. Raytheon Techs. Corp., et al.*, No. 21-cv-1657 (D. Conn.)), the Interest Rates Swaps case (*In re Interest Rate Swaps Antitrust Litig.*, No. 1:16-md-02704 (S.D.N.Y.)), and Treasuries matter (*In re Treasury Securities Auction Antitrust Litig.*, No. 1:15-md-02673 (S.D.N.Y.)).

Korein Tillery pursued an antitrust class action in cooperation with DOJ's parallel investigations and prosecutions of the price-fixing collusion in the FX market and recovered more than $2.3 billion on behalf of investors. Currently, Korein Tillery is working closely with the DOJ and more than two dozen state enforcers conducting coordinated discovery in parallel civil actions against Google for its illegally established monopoly on key digital advertising technologies.

## III. COUNSEL WILL BRING EXTENSIVE HUMAN AND FINANCIAL RESOURCES TO LITIGATE THIS PROPOSED CLASS ACTION

The First-Filed Group are also unrivaled with respect to Rule 23(g)(1)(A)(iv)— "the resources that counsel will commit to represent the class."

### A. Human and Capital Resources

*Quinn Emanuel* is the world's largest litigation firm with thirty-two offices around the globe. At last count, 318 of the firm's attorneys (or 35.3%) were law review editors in law school, 242 have clerked at least once for judges, and 24 partners were law school professors. Because Quinn Emanuel works on both sides of the "v," it is a very

15

diversified, well-capitalized firm that is not beholden to contingent income.  This allows the firm to make investments that will benefit class plaintiffs whenever meritorious cases (such as this one) require.

The core Quinn Emanuel team proposed for this case includes Daniel Brockett and Jeremy Andersen.  Mr. Brockett is Quinn Emanuel's Chair of Financial Institution Litigation practice.  He is a Chambers-ranked lawyer who has been called an "elite trial strategist" by his peers and "a very good lawyer who is always willing to roll the dice." He has been consistently ranked among the top litigators by multiple leading publications.  In 2018, he was ranked by Benchmark Litigation as one of the Top 100 Trial Lawyers in America.  Law360 also recently recognized Mr. Brockett as a "Competition MVP," and in 2016 the National Law Journal named him one of its "Litigation Trailblazers."  In 2021 and 2022, he was named one of LawDragon's 500 Leading Plaintiff Financial Lawyers.  Known as a cut-to-the-chase litigator with significant jury trial experience, Mr. Brockett has recovered billions for major institutional clients.

Mr. Andersen has an accounting background that has allowed him to succeed in complex litigation.  He has been a core member of many of Quinn Emanuel's recent antitrust class-action successes.  Three of his recent antitrust matters each resulted in over $100 million in recoveries, and a fourth recovered $95.5 million.  Overall, he has helped victims recover over $3 billion.  He was a *Legal 500* "Next Generation Partner" and a *Law360* "rising star."

*Korein Tillery* maintains offices in St. Louis, Chicago, and San Diego. Its team will be led by Christopher Burke and Rosemarie Fiorello.

As discussed in Section I.B above, Ms. Fiorello brings to the class thirteen years' worth of environmental-engineering expertise.

Mr. Burke has been appointed lead counsel in many high-stake and complex antitrust class actions. Collectively, Mr. Burke recovered over $10 billion on behalf of class members. For example, Mr. Burke was appointed lead counsel in *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-cv-7789 (S.D.N.Y), which recovered $2.3 billion for class members. Renowned mediator Kenneth Feinberg concluded that the FX settlements "represent[] some of the finest lawyering toward a negotiated resolution that I have witnessed in my career" and described Korein Tillery and its co-counsel as "superlative, sophisticated, and determined plaintiffs' lawyers." *Id.* Dkts. 925 at 2, 926, ¶ 29. Mr. Burke has been recognized three times (2014, 2018, and 2020) by the American Antitrust Institute for exemplary work in private enforcement of the antitrust law.

*Cohen Millstein* has approximately 100 lawyers and offices in North Carolina, Washington, D.C., New York, Philadelphia, Chicago, Florida, Minnesota, and Boston. The Cohen Milstein team will be led by Michael Eisenkraft and Jay Chaudhuri.

Mr. Eisenkraft serves as co-lead counsel in a number of antitrust cases and his work has been widely honored by the legal industry, including by Benchmark Litigation as a "Litigation Future Star" (2023) and in its "40 & Under Hot List" (2018 and 2019), by Legal 500 as a "Next Generation Partner" (since 2020), and by New York Super Lawyers

(Rising Star 2013-2019, Super Lawyer 2022-2023). He has been rated "AV Preeminent" by Martindale-Hubbell for a number of years.

Mr. Chaudhuri has spent his career fighting for, and working on behalf of, the people of North Carolina. Prior to joining Cohen Milstein, Mr. Chaudhuri served as General Counsel & Senior Policy Advisor at the North Carolina Department of State Treasurer. Before joining the Department of State Treasurer, Mr. Chaudhuri served as Special Counsel at the North Carolina Department of Justice, where he led an investigation by all fifty Attorneys General resulting in a landmark agreement with two leading social networking sites to better protect children from Internet predators. He currently serves in the North Carolina State Senate. Mr. Chaudhuri graduated from North Carolina Central University School of Law, where he was executive editor of the Law Journal.

*Lowey* has forty-four attorneys across two offices that specialize in prosecuting antitrust class actions. The Lowey team will be led by the firm's Chairman, Vincent Briganti.

Over the course of his twenty-five year career at the firm, Mr. Briganti has recovered billions of dollars in complex litigation representing sophisticated institutional investors. Mr. Briganti built Lowey's reputation as a pioneer of Commodity Exchange Act ("CEA") litigation, leading the teams that achieved what were at the time the largest recoveries ever recorded under the CEA. *See In re Sumitomo Copper Litig.*, No. 96-cv-4854 (S.D.N.Y.); *In re Amaranth Nat. Gas Comm. Litig.*, No. 07-cv-6377 (S.D.N.Y);

*Hershey v. Pac. Inv. Mgmt. Corp.*, No. 05-cv-4681 (N.D. Ill.); *In re Nat. Gas Comm. Litig.*, No. 03-cv-6186 (S.D.N.Y.). His significant antitrust victories include *In re GSE Bonds Antitrust Litigation,* No. 19-cv-01794 (S.D.N.Y.), for which Lowey received the 2020 award for Outstanding Antitrust Litigation Achievement in Private Law Practice from the American Antitrust Institute; and a string of major recoveries against banks alleged to have conspired to manipulate global benchmark rates discussed above in Section II.A. Mr. Briganti has been repeatedly recognized as a New York "Super Lawyer" in the field of antitrust litigation.

### B. <u>Trial Resources</u>

Should this case go to trial, the plaintiff class will be represented by five firms with a proven track record of winning complex trials.

To give an example, Quinn Emanuel tries more major business cases than any other law firm. Courts recognize that Quinn Emanuel attorneys are "trial lawyers who can actually go into court and try a case." *In re Credit Default Swaps*, Transcript of Conference Proceedings at 37-38, Dkt. 244. At least once each year, the firm is in a trial or an arbitration prosecuting or defending against a claim for over $1 billion in damages. Quinn Emanuel's partners have tried over 2,500 cases and arbitrations, winning 86% of them. Quinn Emanuel is one of few firms to have actually tried multiple *class actions* to verdict.

Korein Tillery attorneys have also tried numerous class actions, including antitrust cases, to judgment and/or verdict. In total they have tried more than 100 cases,

19

including a historic $10.1 billion verdict against Philip Morris.  Korein Tillery attorneys have been nominated for numerous regional and national trial lawyer awards, and have won many landmark decisions in state and federal appellate courts, including the Supreme Court of the United States.

Cohen Milstein served as co-lead counsel in *Urethanes Antitrust Litigation*, which resulted in the largest price-fixing jury verdict in U.S. history.  Lowey, by way of example, recently concluded a five-week jury trial as lead trial counsel for a major health insurance company. Finally, the First-Filed Group has unparalleled local trial experience, with Rick Coates having personally tried over 220 cases to verdict in North Carolina Courts.

### C.     <u>Local, National, and International Resources</u>

The First-Filed Group brings a deeply experienced team of North Carolina counsel to the table.  Pinto Coates, a Greensboro, North Carolina civil litigation firm that regularly represents both plaintiffs as well as large corporations, will serve as Liaison Counsel.  Richard L. Pinto will lead the Pinto Coates team.  Mr. Pinto has spent over forty years litigating civil matters in both federal and state courts in North Carolina, including all of the Federal Districts, regularly tries civil cases and was the president of ABOTA for the Western District of North Carolina.   Kenneth Kyre, after clerking for the Honorable Hiram H. Ward in the Middle District of North Carolina, has practiced for over forty years concentrating in large, complex civil litigation including numerous cases in the Middle District.  Lyn Broom has extensive civil litigation experience having tried

20

numerous complex litigation cases in the Middle District of North Carolina over the course of a thirty-two year practice including MDL litigation against Novartis and patent litigation against Allergan. The members of the Pinto Coates team have served on numerous professional and public service boards and have received many professional recognitions and awards. *See* Exhibits 1, 2 and 3. The Pinto Coates team has worked closely with the proposed co-lead counsel providing their significant knowledge and experience concerning the Court's rules, procedures and practices and will be integrally involved in all aspects of the case through trial.

Of particular significance, amongst the firms being put forward as potential lead or co-lead counsel, Cohen Milstein is the only firm with an office in North Carolina. Jay Chaudhuri—whose qualifications and extensive public service in this state are discussed above—will be one of the lawyers leading the Cohen Milstein team.

While the First-Filed Group's *local* resources are unmatched, their *national* and even international resources even further outpace the competition. This case involves a nationwide conspiracy impacting farmers nationwide. There is no telling where the evidence will eventually lead. The First-Filed Group has a nationwide—and worldwide—footprint that can be utilized when necessary.

### D. Other Resource Considerations

***Technological resources.*** The First-Filed Group also offers the class unique technological resources. The firms have developed *in-house* capabilities that allow for

the cost-efficient handling of documents and discovery. This allows us to streamline and minimize the cost of voluminous electronic discovery, saving the class money.

**Expert resources.** The First-Filed Group has collectively retained experts in the areas of biology, agronomy, agricultural economics, entomology and farm practices. Agricultural economists retained by the First-Filed Group have already gathered comparative data on pricing from Germany and put together preliminary damage models.

## IV. OTHER FACTORS ALSO SUPPORT THIS APPLICATION

### A. A Four-Firm Structure Is Warranted on the Facts of this Case

Other firms seeking a co-lead appointment will likely argue that four firms are not needed to litigate this case.

*First*, as discussed in Section I above, the First-Filed Group is the result of an *exhaustive* attempt at private ordering. These four firms did not file together, but began as rival factions. Many other firms were initially interested in leading this case as well. By agreeing to work together, the First-Filed Group reduced the number of applications before this Court. Indeed, were it not for the sheer volume of actions that were ultimately filed, the First-Filed Group would have succeeded in obtaining a unanimous consensus and relieving the Court of the burden of adjudicating multiple leadership applications altogether.

Courts recognize that such attempts should be encouraged. *See* Manual for Complex Litigation, Fourth, § 10.22 ("In some cases the attorneys coordinate their activities without the court's assistance, and such efforts should be encouraged.").

Allowing a few firms—who did not originate this case, who have done no unique work, and who do not have resources to match those of the First Filed Group—to upend the private-ordering effort would disincentivize counsel in future cases from attempting to work together.

*Second*, there are already six corporate Defendants occupying different levels of the distinctive market structure for crop protection products. These include the four largest seed and pesticide manufacturers in the world, together with distributors that are alleged to have been paid by the manufacturers to eliminate generic competition. Because this case is about suppressing competition from generic manufacturers, it will also implicate third-party manufacturers and will require modeling what the market would have looked like in a but-for world.

The claims here go to the heart of Defendants' business practices. They will be vigorously defended at every stage. And while the presence of the government action confirms the merits and seriousness of Plaintiffs' claim, and presents potential for efficiency gains, it also adds complexity. In fact, many of the most crucial issues for this private litigation—such as class certification and proof of class damages—will not be addressed in the government action.

Put differently, the question should not be whether the First-Filed Group has *too many* resources, but whether the other applicants possess *enough*. Courts have not hesitated to appoint multi-firm structures, particularly in complex cases where the firms had engaged in extensive private ordering, as here. *In re Lidoderm Antitrust Litig.*, No.

23

14-md-02521-WHO, 2017 WL 679367, at *27 (N.D. Cal. Feb. 21, 2017) (three co-lead counsel, liaison counsel, and five-firm executive committee); *In re Nat'l Football Leagues Sunday Ticket Antitrust Litig.*, No. ML 15-02668-BRO, 2016 WL 6693146, at *4 (C.D. Cal. May 23, 2016) (four co-lead counsel, five committee members); *Ehler v. IPEX, Inc.*, No. 08–cv–02220–CMA–BNB, 2009 WL 1392075, at *2 (D. Colo. May 15, 2009) (five co-lead counsel).

*Finally*, it should be stressed what we are *not* proposing: committees or multi-tiered structures. Without such additional layers of bureaucracy, work will be done directly by those in charge. Notably, the core attorneys on each firm's team all know each other well and have worked together on multiple occasions in various combinations for years. The familiarity and trust built up through these prior experiences means that the group will be able to delegate tasks to the attorneys best suited to handle them.

## B. <u>Separate Counsel Is Not Required for Sub-Classes</u>

Unable to challenge the resources of the First-Filed Group directly, smaller applicants may seek to convince the Court to chip off a separate piece of the case for them. This is unnecessary.

Specifically, other applicants may try to claim there is a "conflict" in representing "direct" versus "indirect" antitrust victims. If a manufacturer overcharges a retailer (a "direct" victim), who then sells the good to a consumer (an "indirect" victim), then retailer and the consumer may sometimes be said to be in conflict. The retailer would

24

want to argue that it absorbed the overcharge; the consumer would want to argue that the retailer passed the overcharge on through higher retail prices.

But that is *not* this case. The First-Filed Group seeks to represent farmers, who are all *end-users* of the products at issue. Plaintiffs did not even arguably "pass on" the overcharges to anyone, and thus no conflict exists among the proposed class members. *See Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1524-25 (2019) ("[T]his is not a case where multiple parties at different levels of a distribution chain are trying to all recover the same passed-through overcharge initially levied by the manufacturer at the top of the chain[.]").

While some counsel may have decided to stress a legal theory that casts farmers as "direct" victims, and others have decided that an "indirect" label is more apt, ultimately that is just a question of legal strategy. Different opinions on which legal theories to pursue do not represent a conflict requiring the appointment of *separate* counsel. *See generally In re FICO Antitrust Litig. Related Cases*, 2021 WL 4478042, at *4 (N.D. Ill. Sept. 30, 2021) (declining to decide at leadership-appointment stage whether proffered class consisted of direct or indirect antitrust victims).

All end-user farmers are equally situated and have the same interest in maximizing recovery by end-user farmers. And indeed, even differences in opinion on legal strategy are illusory here—the First-Filed Group will likely assert claims under *both* federal and state laws, in the alternative, in an effort to maximize the recovery for all farmers.

## **CONCLUSION**

The First-Filed Group has done more to develop, investigate, and organize this case than the competition. It brings a wealth of experience and unparalleled resources to a case that demands no less. For the reasons, as more fully discussed above, the First-Filed Group respectfully requests that the Court appoint Cohen Milstein, Korein Tillery, Lowey, and Quinn Emanuel as Interim Co-Lead Class Counsel, and Pinto Coates as Liaison Counsel.

DATED April 20, 2023

Respectfully submitted,

/s/ Daniel L. Brockett
Daniel L. Brockett (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel. (212) 849-7345
Facsimile (212) 849-7100
danbrockett@quinnemanuel.com
Steig D. Olson (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue
New York, New York 10010
Phone (212) 849-7231
Fax (212) 849-7100
steigolson@quinnemanuel.com

Sami H. Rashid (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

/s/ Jay J. Chaudhuri
Jay J. Chaudhuri
N.C. State Bar No. 27747
Cohen Milstein Sellers & Toll PLLC
50 Fayetteville St., Suite 980
Raleigh, NC 27601
Telephone (919) 890-0560
Facsimile (919) 890-0567
jchaudhuri@cohenmilstein.com
Michael B. Eisenkraft (*pro hac vice*)
Cohen Milstein Sellers & Toll PLLC
88 Pine Street, 14th Floor
New York, New York 10005
Telephone (212) 838-7797
Facsimile (212) 838-7745
meisenkraft@cohenmilstein.com

Proposed Interim Co-Lead Counsel

Tel. (212) 849-7237
Facsimile (212) 849-7100
samirashid@quinnemanuel.com

Jeremy Andersen (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel. (213) 443-3685
Facsimile (213) 443-3100
jeremyandersen@quinnemanuel.com

*/s/ Vincent Briganti*
LOWEY DANNENBERG, PC
Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Roland R. St. Louis, III (*pro hac vice*)
44 South Broadway, Suite 1100
White Plains, New York 10601
Tel. (914) 997-0500
Fax: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
rstlouis@lowey.com

*/s/ Christopher M. Burke*
Christopher M. Burke
Walter Noss
Yifan (Kate) Lv
KOREIN TILLERY PC
707 Broadway, Suite 1410
San Diego, CA 92101
Tel: (619) 625-5621
cburke@koreintillery.com
wnoss@koreintillery.com
klv@koreintillery.com

George Zelcs

*/s/ Richard L. Pinto*
Richard L. Pinto
N.C. State Bar No. 9412
Kenneth Kyre, Jr.
N.C. State Bar No. 7848
Lyn K. Broom
N.C. State Bar No. 17674
PINTO COATES KYRE
    & BOWERS PLLC
3203 Brassfield Road
Greensboro, NC 27410
Tel: (336) 282-8848
rpinto@pckb-law.com

27

Rosemarie Fiorillo
Randall P. Ewing, Jr.
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Tel: (312) 641-9750
gzelcs@koreintillery.com
rfiorillo@koreintillery.com
rewing@koreintillery.com

kkyre@pckb-law.com
lbroom@pckb-law.com

*Counsel for Plaintiffs Clint Meadows,
Michael Shows and Matt Taylor and
Counsel for Clifton Kervin, Walter
Psencik and Travis Psencik*

Proposed Liaison Counsel

## CERTIFICATE OF WORD COUNT COMPLIANCE

In compliance with Local Rule 7.3(d) of the Local Rules of Practice and Procedure and the Case Management Order No. 1 (Dkt. 31), I hereby certify that the foregoing Brief does not exceed 6,250 words, not including the caption, signature lines, the Certificate of Word Count Compliance, and the Certificate of Service, as reported by the word-processing software.

This the 20th day of April 2023.

**PINTO COATES KYRE & BOWERS, PLLC**

*/s/ Lyn K. Broom*
Lyn K. Broom
N.C. State Bar No. 17674
lbroom@pckb-law.com
3203 Brassfield Road
Greensboro, NC 27410
Telephone:  (336) 282-8848
Facsimile:  (336) 282-8409
*Counsel for Plaintiffs Clint Meadows, Michael Shows, Matt Taylor and Plaintiffs Clifton Kervin, Walter Psencik and Travis Psencik*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2023, I caused a true and correct copy of the

foregoing to be filed in this Court's CM/ECF system, which will send notification of such

filing to counsel of record.

EXECUTED on this 20th day of April, 2023.

**PINTO COATES KYRE & BOWERS, PLLC**

*/s/ Lyn K. Broom*
Lyn K. Broom