## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

IN RE CROP PROTECTION
PRODUCTS LOYALTY PROGRAM
ANTITRUST LITIGATION

Case No: 1:23-md-3062-TDS-JEP

This document relates to: ALL
ACTIONS

ORAL ARGUMENT REQUESTED

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

NATURE OF THE MATTER ................................................................. 1

PRELIMINARY STATEMENT ............................................................. 1

QUESTION PRESENTED .................................................................... 3

FACTUAL ALLEGATIONS .................................................................. 3

    A.    The Parties .......................................................................... 3

    B.    The Crop Protection Industry ........................................... 5

    C.    Defendants' Loyalty Rebate Programs ............................. 6

    D.    Defendants' Products at Issue ........................................... 7

    E.    Supply Agreements Between Syngenta and Corteva ................... 7

LEGAL STANDARDS ........................................................................... 7

ARGUMENT ........................................................................................ 8

I.    Plaintiffs Fail to State Federal Antitrust Claims ................................. 8

    A.    Applicable Legal Principles ............................................... 9

    B.    Plaintiffs' Damages Claims
           Are Barred by *Illinois Brick* ........................................... 13

          1.    Plaintiffs Are Indirect Purchasers .................................... 13

          2.    No Exception to the Direct
               Purchaser Rule Applies Here ............................................. 15

    C.    Plaintiffs' Federal Antitrust Claims Should
           Be Dismissed on the Independent Ground of
           Failure to Plead Proximate Causation ........................................ 18

II.   The Complaint Fails to State a Claim Under State Law ..................... 22

    A.   Plaintiffs' Claims Under the Laws of
        Several States Should Be Dismissed for
        Failure to Plead Proximate Causation ........................................ 22

        1.   All State Antitrust Claims
              Require Proximate Causation ........................................... 23

        2.   Several State Consumer Protection
              Claims Require Proximate Causation .............................. 27

    B.   Plaintiffs Lack Standing to Sue Under the Laws
        of Several Jurisdictions in Which They Do Not Allege
        They Have Suffered Injury............................................................ 30

    C.   Plaintiffs' State Antitrust and Consumer Protection
        Claims Fail in Certain States for State-Specific Reasons .......... 32

        1.   Plaintiffs' Antitrust and CPA Claims in
              Several States Should Be Dismissed for Lack of
              Alleged Intrastate Misconduct or
              Substantial Intrastate Effects........................................... 32

        2.   Plaintiffs Lack Standing to Sue Under the Laws of
              Montana and Puerto Rico, Where Antitrust Suits Are
              Not Permitted By Indirect Purchasers.............................. 35

        3.   Plaintiffs' CPA Claims Under the Laws of
              Five States Should Be Dismissed Because
              the Statutes Do Not Permit Class Actions ....................... 36

        4.   Plaintiffs Lack Standing to Bring Claims
              Under CPAs That Protect Only
              Non-Commercial Consumers ........................................... 38

        5.   Plaintiffs' Claims Under CPAs that
              Prohibit Only Deceptive, Misleading, or
              False Acts or Practices Should Be Dismissed ................... 39

        6.   Plaintiffs' Claims Under Three States' CPAs
              Fail for Additional State-Specific Reasons ....................... 44

III.   Nearly All of Plaintiffs' Claims Are
       Time-Barred as to Paraquat ................................................... 46

CONCLUSION...................................................................................... 47

## TABLE OF AUTHORITIES

CASES

PAGE(S)

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
    2009 WL 9502003 (C.D. Cal. July 6, 2009) ................................. 25

*Aldaya v. Encore Cap. Grp., Inc.*,
    2017 WL 1055961 (D. Haw. Mar. 20, 2017) ............................... 27

*Apple Inc. v. Pepper*,
    139 S. Ct. 1514 (2019) ......................................................... *passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................... 41

*Associated Gen. Contractors of Cal., Inc. v.*
    *Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) ................................................................... 10

*In re Auto. Parts Antitrust Litig.*,
    2013 WL 2456612 (E.D. Mich. June 6, 2013) ............................ 37

*Baker v. Elam*,
    883 F. Supp. 2d 576 (E.D. Va. 2012) ........................................ 38

*Beckler v. Visa U.S.A. Inc.*,
    2004 WL 2475100 (D.N.D. Sept. 21, 2004) ............................... 24

*In re Beef Indus. Antitrust Litig.*,
    600 F.2d 1148, 1163 (5th Cir. 1979) ......................................... 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................. 7, 8

*Belmora LLC v. Bayer Consumer Care AG*,
    819 F.3d 697 (4th Cir. 2016) .................................................... 18

iii

*B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*,
  439 F.3d 653 (10th Cir. 2006) ................................................... 11

*Cargill, Inc. v. Monfort of Colo., Inc.*,
  479 U.S. 104 (1986) .................................................................... 11

*In re Cattle & Beef Antitrust Litig.*,
  2023 WL 5310905 (D. Minn. Aug. 17, 2023) ........................... 26, 29, 36, 42

*In re Chocolate Confectionary Antitrust Litig.*,
  602 F. Supp. 2d 538 (M.D. Pa. 2009) ........................................ 42

*In re Chocolate Confectionary Antitrust Litig.*,
  749 F. Supp. 2d 224 (M.D. Pa. 2010) ........................................ 4

*Churlik v. Gate City Bank*,
  2024 WL 453606 (D. Minn. Feb. 6, 2024) ................................. 44

*Cnty. of Cook v. Philip Morris, Inc.*,
  817 N.E.2d 1039 (Ill. App. Ct. 2004) ....................................... 23

*Colleton Preparatory Acad., Inc. v. Hoover Universal Inc.*,
  666 S.E.2d 247 (S.C. 2008) ....................................................... 28

*Conergy AG v. MEMC Elec. Materials, Inc.*,
  651 F. Supp. 2d 51 (S.D.N.Y. 2009) ......................................... 32

*Crouch v. Crompton Corp.*,
  2004 WL 2414027 (N.C. Super. Ct. Oct. 28, 2004) ................... 24

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  2015 WL 3988488 (N.D. Ill. June 29, 2015) ............................. 25

*Dart Drug Corp. v. Corning Glass Works*,
  480 F. Supp. 1091, 1103 (D. Md. 1979) .................................... 17

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
  362 F. Supp. 3d 510 (N.D. Ill. 2019) ........................................ 26

*Dickinson v. SunTrust Mortg. Inc.*,
  2015 WL 1868827 (E.D. Ark. Apr. 23, 2015) ........................... 41

*Dickson v. Microsoft Corp.*,
  309 F.3d 193 (4th Cir. 2002) ............................................. *passim*

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  516 F. Supp. 2d 1072 (N.D. Cal. 2007) .................................... 23, 24, 37

iv

*Empire Merchs., LLC v. Reliable Churchill LLLP,*
902 F.3d 132 (2d Cir. 2018) ........................................................ 10

*Est. of Pilgrim v. Gen. Motors LLC,*
344 F.R.D. 381 (E.D. Mich. 2023) .......................................... 35, 36

*In re Express Scripts, Inc. Pharmacy Benefits Mgmt. Litig.,*
2006 WL 2632328 (E.D. Mo. Sept. 13, 2006) ............................ 37

*Fezjulai v. Sam's W., Inc.,*
205 F. Supp. 3d 723 (D.S.C. 2016) ............................................ 35

*Fishman Transducers, Inc. v. Paul,*
684 F.3d 187 (1st Cir. 2012) ...................................................... 32

*In re Flash Memory Antitrust Litig.,*
643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................................. 33, 43

*In re Flonase Antitrust Litig.,*
692 F. Supp. 2d 524 (E.D. Pa. 2010) ........................................ 35

*Frullo v. Landenberger,*
61 Mass. App. Ct. 814 (2004) .................................................... 37

*FTC v. Syngenta Crop Prot. AG,*
2024 WL 149552 (M.D.N.C. Jan. 12, 2024) ................................ 1

*Fucile v. Visa U.S.A., Inc.,*
2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004) ..................... 24

*Gaebler v. N.M. Potash Corp.,*
676 N.E.2d 228 (Ill. App. Ct. Nov. 27, 1997) ........................... 35

*GEICO Corp. v. Autoliv, Inc.,*
345 F. Supp. 3d 799 (E.D. Mich. 2018) ..................................... 26

*In re Glumetza Antitrust Litig.,*
611 F. Supp. 3d 848 (N.D. Cal. 2020) ....................................... 38

*Gooch v. E.I. DuPont de Nemours & Co.,*
40 F. Supp. 2d 857 (D. Ky. 1998) ............................................. 38

*Hemi Grp., LLC v. City of New York, N.Y.,*
559 U.S. 1 (2010) ...................................................................... 11

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v.*
*Matthew Bender & Co.,*

171 N.E. 3d 1192 (N.Y. 2021) ..................................................... 42

*In re HIV Antitrust Litig.*,
2023 WL 3006572 (N.D. Cal. Apr. 18, 2023) ............................ 41

*Ho v. Visa U.S.A. Inc.*,
2004 WL 1118534 (N.Y. Sup. Ct. Apr. 1, 2004),
*aff'd*, 793 N.Y.S.2d 8 (N.Y. App. Div. 2005) .............................. 24

*Holmes v. Am. States Ins. Co.*,
1 P.3d 552 (Utah Ct. App. 2000) ................................................ 38

*Holmes v. SIPC*,
503 U.S. 258 (1992) .................................................................... 18

*In re Humira (Adalimumab) Antitrust Litig.*,
465 F. Supp. 3d 811 (N.D. Ill. 2020) ......................................... 35

*Ill. Brick Co. v. Illinois*,
431 U.S. 720 (1977) .......................................................... 8, 9, 17

*Indep. Cnty. v. Pfizer, Inc.*,
534 F. Supp. 2d 882 (E.D. Ark. 2008) ....................................... 27

*Int'l Bhd. of Teamsters, Loc. 734 Health & Welfare Tr. Fund v.
Philip Morris Inc.*,
196 F.3d 818 (7th Cir. 1999) ..................................................... 12

*James River Ins. Co. v. Rapid Funding, LLC*,
658 F.3d 1207 (10th Cir. 2011) ................................................. 36

*Kanne v. Visa U.S.A. Inc.*,
723 N.W.2d 293 (Neb. 2006) ..................................................... 24

*Kansas v. UtiliCorp United, Inc.*,
497 U.S. 199 (1990) .................................................................... 15

*Kloth v. Microsoft Corp.*,
444 F.3d 312 (4th Cir. 2006) ............................................ *passim*

*Knowles v. Visa U.S.A., Inc.*,
2004 WL 2475284 (Me. Super. Ct. Oct. 20, 2004) .................... 23

*Laughlin v. Evanston Hosp.*,
550 N.E.2d 986 (Ill. 1990) ......................................................... 42

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ............................................................ *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
2019 WL 1331830 (S.D.N.Y. Mar. 25, 2019) ............................................ 31

*In re Lidoderm Antitrust Litig.*,
103 F. Supp. 3d 1155 (N.D. Cal. 2015) ................................................ 37, 42

*Lorix v. Crompton Corp.*,
736 N.W.2d 619 (Minn. 2007) .................................................... 24

*Luscher v. Bayer AG*,
2005 WL 6959406 (Ariz. Super. Ct. Sept. 16, 2005) ................................ 23

*Lyons v. Philip Morris*,
225 F.3d 909 (8th Cir. 2000) .................................................... 21

*Mann v. Bahi*,
251 F. Supp. 3d 112 (D.D.C. 2017) .............................................. 27

*Mayor of Balt. v. Actelion Pharms. Ltd.*,
995 F.3d 123 (4th Cir. 2021) .................................................... 30

*Metague v. Woodbolt Distrib., LLC*,
2021 WL 2457153 (D. Md. June 16, 2021) ................................ 31

*Miami Prods. & Chem. Co. v. Olin Corp.*,
546 F. Supp. 3d 223 (W.D.N.Y. 2021) ......................................... 38

*Miller v. Hubbard-Wray Co.*,
630 P.2d 880 (Or. Ct. App. 1981) ................................................. 38

*Moran v. Rockwell Dev. Grp., LLC*,
2024 WL 246023 (E.D. Pa. Jan. 23, 2024) ................................. 38

*Murphy v. Stonewall Kitchen, LLC*,
503 S.W.3d 308 (Mo. Ct. App. 2016) ......................................... 37

*In re Namenda Indirect Purchaser Antitrust Litig.*,
2021 WL 2403727 (S.D.N.Y. June 11, 2021) ............................ 37

*Nass-Romero v. Visa U.S.A. Inc.*,
279 P.3d 772 (N.M. Ct. App. 2012) ......................................... 24

*Nat'l Marine Elec. Distribs., Inc. v. Raytheon Co.*,
778 F.2d 190 (4th Cir. 1985) .................................................... 16

Case 1:23-md-03062-TDS-JEP   Document 95   Filed 03/11/24   Page 8 of 64

*Nev. Recycling & Salvage, Ltd. v. Reno Disposal Co., Inc.,*
    423 P.3d 605, 607 (Nev. 2018) ................................................... 24

*In re Niaspan Antitrust Litig.,*
    42 F. Supp. 3d 735 (E.D. Pa. 2014) ........................................... 43

*Novell, Inc. v. Microsoft Corp.,*
    505 F.3d 302 (4th Cir. 2007) ........................................... 19, 21, 22

*Nygaard v. Sioux Valley Hosps. & Health Sys.,*
    731 N.W. 2d 184 (S.D. 2007) ...................................................... 42

*Or. Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris, Inc.,*
    185 F.3d 957 (9th Cir. 1999) ....................................................... 24

*In re Packaged Ice Antitrust Litig.,*
    779 F. Supp. 2d 642 (E.D. Mich. 2011) ...................................... 36

*Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp.,*
    825 F. Supp. 2d 664 (M.D.N.C. 2011) ........................................ 32

*Parnell v. FanDuel, Inc.,*
    591 S.W.3d 315 (Ark. 2019) ....................................................... 35

*Peterson v. N.C. State Bd. of Elections,*
    2020 WL 7720573 (M.D.N.C. Dec. 29, 2020)
    *aff'd*, 853 F. App'x 861 (4th Cir. 2021) ....................................... 8

*Physicians Comm. for Responsible Medicine v. Gen. Mills, Inc.,*
    283 F. App'x 139 (4th Cir. 2008) ................................................ 45

*Plumbers' Loc. Union No. 690 Health Plan v. Apotex Corp.,*
    2017 WL 4235773 (E.D. Pa. Sept. 25, 2017) ............................. 39

*Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.,*
    828 F.2d 211 (4th Cir. 1987) ...................................................... 10

*In re Polyurethane Foam Antitrust Litig.,*
    799 F. Supp. 2d 777 (N.D. Ohio 2011) ....................................... 42

*In re Pork Antitrust Litig.,*
    495 F. Supp. 3d 753 (D. Minn. 2020) ................................... 39, 42

*In re Porsche Cars N. Am., Inc.,*
    880 F. Supp. 2d 801 (S.D. Ohio 2012) ....................................... 27

viii

*Precourt v. Fairbank Reconstr. Corp.*,
    856 F. Supp. 2d 327 (D.N.H. 2012) ............................................................ 33

*Quality Air Servs., L.L.C. v. Milwaukee Valve Co.*,
    567 F. Supp. 2d 96 (D.D.C. 2008) ............................................................... 37

*Rafferty v. Merck & Co.*,
    479 Mass. 141 (Mass. 2018) ....................................................................... 37

*Rainbow Play Sys., Inc. v. Backyard Adventure, Inc.*,
    2009 WL 3150984 (D.S.D. Sept. 28, 2009) ................................................. 42

*Ramallo Bros. Printing v. El Dia, Inc.*,
    392 F. Supp. 2d 118 (D.P.R. 2005) ............................................................. 34

*Reading Indus., Inc. v. Kennecott Copper Corp.*,
    631 F.2d 10 (2d Cir. 1980) .......................................................................... 10

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*,
    62 P.3d 142 (Colo. 2003) ............................................................................ 41

*Schaaf v. Residential Funding Corp.*,
    517 F.3d 544 (8th Cir. 2008) ...................................................................... 28

*Seafarers Welfare Plan v. Philip Morris*,
    27 F. Supp. 2d 623 (D. Md. 1998) .............................................................. 24

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Prac. Litig.*,
    2009 WL 3460218 (N.D. Ill. Oct. 20, 2009) .............................................. 28

*In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*,
    2022 WL 736250 (D. Del. Mar. 11, 2022) ................................................. 36

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) .................................................................................... 36

*Shaw v. Marriott Int'l, Inc.*,
    605 F.3d 1039 (D.C. Cir. 2010) .................................................................. 37

*Shore v. Charlotte-Mecklenburg Hosp. Auth.*,
    412 F. Supp. 3d 568 (M.D.N.C. 2019) ......................................................... 8

*Skalla v. Canepari*,
    430 S.W.3d 72 (Ark. 2013) ......................................................................... 41

*Smith v. Video Lottery Consultants, Inc.*,
    858 P.2d 11 (Mont. 1993) ..................................................................... 25, 34

ix

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
  2017 WL 4621777 (D. Mass. Oct. 16, 2017) .............................................. 36

*Southard v. Visa U.S.A. Inc.*,
  734 N.W.2d 192 (Iowa 2007) ...................................................... 23

*Staley v. Gilead Scis., Inc.*,
  446 F. Supp. 3d 578 (N.D. Cal. 2020) ........................................ 34

*Stalvey v. Am. Bank Holdings, Inc.*,
  2013 WL 6019320 (D.S.C. Nov. 13, 2013) ................................. 36

*Stark v. Visa U.S.A. Inc.*,
  2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004) ...................... 23

*State ex rel. Leech v. Levi Strauss & Co.*,
  1980 WL 4696 (Tenn. Ch. Sept. 25, 1980) ................................. 46

*Stewart Agency, Inc. v. Arrigo Enters.*,
  266 So. 3d 207 (Fla. 4th Dist. Ct. App. 2019) ........................... 27

*Stonebridge Collection, Inc. v. Carmichael*,
  791 F.3d 811 (8th Cir. 2015) ..................................................... 41

*Strang v. Visa U.S.A., Inc.*,
  2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005) .......................... 24

*Supreme Auto Transp. LLC v. Arcelor Mittal*,
  238 F. Supp. 3d 1032 (N.D. Ill. 2017) ....................................... 28

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*,
  902 F.3d 735 (7th Cir. 2018) ..................................................... 23

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  66 F. Supp. 3d 1154 (D. Minn. 2014) ................................. 35, 36

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
  150 F. Supp. 3d 593 (D.S.C. 2015) ........................................... 36

*Tenn. Med. Ass'n v. BlueCross BlueShield Tenn., Inc.*,
  229 S.W.3d 304 (Tenn. Ct. App. Jan. 9, 2007) .......................... 25

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  599 F. Supp. 2d 1179 (N.D. Cal. 2009) ..................................... 35

*Tharpe v. Hyundai Motor Am., Inc.*,
  2022 WL 3137453 (C.D. Cal. July 12, 2022) ............................. 44

x

*Tremont Pub. Advisors, LLC v. Conn. Res. Recovery Auth.*,
   217 A.3d 953 (Conn. 2019) ........................................................................ 24

*United Food & Com. Workers Loc. 1776 & Participating Emps.*
   *Health & Welfare Fund v. Teikoku Pharma USA, Inc.*,
   74 F. Supp. 3d 1052 (N.D. Cal. 2014) ...................................................... 34

*United States v. Socony-Vacuum Oil Co.*,
   310 U.S. 150 (1940) ................................................................................... 16

*Vinci v. Waste Mgmt., Inc.*,
   36 Cal. App. 4th 1811 (Cal. Ct. App. 1995) ............................................. 23

*Waggoner v. Denbury Onshore, LLC*,
   2014 WL 11290898 (S.D. Miss. Mar. 31, 2014),
   *aff'd*, 612 F. App'x 734 (5th Cir. 2015) ................................................... 24

*Walsh v. TelTech Sys., Inc.*,
   821 F.3d 155 (1st Cir. 2016) ..................................................................... 27

*White v. Rockingham Radiologists, Ltd.*,
   820 F.2d 98 (4th Cir. 1987) ....................................................................... 21

*White v. Wyeth*,
   705 S.E. 2d 828 (W. Va. 2010) ................................................................. 29

*Woods v. Gerber Life Ins. Co.*,
   536 F. Supp. 3d 15 (M.D.N.C. 2021) ......................................................... 7

*WorldHomeCenter.com, Inc. v. PLC Lighting, Inc.*,
   851 F. Supp. 2d 494 (S.D.N.Y. 2011) ...................................................... 31

*Wrobel v. Avery Dennison Corp.*,
   2006 WL 7130617 (Kan. Dist. Ct. Feb. 1, 2006) ...................................... 23

*In re Zetia (Ezetimibe) Antitrust Litig.*,
   2019 WL 6122017 (E.D. Va. Oct. 15, 2019) ............................................ 13

## STATUTES & RULES

15 U.S.C. § 15 ............................................................................................ 9, 46

15 U.S.C. § 26 ............................................................................................... 11

Fed. R. Civ. P. 12(b)(1) ............................................................................... 1, 7

Fed. R. Civ. P. 12(b)(6) ............................................................................... 1, 8

xi

Ark. Code Ann. § 4-88-107 .................................................................. 39

Ark. Code Ann. § 4-88-113 .......................................................... 27, 35

Ark. Code Ann. § 4-88-115 .................................................................. 46

Cal. Bus. & Prof. Code § 16750.1 ...................................................... 46

Cal. Bus. & Prof. Code § 17208 .......................................................... 46

Colo. Rev. Stat. Ann. § 6-1-105(1) ............................................... 40, 41

Colo. Rev. Stat. Ann. § 6-1-113 .......................................................... 27

D.C. Code Ann. § 28-3905(k)(1) ......................................................... 37

Fla. Stat. Ann. § 501.207 .................................................................... 46

Fla. Stat. Ann. § 501.211(2) ................................................................ 27

Haw. Rev. Stat. Ann. § 480-13 ........................................................... 27

Haw. Rev. Stat. Ann. § 480-13.3(a) .................................................... 43

815 Ill. Comp. Stat. Ann. § 505/10a(e) .............................................. 46

Mass. Gen. Laws Ann. ch. 93A § 11 ............................................. 28, 32

Minn. Stat. Ann. § 8.31 ...................................................................... 28

Minn. Stat. Ann. § 325F.69(1) ............................................................ 44

Miss. Code Ann. § 15-1-49 .................................................................. 47

Mo. Ann. Stat. § 407.025 .................................................................... 37

Mo. Ann. Stat. § 516.120 .................................................................... 47

Mont. Code Ann. § 30-14-102(1) ........................................................ 37

Mont. Code Ann. § 30-14-133(1)(a) ............................................... 28, 35

Nev. Rev. Stat. Ann. § 598.0993 ........................................................ 28

N.H. Rev. Stat. Ann. § 358-A:2 ......................................................... 33

N.H. Rev. Stat. Ann. § 358-A:10(I) .................................................... 28

Or. Rev. Stat. Ann. § 646.605 ............................................................ 38

Case 1:23-md-03062-TDS-JEP   Document 95   Filed 03/11/24   Page 13 of 64

Or. Rev. Stat. Ann. § 646.638(a) ....................................................... 29

73 Pa. Stat. Ann. § 201-9.2 ...................................................... 28, 38

R.I. Gen. Laws Ann. § 6-13.1-5.2(a) ................................................ 38

S.C. Code Ann. § 39-5-140(a) ................................................... 29, 35

Utah Code Ann. § 13-11-3(2)(a) .................................................... 38

Utah Code Ann. § 13-11-19(2) .................................................. 29, 35

Va. Code Ann. § 59.1-198 ................................................................ 38

W. Va. Code Ann. § 46A-6-106(a) ............................................... 29

Wis. Stat. Ann. § 133.18(2) ............................................................ 47

## NATURE OF THE MATTER

In February 2023, the Judicial Panel on Multidistrict Litigation centralized numerous purported class actions in this District (ECF No. 1). On September 5, 2023, Plaintiffs filed a consolidated complaint (ECF No. 78) modeled on the complaint in *FTC v. Syngenta Crop Protection AG*, No. 1:22-cv-00828 (M.D.N.C.) (the "FTC Action"). Plaintiffs' complaint asserts claims under Sections 1 and 2 of the Sherman Act, Section 3 of the Clayton Act, and antitrust and consumer protection laws of 38 states. Defendants Syngenta Crop Protection AG, Syngenta Corporation, Syngenta Crop Protection, LLC (collectively, "Syngenta") and Corteva, Inc. ("Corteva" and, together with Syngenta, "Defendants") move to dismiss under Rules 12(b)(1) and 12(b)(6) on the grounds set forth below.[1]

## PRELIMINARY STATEMENT[2]

Plaintiffs are twelve farmers who claim to pay "overcharges" on some of Defendants' crop protection products. Plaintiffs posit that the "overcharges"

---

[1] On January 12, 2024, this Court ruled on Defendants' motions to dismiss the FTC Action. *FTC v. Syngenta Crop Prot. AG*, 2024 WL 149552 (M.D.N.C. Jan. 12, 2024). To conserve resources of the Court and the parties, Defendants do not pursue the same legal arguments here that were litigated in that motion, notwithstanding differences in the factual allegations between the two complaints.

[2] Unless otherwise noted, emphasis has been added to quotations, and internal quotations, brackets, citations, and footnotes have been omitted.

1

are caused by Defendants' rebate programs, which allegedly exclude generic manufacturers from selling to distributors. Plaintiffs' claims should be dismissed for two principal reasons.

*First*, Plaintiffs are "indirect" purchasers who cannot assert federal antitrust claims. Plaintiffs allegedly buy Defendants' products from retailers and not directly from Defendants. Thus, at least two layers of intermediaries—distributors and retailers—stand between Defendants and Plaintiffs in the distribution chain. Longstanding Supreme Court precedent bars damages claims by indirect purchasers such as Plaintiffs.

The proximate cause principles underlying this bright-line rule defeat Plaintiffs' federal antitrust claims for injunctive relief. Proximate cause is an essential element of federal antitrust claims, regardless of the relief sought. Plaintiffs' claims are remote and the chain of causation attenuated because the alleged "overcharges" must be passed on through at least two levels of the distribution chain before reaching Plaintiffs. Further, the alleged restraint of trade (rebates paid to distributors and retailers) occurs in the wholesale marketplace, in which Plaintiffs do not participate. And while Plaintiffs assert that Defendants' rebates reduce generic competitors' wholesale sales to rebate recipients, the rebates do not affect generic manufacturers' ability to sell through other channels, including ***directly*** to Plaintiffs.

*Second*, Plaintiffs' state-law antitrust and consumer protection claims fail due to the absence of any injury proximately caused by Defendants' rebate programs.  In addition, Plaintiffs' state-law claims fail for a variety of independent, largely state-specific reasons.

## QUESTION PRESENTED

Should the complaint be dismissed for the reasons provided herein?

## FACTUAL ALLEGATIONS

### A.    The Parties

Defendants Syngenta Crop Protection AG, Syngenta Corporation, Syngenta Crop Protection, LLC, and their affiliates are collectively involved in the discovery, research, development, manufacture, and sale of crop protection products.  ¶¶ 29, 32, 60-61.[3]  Defendant Corteva is separately involved in the discovery, research, development, manufacture, and sale of crop protection products.  ¶¶ 36, 60-61.[4]

Plaintiffs are twelve farmers from Arkansas, California, Florida, Illinois, Missouri, Tennessee, Texas, and Wisconsin.  ¶¶ 18-28.[5]  Plaintiffs

_____

[3] Citations in the form "¶ _" or "¶¶ _" refer to the complaint (ECF No. 78).

[4] Although Plaintiffs have sued Syngenta and Corteva together, Syngenta has no corporate affiliation with Corteva.

[5] Plaintiffs are Clint Meadows, Michael Shows, Matt Taylor, John W. Jenkins, Clifton Kirven, Janie Yeargin, Ronald Yeargin, Donald F. Deline, Peter F. Bonin, Robert Ott, Bernard "B" Jones IV, and Martin Wait.

3

allege that they paid "artificially inflated prices" **to retailers** for certain crop protection products manufactured by Defendants, and that those prices resulted from Defendants' "loyalty agreements" with "crop protection product dealers (distributors and retailers)." *E.g.*, ¶ 1.

Plaintiffs purport to bring this action on behalf of themselves and a class defined as:

> All persons and entities in the United States and its territories who purchased a crop protection product at any time during the period from October 27, 2018 through and until the anticompetitive effects of Defendants' challenged conduct cease (the "Class Period") that was manufactured by one or more of the Defendants and contained one or more of the Relevant AIs, directly from one or more Defendants, or directly from a distributor or retailer that entered into a loyalty program agreement with one or more of the Defendants.

¶ 259.

Plaintiffs also purport to represent a subclass of individuals and entities located in various states and territories who "during the Class Period, purchased a crop protection product containing one of [sic] more of the Relevant AIs that was manufactured by one or more of the defendants." ¶ 260.[6]

---

[6] These states and territories include Arizona, Arkansas, California, Colorado, Connecticut, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Pennsylvania,

4

Plaintiffs allege that distributors and retailers that "joined Defendants' loyalty programs"—none of which is named as a defendant—"are Defendants' conspirators." ¶ 38.

## B. The Crop Protection Industry

Crop protection products "increase[] crop yields and contribute[] to more efficient production of crops." ¶¶ 40, 60. Defendants are alleged to be "the leading pesticides manufacturers in the United States," whose products "are considered a must have for distributors and retailers." ¶ 82. Defendants and other manufacturers formulate "finished" crop protection products by combining at least one active chemical—the "AI"—with inert components. ¶¶ 41-43. AIs containing more than one active ingredient are referred to as "mixtures." ¶43. Each AI has a "mode of action"—"the chemical and biological mechanism by which an active ingredient" operates. ¶ 45.

A dual legal framework that "incentivize[s] innovation" governs crop protection products. ¶¶ 50, 54. This system consists of patent applications and regulatory review. ¶¶ 51-52. Inventors like Defendants can apply for 20-year patents to protect new AIs. ¶ 51. Environmental Protection Agency (EPA) approval of a new AI grants the inventor "exclusive rights to use the

───────────────

Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, West Virginia, and Wisconsin. ¶ 260.

5

scientific data it provided to the agency [in support of its AI] for a period of ten years." ¶ 53.  After an AI's patent and data exclusivity expire, generic manufacturers may rely on that data to sell generic versions.  ¶¶ 56-59.

Plaintiffs concede that Defendants do not sell crop protection products to farmers.  ¶ 6.  Rather, Defendants sell their products to distributors, who in turn sell those products to retailers, who sell to farmers.  ¶¶ 6, 63-64.

Plaintiffs contend that "[t]raditional" distributors handle about 90% of U.S. sales of crop protection products, branded and generic, with seven distributors handling over 90% of sales through this channel.  ¶ 66.

## C.  **Defendants' Loyalty Rebate Programs**

Plaintiffs allege that Syngenta and, separately, Corteva operate loyalty programs for distributors and retailers that offer a year-end rebate that reduces the net price of products containing certain AIs if the dealer meets a threshold for the purchase or sale of such products.  ¶¶ 71-72, 90, 153.  The rebate thresholds and amounts differ by AI and year.  *See, e.g.*, ¶ 121.

Plaintiffs rhetorically disparage Defendants' payments as "exclusion payments" (*e.g.*, ¶ 84) and "kickbacks" (*e.g.*, ¶ 83), but concede that they are actually payments offered in the form of "rebates."  ¶ 7.  Plaintiffs themselves acknowledge that major distributors choose to participate in the loyalty programs based on the "incentives created by the … loyalty program[s]," and

6

the ability to "maintain a higher profit margin compared to the margin of selling generic products." ¶¶ 83, 85.

Although Plaintiffs generally allege that "retailers … sell Defendants' crop protection products directly to farmers" (¶ 71), none of the Plaintiffs identifies the particular retailer(s) from which they directly purchase the products at issue. This is significant because Plaintiffs do not—and cannot— allege that all distributors and all retailers participate in the challenged rebate programs. Moreover, the complaint fails to allege that Plaintiffs have purchased any products on which Defendants have paid rebates.

### D.   Defendants' Products at Issue

Plaintiffs focus on six Syngenta AIs that are alleged to be included in Syngenta's loyalty rebate program: azoxystrobin, mesotrione, metolachlor (including s-metolachlor), fomesafen, paraquat, and lambda-cyhalothrin. ¶ 69. Plaintiffs focus on three Corteva AIs alleged to be included in Corteva's loyalty rebate program: acetochlor, oxamyl, and rimsulfuron. *Id*.

### E.   Supply Agreements Between Syngenta and Corteva

Corteva makes a mixture containing mesotrione, which Syngenta exclusively supplies per an agreement. ¶ 191. Syngenta also exclusively supplies s-metolachlor to Corteva under a similar agreement. *Id*.

7

## LEGAL STANDARDS

Rule 12(b)(6) requires dismissal where Plaintiffs fail to plead facts sufficient "to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)—including when well-pleaded allegations do not state a claim that is "plausible on its face." *Woods v. Gerber Life Ins. Co.*, 536 F. Supp. 3d 15, 18 (M.D.N.C. 2021). In assessing plausibility, the court relies "upon its judicial experience and common sense." *Id.* Conclusory factual allegations and legal conclusions are not credited. *Twombly*, 550 U.S. at 556-57; *Shore v. Charlotte-Mecklenburg Hosp. Auth.*, 412 F. Supp. 3d 568, 572-73 (M.D.N.C. 2019). The same standard applies here to Defendants' motion under Rule 12(b)(1). *Peterson v. N.C. State Bd. of Elections*, 2020 WL 7720573, at *3 (M.D.N.C. Dec. 29, 2020) (Schroeder, J.), *aff'd*, 853 F. App'x 861 (4th Cir. 2021).

## ARGUMENT

### I.  Plaintiffs Fail to State Federal Antitrust Claims

Plaintiffs allege overcharges of crop protection products that Plaintiffs did not purchase directly from any Defendant. Such claims are barred under the federal antitrust laws by the principles of antitrust standing embodied in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) and *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

8

## A.     **Applicable Legal Principles**

In *Illinois Brick*, the Supreme Court established the bright-line rule that only direct purchasers can state claims for damages under the federal antitrust laws.  431 U.S. at 726-29 (The "direct purchaser, and not others in the chain of manufacture or distribution, is the party 'injured in his business or property' within the meaning of [Section 4 of the Clayton Act]."); *see Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1520 (2019) ("Our decision in *Illinois Brick* established a bright-line rule that authorizes suits by ***direct*** purchasers but bars suits by ***indirect*** purchasers.") (emphasis in original).[7]  In establishing this rule, the Court was motivated by two policy rationales: (1) that "allowing indirect purchasers to recover damages at each level down the economic chain 'would create a serious risk of multiple liability for defendants'," and (2) that "courts would be required to engage in highly complicated calculations to 'apportion the recovery among all potential plaintiffs that could have absorbed part of the overcharge.'"  *Kloth v. Microsoft Corp.*, 444 F.3d 312, 320 (4th Cir. 2006) (quoting *Illinois Brick*, 431 U.S. at 730, 737).

---

[7] Section 4 of the Clayton Act, 15 U.S.C. § 15, is the statutory provision creating a private right of action for damages under the federal antitrust laws.  And it is the provision that Plaintiffs invoke as a basis for claiming damages on their Sherman Act claims.  ¶¶ 280, 285.  Plaintiffs do not identify the statutory basis for their claim for damages under Section 3 of the Clayton Act, but Section 4 is the only possible source.

9

In establishing the direct purchaser rule in *Illinois Brick*, the Supreme Court "incorporate[d] principles of proximate cause into § 4" of the Clayton Act, which authorizes private claims for damages. *Apple*, 139 S. Ct. at 1520. And although the Supreme Court did not address claims for injunctive relief in *Illinois Brick*, the decision "has a broader significance" beyond damages claims "in indicating that there are inherent limitations in the substantive protection afforded by the antitrust laws," which "exclude claims based on conjectural theories of injury and attenuated economic causality." *Reading Indus., Inc. v. Kennecott Copper Corp.*, 631 F.2d 10, 14 (2d Cir. 1980).

As the Supreme Court confirmed in *Lexmark*, **all** causes of action under the federal antitrust laws "incorporate a requirement of proximate causation." 572 U.S. at 132 (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 529-39 (1983) ("*AGC*")). This requirement of proximate causation applies equally to claims seeking damages and claims seeking injunctive relief. *Id.* at 134 n.6, 135 (holding proximate cause "is an element of the cause of action" that "must be met in **every** case"); *see id.* at 132 ("[W]e generally presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute."); *see also Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 219-20 (4th Cir. 1987) (citing *AGC* to affirm dismissal of claims for damages and injunctive relief under §§ 1 and 2

10

of the Sherman Act and holding "we are satisfied that just as the causal connection between harm and violation was too attenuated to support standing to seek such a treble damages remedy, it is too attenuated to permit prosecution of a claim for injunctive relief"); *see also*, *e.g.*, *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 142 (2d Cir. 2018) (affirming dismissal of claims for damages and injunctive relief under RICO—whose private remedy was modeled after Clayton Act § 4—because the plaintiff's "theory of causation" would require the court "to 'go beyond the first step' in the causal chain") (quoting *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 10 (2010)).

Accordingly, proximate causation must be pleaded and proved for claims for damages under Section 4 of the Clayton Act[8] and for claims seeking injunctive relief under Section 16 of the Clayton Act.[9]  Indeed, as the Supreme Court has explained, "[i]t would be anomalous … to read the Clayton Act to authorize a private plaintiff to secure an injunction against a

_____

[8] *See supra* n.7.

[9] Section 16 of the Clayton Act, which authorizes suits for injunctive relief "against threatened loss or damage by a violation of the antitrust laws," 15 U.S.C. § 26, provides the statutory basis for the relief Plaintiffs seek for their claims under Section 1 of the Sherman Act (¶ 281) and Section 3 of the Clayton Act (¶ 291).  Plaintiffs do not identify the statutory source of their claim for injunctive relief under Section 2 of the Sherman Act, but Section 16 is the only potential source.

11

threatened injury for which he would not be entitled to compensation if the injury actually occurred." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 112 (1986). "Sections 4 and 16 are thus best understood as providing complementary remedies for a single set of injuries." *Id.* at 113; *see*, *e.g.*, *B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 439 F.3d 653, 666 (10th Cir. 2006) (holding that *AGC*'s proximate causation requirement "applies to actions arising under both section 4 and section 16 of the Clayton Act").

Notwithstanding the conceptual overlap between the direct purchaser rule under *Illinois Brick* and the proximate causation requirement, the need to plead and prove proximate causation is an "independent obstacle" to plaintiffs seeking damages or injunctive relief under the federal antitrust laws. *Int'l Bhd. of Teamsters, Loc. 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818, 823, 828 (7th Cir. 1999) ("The direct-purchaser doctrine of *Illinois Brick* and the direct-injury doctrine of [*AGC*]" present "independent obstacle[s]" to antitrust plaintiffs.); *see Kloth*, 444 F.3d at 325 ("[I]n addition to the barrier imposed by the doctrine of *Illinois Brick*, plaintiffs have failed to demonstrate that they have sustained direct antitrust-type injury, as required by … [*AGC*]."). Thus, federal antitrust claims for alleged overcharges—including those seeking injunctive relief— must satisfy both *Illinois Brick*'s direct purchaser rule and *Lexmark*'s proximate cause requirement. Plaintiffs fail to satisfy either requirement.

**B.** **Plaintiffs' Damages Claims
Are Barred by _Illinois Brick_**

Under the bright-line direct purchaser rule, Plaintiffs' federal damages claims should be dismissed because Plaintiffs do not—and cannot—plead any direct purchase from a Defendant; nor can Plaintiffs demonstrate that an exception to the _Illinois Brick_ rule applies to their claims.

**1.** **Plaintiffs Are Indirect Purchasers**

The application of _Illinois Brick_'s direct purchaser rule is "straightforward": "if manufacturer A sells to retailer B, and retailer B sells to consumer C, then C may not sue A. But B may sue A if A is an antitrust violator. And C may sue B if B is an antitrust violator." _Apple_, 139 S. Ct. at 1521. The Fourth Circuit has applied the bright-line direct purchaser rule to reject claims by plaintiffs situated similarly to Plaintiffs here—consumers (C) who allegedly paid an overcharge on Microsoft software that they purchased ***not*** from Microsoft (A) but instead from PC manufacturers (B) that purchased the software from Microsoft. _See Dickson v. Microsoft Corp._, 309 F.3d 193, 213-14 (4th Cir. 2002); _see also Kloth_, 444 F.3d at 320 ("[P]laintiffs were indirect purchasers because they did not buy products directly from Microsoft. … The plaintiffs were … at the end of the retail distribution chain with at least one and possibly more intermediaries between them and Microsoft."); _In re Zetia (Ezetimibe) Antitrust Litig._, 2019 WL 6122017, at *8-13

9 (E.D. Va. Oct. 15, 2019) (dismissing Plaintiffs' claims against a company that "purchased the … product from [the manufacturer] and resold it to Plaintiffs" because "Plaintiffs are indirect purchasers").

The complaint alleges that Defendants sell their ***finished*** crop protection products to distributors (¶ 63), and sell ***ingredients***—"technical grade" or "manufacturing use" AIs—to other manufacturers or "formulators" of crop protection products, which "process and mix" these AIs into "final crop protection product[s]" (¶ 49). Defendants' finished crop protection products pass through a three-level distribution channel to reach end users such as farmers. In this channel—which Plaintiffs label the "traditional" distribution channel (¶¶ 66, 67, 68, 214)—manufacturers (like Defendants) sell to distributors, distributors sell to retailers, and retailers sell to end users (like Plaintiffs).

Plaintiffs do not allege that they purchase crop protection products directly from Defendants. In fact, in their 178-page complaint, Plaintiffs fail to allege facts identifying any entity from which they have directly purchased Defendants' crop protection products—much less showing a ***single*** direct purchase from any Defendant. Instead, Plaintiffs rely on generalizations such as "retailers … sell Defendants' crop protection products directly to farmers." ¶ 71; *see also* ¶ 6 (referring to "the dealers who serve as middlemen between Defendants and farmers"). Thus, Plaintiffs appear to concede that

14

they purchase directly from (unidentified) retailers, and not from manufacturers. *Id.*[10] As indirect purchasers, Plaintiffs cannot state a federal antitrust claim for damages.

## 2. No Exception to the Direct Purchaser Rule Applies Here

In *Illinois Brick*, "[t]he Supreme Court expressly contemplated two exceptions to the direct purchaser rule: (1) where the indirect purchaser acquired goods through a preexisting cost-plus contract and (2) where the direct purchaser is owned or controlled by its customer," *Dickson*, 309 F.3d at 214—neither of which applies here. And the Supreme Court subsequently issued a "clear directive in *UtiliCorp United* against crafting new exceptions to the *Illinois Brick* rule." *Id.* at 215. In particular, the Supreme Court admonished lower courts "not to carve out exceptions" to the direct purchaser rule, because "[t]he possibility of allowing an exception, even in rather meritorious circumstances, would undermine the rule." *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 216 (1990); *see also Apple*, 139 S. Ct. at 1524

―――――――――――――

[10] Plaintiffs artificially collapse two levels of the supply chain into one by referring to distributors and retailers collectively as "dealers." ¶ 1. Plaintiffs allege that 80% of retail locations are owned by distributors (¶ 64), but in the same allegation acknowledge the existence of independent retailers. And Plaintiffs elsewhere acknowledge the "chain of sales—from manufacturers to distributors to retailers," which Plaintiffs label the "traditional distribution channel." ¶ 66.

15

(reasoning that "to litigate a series of exceptions" to the direct purchaser rule would be "an unwarranted and counterproductive exercise").

Consistent with the Supreme Court's directive, the Fourth Circuit has not adopted additional exceptions to *Illinois Brick*—and it has squarely held that there is no exception for conspiracy allegations that, as here, ***do not*** allege a ***price-fixing*** conspiracy.  *See Dickson*, 309 F.3d at 215 (holding that the plaintiff's "conspiracy allegation [was] insufficient to circumvent the *Illinois Brick* rule" because it did not allege a "price-fixing conspiracy").

Plaintiffs purport to allege a price-fixing conspiracy through (1) a conclusory assertion that all distributors and retailers that "joined" Defendants' loyalty programs are co-conspirators (¶ 38), and (2) conclusory and boilerplate assertions of a conspiracy to "fix" prices  in the Sherman Act § 1 count of the complaint (¶¶ 273-276).  But Plaintiffs fail to plead a price-fixing conspiracy for at least two reasons.

*First*, the factual allegations of the complaint do not in any way suggest a conspiracy to fix prices.  "Price fixing" has a well-established meaning. "[Prices] are fixed because they are agreed upon."  *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 222-23 (1940).  "[I]n order to conspire to restrain retail price competition there must be some agreement to set, control, fix, maintain, or stabilize prices."  *Nat'l Marine Elec. Distribs., Inc. v. Raytheon Co.*, 778 F.2d 190, 193 (4th Cir. 1985) (rejecting price-fixing claim

16

because "[e]ach dealer … set its own prices").  Here, rather than pleading facts showing any agreement between Defendants and dealers to set prices, Plaintiffs assert that Defendants' "*de facto* exclusive dealing agreements" with dealers resulted in "overcharges" to farmers because dealers refuse to sell less expensive generic products.  ¶¶ 7, 264.

The Fourth Circuit has rejected similar alleged conspiracies as proposed *Illinois Brick* exceptions.  In *Dickson*, the Fourth Circuit held that the direct purchaser rule blocked the plaintiffs' claims of an "overcharge" even where the plaintiffs had alleged a conspiracy between Microsoft and the PC manufacturers from which the plaintiffs directly purchased Microsoft software.  309 F.3d at 215.  The Fourth Circuit held that the "inclusion of a conspiracy allegation [wa]s insufficient to circumvent the *Illinois Brick* rule" because the alleged conspiracy was not a "price-fixing conspiracy"—that is, a conspiracy in which "a dealer has illegally conspired with a manufacturer **with respect to the price paid by a consumer**."  *Id.*  And because the plaintiffs in *Dickson* had alleged that the conspiracy resulted in an overcharge to consumers, *Dickson* necessarily holds that allegations that a conspiracy inflates prices do not plead a "price-fixing" conspiracy.  *Id.* at 216.

*Second*, Plaintiffs' alleged conspiracy introduces a "serious risk of multiple liability for defendants."  *Kloth*, 444 F.3d at 320 (quoting *Illinois Brick*, 431 U.S. at 730).  Plaintiffs have not joined any dealers as defendants.

17

"Because the [middlemen] are not parties to this suit, the possibility of
inconsistent adjudications on the issue of the existence of a vertical
conspiracy leaves the defendants subject to the risk of multiple liability that
the *Illinois Brick* court found unacceptable." *Dart Drug Corp. v. Corning
Glass Works*, 480 F. Supp. 1091, 1103 (D. Md. 1979) (citing *In re Beef Indus.
Antitrust Litig.*, 600 F.2d 1148, 1163 (5th Cir. 1979)).

For these reasons, Plaintiffs' federal damages claims should be
dismissed.[11]

### C. Plaintiffs' Federal Antitrust Claims Should Be Dismissed on the Independent Ground of Failure to Plead Proximate Causation

Plaintiffs' federal antitrust claims, regardless of whether they seek
damages or injunctive relief, fail to satisfy the bedrock requirement of
proximate causation. Under *Lexmark*, "the proximate-cause requirement
generally bars suits for alleged harm that is 'too remote' from the defendant's
unlawful conduct." 572 U.S. at 133. Under the federal antitrust statutes, the
"directness" of the relationship "between the injury asserted and the
injurious conduct alleged" is "one of [the] central elements" of "Clayton Act

---

[11]  Additionally, Plaintiffs fail to allege any dealer involvement in
Defendants' supply agreements with one another. ¶¶ 191-193. Given the
absence of any well-pleaded downstream conspiracy with respect to these
agreements, any claims premised on these agreements must be dismissed.

18

causation." *Holmes v. SIPC*, 503 U.S. 258, 259, 268-69 (1992); *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 711-12 (4th Cir. 2016) (holding that proximate causation requires a "sufficiently close connection" such that the injury "flow[s] directly from the [violation] wrought by the defendant's conduct"); *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 310-11, 317 (4th Cir. 2007) ("Considerations of the directness of the plaintiff's injury and of the existence of more-directly harmed parties are closely related" such that "[a]nti-trust law favors granting standing to the most direct victims of defendants' anticompetitive conduct and denying standing to more remote victims.").

Here, Plaintiffs' alleged injuries from "overcharges" on Defendants' crop protection products are too ***remote*** from the alleged restraint of trade at the ***wholesale*** level of the so-called "traditional" distribution channel (including separate layers of distribution and retail sales). Three factors combine to yield this remoteness:

*First*, as shown above, Plaintiffs are indirect purchasers of Defendants' products. Within the traditional distribution channel, Defendants' finished crop protection products pass through a three-level distribution channel to

19

reach end users such as farmers.[12]  As in *Kloth*, the "traditional" channel is a

multi-tiered distribution system, 444 F. 3d at 320, and multiple distributors

and many more retailers stand between manufacturers and farmers as the

allegedly "most efficient way for manufacturers to distribute their products to

farmers."  ¶¶ 63-67.

    *Second*, the complaint posits that Defendants' rebate programs reduce

generic manufacturers' sales of their products **to distributors** at the

**wholesale** level.  *See* ¶ 71 (alleging that **distributors** and retailers must

"limit **[their] purchase[s]**" of comparable generic crop protection products);

¶ 76 (alleging that Defendants' rebate programs keep distributors'

"purchase[s] from generic manufacturers at [a] very low percentage"); ¶ 72

(alleging that Defendants' rebates are "intended to promote adherence to

loyalty thresholds and thus ensure that the practical effect of the programs is

to prevent any substantial distribution of generic crop protection products");

¶ 71 (alleging that Defendants' rebate programs require that **distributors**

"cannot purchase more than an incredibly low percentage of **products from**

_____

[12]  End users are even more remote from Defendants' alleged sales of
"technical grade" or "manufacturing use" AIs—to other manufacturers or
"formulators" of crop protection products, which "process and mix" these AIs
into "final crop protection product[s]."  ¶ 49.

20

***generic manufacturers***").  But the complaint does not—and cannot—allege that Plaintiffs are participants in these markets.

*Third*, the complaint also fails to allege any facts showing that Defendants' rebate programs in any way limit generic manufacturers' ability to sell crop protection products ***directly*** to any end user or through non-traditional channels of distribution, such as e-commerce.[13]

Under these circumstances, the complaint "alleges an indirect injury" insufficient to establish proximate causation.  *Lyons v. Philip Morris*, 225 F.3d 909, 911, 914 (8th Cir. 2000).  Because Plaintiffs are not actual market participants in the allegedly restrained ***wholesale*** marketplace, and because Defendants' rebates do not restrain generic manufacturers' ability to sell products ***directly*** to end users, Plaintiffs' claims should be dismissed under the proximate causation requirement of *Lexmark* and *AGC*.  *See White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 104 (4th Cir. 1987) (dismissing monopolization claim against hospital because plaintiff is "neither a provider nor consumer" in the relevant market and dismissing tying claim because the

---

[13] The complaint acknowledges that generic manufacturers can and do sell outside of the traditional distribution channel, such as direct sales to local retailers or farmers, but the complaint dismisses these alternatives as "inefficient."  ¶¶ 66-67.  The complaint ignores non-"traditional" e-commerce distribution—such as through FBN, the "Amazon" of crop protection products.  *See* www.fbn.com/direct/crop-protection.  And, in any event, there is no allegation that generics have no access to the traditional channel.

21

"[t]he hospital is not a competitor in the [allegedly foreclosed] market for the tied product").[14]

Under these circumstances, Plaintiffs have failed to plead that the alleged injuries to end users were proximately caused by Defendants' rebate programs, as required by *Lexmark* and *AGC*. Accordingly, Plaintiffs' federal antitrust claims for injunctive relief should be dismissed.

## II. The Complaint Fails to State a Claim Under State Law[15]

### A. Plaintiffs' Claims Under the Laws of Several States Should Be Dismissed for Failure to Plead Proximate Causation

For the same reasons that Plaintiffs have failed to plead that the alleged injuries to end users were proximately caused by Defendants' rebate programs for purposes of the federal antitrust law claims, *see supra* Point I.C, so too have they failed to satisfy proximate causation requirements under state law.

_____

[14] The Fourth Circuit later clarified that *White* does not create a "bright-line rule that only consumers or competitors in the relevant market have antitrust standing." *Novell*, 505 F.3d at 311. Defendants do not rely on any such rule here. Instead, Defendants emphasize that a plaintiff's status as an actual consumer or competitor in the relevant market plays a meaningful role in *AGC*'s "examination of the directness or remoteness of the plaintiff's injury." *Id.* at 315.

[15] For ease of reference, charts summarizing the bases for dismissal of each of Plaintiffs' state-law claims are attached hereto as **Appendix A** (state antitrust claims) and **Appendix B** (state CPA claims).

22

### 1. All State Antitrust Claims Require Proximate Causation

To state a claim under each of the state antitrust laws asserted in the complaint, Plaintiffs must establish that their alleged antitrust injury was proximately caused by Defendants' rebate programs.

Courts have held that this proximate causation requirement survives the enactment of *Illinois Brick* repealer statutes because "[i]t is one thing to say that a state is willing to allow someone other than a direct purchaser to have the opportunity to shoulder the burden of showing proximate causation; it is quite another thing to say that the state has thrown both the direct-purchaser rule *and* proximate causation out the window." *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 744 (7th Cir. 2018) (emphasis in original); *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1094 (N.D. Cal. 2007) (analyzing the issue of antitrust standing under state antitrust laws by reference to state court decisions "conclud[ing] not only that antitrust standing is distinct from the issue of indirect purchaser standing, but that application of the AGC factors is a proper means of determining antitrust standing").

Several of the state antitrust laws under which Plaintiffs bring their claims require satisfaction of the *AGC* factors.[16]  Several additional state antitrust laws have been interpreted as requiring a threshold analysis of

---

[16] *See, e.g.*, *Luscher v. Bayer AG*, 2005 WL 6959406, at *1-2 (Ariz. Super. Ct. Sept. 16, 2005); *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1814-15 (Cal. Ct. App. 1995); *Cnty. of Cook v. Philip Morris, Inc.*, 817 N.E.2d 1039, 1045-47 (Ill. App. Ct. 2004); *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 198-99 (Iowa 2007); *Wrobel v. Avery Dennison Corp.*, 2006 WL 7130617, at *2-3 (Kan. Dist. Ct. Feb. 1, 2006); *Knowles v. Visa U.S.A., Inc.*, 2004 WL 2475284, at *5 (Me. Super. Ct. Oct. 20, 2004); *Stark v. Visa U.S.A. Inc.*, 2004 WL 1879003, at *2-4 (Mich. Cir. Ct. July 23, 2004); *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 298-99 (Neb. 2006); *Nev. Recycling & Salvage, Ltd. v. Reno Disposal Co., Inc.*, 423 P.3d 605, 607 (Nev. 2018); *Nass-Romero v. Visa U.S.A. Inc.*, 279 P.3d 772, 778 (N.M. Ct. App. 2012); *Ho v. Visa U.S.A. Inc.*, 2004 WL 1118534, at *2 (N.Y. Sup. Ct. Apr. 1, 2004), *aff'd*, 793 N.Y.S.2d 8 (N.Y. App. Div. 2005); *Beckler v. Visa U.S.A. Inc.*, 2004 WL 2475100, at *4 (D.N.D. Sept. 21, 2004); *In re DRAM Antitrust Litig.*, 516 F. Supp. 2d at 1094 (noting South Dakota "state trial court's bench ruling employing *AGC* factors and granting dismissal based on lack of antitrust standing"); *Fucile v. Visa U.S.A., Inc.*, 2004 WL 3030037, at *2-4 (Vt. Super. Ct. Dec. 27, 2004).

24

proximate causation, some informed by an adaptation of the *AGC* factors,[17]

and others informed by a state-specific remoteness inquiry.[18]

Still other state antitrust laws are interpreted harmoniously with

federal antitrust laws. For such states, "the presence of a statutory

harmonization provision (either statutory or common law), absent any

---

[17] *See, e.g.*, *Tremont Pub. Advisors, LLC v. Conn. Res. Recovery Auth.*, 217 A.3d 953, 959 n.7, 965-66 (Conn. 2019) ("[T]o have standing to bring a claim under the [Connecticut] antitrust act, a plaintiff must adequately plead both that it has suffered an antitrust injury and that it is an efficient enforcer of the antitrust act."); *Seafarers Welfare Plan v. Philip Morris*, 27 F. Supp. 2d 623, 633-34 (D. Md. 1998) (holding that "[a]bsent some direct relation between the injury asserted and the allegedly unlawful conduct, the requirements of proximate cause are not satisfied" for plaintiffs' federal and Maryland antitrust claims); *Crouch v. Crompton Corp.*, 2004 WL 2414027, at *18-19, 26-27 (N.C. Super. Ct. Oct. 28, 2004) (holding that indirect purchasers lacked antitrust standing based on factors resembling the *AGC* factors, including an assessment of whether "the causal connection between the act and the claimed injury [is] too remote"); *Or. Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris, Inc.*, 185 F.3d 957, 963 & n.4 (9th Cir. 1999) (Oregon antitrust); *Strang v. Visa U.S.A., Inc.*, 2005 WL 1403769, at *3 (Wis. Cir. Ct. Feb. 8, 2005) (observing that, "if faced with this issue, our appellate courts would look to the [*AGC*] factors for guidance in assessing an indirect or remote purchaser's standing" and dismissing claims as "too remote and speculative").

[18] *See, e.g.*, *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 631 (Minn. 2007) ("Standing under Minnesota antitrust law must be defined by some prudential limits informed by foreseeability, proximate cause, remoteness, and relation of the injury to the purposes of the antitrust law."); *Waggoner v. Denbury Onshore, LLC*, 2014 WL 11290898, at *3-4 (S.D. Miss. Mar. 31, 2014), *aff'd*, 612 F. App'x 734 (5th Cir. 2015) (analyzing standing under Mississippi antitrust laws by reference to the *AGC* factors); *Tenn. Med. Ass'n v. BlueCross BlueShield Tenn., Inc.*, 229 S.W.3d 304, 311 (Tenn. Ct. App. Jan. 9, 2007) ("The same proximate cause standard governs Plaintiffs' statutory claims under the TCPA and the TTPA.").

25

countervailing statutory law or case law from a state appellate court, is

sufficient to permit a district court to apply federal antitrust-standing law—

including *AGC*—to claims brought under that state's antitrust laws." *See*,

*e.g.*, *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL

3988488, at *4 (N.D. Ill. June 29, 2015); *Smith v. Video Lottery Consultants,*

*Inc.*, 858 P.2d 11, 13-14 (Mont. 1993) (noting that sections of Montana's

antitrust law are "modeled after … the Sherman Act" and that the court

would give "due weight to the federal courts' interpretation" of alleged

antitrust violations arising under those sections); *In re Aftermarket Auto.*

*Lighting Prods. Antitrust Litig.*, 2009 WL 9502003, at *6 (C.D. Cal. July 6,

2009) (concluding that "at the very least courts would require plaintiffs in

antitrust actions [under harmonized state antitrust laws, including Arizona,

the District of Columbia, Mississippi, Nevada, New Mexico, New York,

Puerto Rico, Rhode Island, Tennessee, Utah, and West Virginia] to plausibly

allege that they were participants in the relevant product market where the

alleged anticompetitive activity took place"); *In re Dealer Mgmt. Sys.*

*Antitrust Litig.*, 362 F. Supp. 3d 510, 540-45 (N.D. Ill. 2019) (holding that the

District of Columbia, New Hampshire, Rhode Island, Utah, and West

Virginia, among other states, would likely apply *AGC* factors based on

harmonization provisions in those state antitrust laws and in the absence of

countervailing state statute or case law). As shown above, *Illinois Brick* repealer statutes are not "countervailing statutory law."

## 2. Several State Consumer Protection Claims Require Proximate Causation

Plaintiffs must also plead proximate causation with respect to their claims under various state consumer protection acts ("CPAs"). As a number of federal courts have held, states that apply the *AGC* factors to state antitrust claims would also apply them to consumer protection claims based on allegedly anticompetitive conduct. *See*, *e.g.*, *In re Cattle & Beef Antitrust Litig.*, 2023 WL 5310905, at *9 (D. Minn. Aug. 17, 2023) (applying "*AGC* to the consumer protection claims arising under state law where the state employs *AGC* in the antitrust context"); *see also GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 845-46 (E.D. Mich. 2018) (observing that an "analysis of the *AGC* factors with respect to the plaintiffs' antitrust claims applied as well to the remoteness inquiry called for under the consumer protection laws of Arkansas [and] New York"). Accordingly, the *AGC* factors apply to consumer protection claims arising under the laws of California, Illinois, Kansas, Nebraska, Nevada, New Mexico, New York, North Dakota, and South Dakota. *See supra* Point II.A.1.

Several other states' laws require proximate causation. *See Indep. Cnty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882, 889 (E.D. Ark. 2008);[19] *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 833 (S.D. Ohio 2012) (Colorado CPA);[20] *Mann v. Bahi*, 251 F. Supp. 3d 112, 120 (D.D.C. 2017) (D.C. CPA); *Stewart Agency, Inc. v. Arrigo Enters.*, 266 So. 3d 207, 213 (Fla. 4th Dist. Ct. App. 2019);[21] *Aldaya v. Encore Cap. Grp., Inc.*, 2017 WL 1055961, at *10 (D. Haw. Mar. 20, 2017);[22] *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (Massachusetts CPA);[23] *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 552 (8th Cir. 2008);[24] *Supreme Auto Transp. LLC v. Arcelor Mittal*, 238

---

[19] *See* Ark. Code Ann. § 4-88-113(f)(2) (requiring "a claimant [to] prove individually that he or she suffered an actual financial loss ***proximately caused*** by his or her ***reliance on*** the use of a practice declared unlawful under this chapter").

[20] *See* Colo. Rev. Stat. Ann. § 6-1-113 (permitting an action by any person who "is injured ***as a result of*** such deceptive trade practice").

[21] *See* Fla. Stat. Ann. § 501.211(2) (permitting damages to be awarded "[i]n any action brought by a person who has ***suffered a loss as a result of***" a violation of the statute).

[22] *See* Haw. Rev. Stat. Ann. § 480-13 (permitting suit by "any person who is injured in the person's business or property ***by reason of*** anything forbidden or declared unlawful by this chapter").

[23] *See* Mass. Gen. Laws Ann. ch. 93A § 11 (permitting an action where plaintiff "***suffers any loss … as a result of***" a violation of the Massachusetts Consumer Protection Act).

[24] *See* Minn. Stat. Ann. § 8.31 (private attorney general provision permitting action by "any person ***injured by***" a violation of statutes including the Minnesota Prevention of Consumer Fraud Act).

F. Supp. 3d 1032, 1041-42 (N.D. Ill. 2017) (requiring plaintiffs to "show[] …

proximate cause or damages legally caused by the defendants' conduct" and

dismissing claim under Montana, Nevada, and New Hampshire CPAs

because "the *AGC* factors have not been satisfied");[25] *In re Sears, Roebuck &*

*Co. Tools Mktg. & Sales Prac. Litig.*, 2009 WL 3460218, at *5 (N.D. Ill. Oct.

20, 2009) ("In … Pennsylvania … the elements of a consumer fraud claim

include reliance upon a misrepresentation and injury proximately caused by

the reliance.");[26] *Colleton Preparatory Acad., Inc. v. Hoover Universal Inc.*,

666 S.E.2d 247, 254 (S.C. 2008), *overruled on other grounds by Sapp v. Ford*

*Motor Co.*, 687 S.E.2d 47 (S.C. 2009);[27] *Cattle & Beef Antitrust Litig.*, 2023

WL 5310905, at *11 (holding that Oregon and Utah CPAs, among others,

---

[25] *See* Mont. Code Ann. § 30-14-133(1)(a) (permitting an action by any person who "***suffers any ascertainable loss*** … ***as a result of***" a violation of the Montana Consumer Protection Act); Nev. Rev. Stat. Ann. § 598.0993 (permitting action "to restore to any person in interest any money or property … which may have been acquired ***by means of*** any deceptive trade practice"); N.H. Rev. Stat. Ann. § 358-A:10(I) (permitting action by "[a]ny person ***injured by***" a violation of the New Hampshire Consumer Protection Act").

[26] 73 Pa. Stat. Ann. § 201-9.2(a) (permitting ana ction by any person who "purchases or leases goods or services primarily for personal, family or household purposes and ***thereby suffers any ascertainable loss*** … ***as a result of***" a violation of Pennsylvania's Unfair Trade Practices Act).

[27] S.C. Code Ann. § 39-5-140(a) (permitting action by any person who "***suffers any ascertainable loss*** … ***as a result of***" a violation of the South Carolina Unfair Trade Practices Act).

require satisfaction of *AGC*);[28] *White v. Wyeth*, 705 S.E. 2d 828, 837 (W. Va. 2010).[29]

For these reasons, Plaintiffs' claims under the CPAs of Arkansas, California, Colorado, the District of Columbia, Florida, Hawaii, Illinois, Kansas, Massachusetts, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Dakota, Oregon, South Carolina, South Dakota, Utah, and West Virginia each fail.

**B.    Plaintiffs Lack Standing to Sue Under the Laws of Several Jurisdictions in Which They Do Not Allege They Have Suffered Injury**

Plaintiffs assert claims under the laws of several jurisdictions in which no Plaintiff allegedly purchased any of Defendants' crop protection products or suffered any injury.[30]   *See Mayor of Balt. v. Actelion Pharms. Ltd.*, 995

---

[28] Or. Rev. Stat. Ann. § 646.638(a) (permitting action by "a person that *suffers an ascertainable loss … as a result of*" a violation of the Oregon Trade Practices Act); Utah Code Ann. § 13-11-19(2) (permitting action by a "consumer who *suffers loss as a result of*" a violation of the Utah Consumer Sales Practices Act).

[29] W. Va. Code Ann. § 46A-6-106(a) (permitting action by any person "who purchases or leases goods or services and thereby *suffers an ascertainable loss … as a result of*" a violation of the West Virginia General Consumer Protection Act).

[30] There are 30 jurisdictions where no Plaintiff is alleged to have purchased or suffered any injury related to a Syngenta or Corteva product: Arizona, Colorado, Connecticut, District of Columbia, Hawaii, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North

30

F.3d 123, 133-34 (4th Cir. 2021) (holding that, by failing to allege purchases in a state, plaintiffs "may not seek relief for their own injuries under those States' statutes"). Because Plaintiffs lack both Article III and statutory standing, each of these claims should be dismissed. *See id.* at 134 (finding that the named plaintiffs did not have standing in states where they did not personally suffer an injury, even though "[i]f the Rule 23 requirements are met, the plaintiffs could then represent the class members who sustained damages under those laws"); *see also Metague v. Woodbolt Distrib., LLC*, 2021 WL 2457153, at *7 (D. Md. June 16, 2021).

---

Dakota, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Utah, Vermont, Virginia, and West Virginia.

Plaintiffs are based in Arkansas (Wait), California (Ott), Florida (Matt Taylor), Illinois (Shows; Kirven), Mississippi (Jones IV), Missouri (Meadows; Deline), Tennessee (Yeargin), and Wisconsin (Bonin). ¶¶ 18-20, 22-28. In addition, Plaintiff John W. Jenkins is alleged to be a Texas farmer (¶ 21) but the complaint asserts no violation of Texas law. Plaintiff Deline's business, Deline Farms, is also alleged to operate in Arkansas, Illinois, Mississippi, and Tennessee. ¶ 24.

Only Shows, Taylor, and Deline are alleged to have purchased Corteva's products. ¶¶ 19-20, 24. Accordingly, as to Corteva, all state claims except those of Arkansas, Florida, Illinois Mississippi, Tennessee, and Missouri should be dismissed for lack of Article III and statutory standing.

### C. Plaintiffs' State Antitrust and Consumer Protection Claims Fail in Certain States for State-Specific Reasons

#### 1. Plaintiffs' Antitrust and CPA Claims in Several States Should Be Dismissed for Lack of Alleged Intrastate Misconduct or Substantial Intrastate Effects

Plaintiffs' claims under New York's antitrust law, as well as Massachusetts and New Hampshire's CPAs, fail because Plaintiffs have failed to plead the requisite intrastate misconduct or substantial intrastate effects.

New York: Claims under New York's Donnelly Act cannot be sustained "where the conduct complained of principally affects interstate commerce, with little or no impact on local intrastate commerce." *See WorldHomeCenter.com, Inc. v. PLC Lighting, Inc.*, 851 F. Supp. 2d 494, 500-01 (S.D.N.Y. 2011); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2019 WL 1331830, at *34-35 (S.D.N.Y. Mar. 25, 2019) (dismissing Donnelly Act claim where plaintiff "fail[ed] to plausibly allege that defendants' conduct had a sufficient impact on New York commerce"). Here, Plaintiffs assert that they or unnamed class members "were injured with respect to purchases of crop protection products containing the Relevant AIs in New York" (¶ 425), but allege no facts to support that assertion or otherwise regarding the impact of Defendants' alleged conduct on intrastate commerce. Because "[t]he Complaint is devoid of any specific factual allegations" regarding an

32

impact on intrastate commerce, Plaintiffs' Donnelly Act claim should be dismissed. *See Conergy AG v. MEMC Elec. Materials, Inc.*, 651 F. Supp. 2d 51, 61-62 (S.D.N.Y. 2009).

<u>Massachusetts</u>: Conduct alleged to violate Massachusetts' consumer protection law must occur "primarily and substantially within the commonwealth."[31]  Courts interpreting this section have held that "[w]here wrongdoing is not focused on Massachusetts but has relevant and substantial impact across the country, the 'primarily' requirement of section 11 cannot be satisfied." *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 197 (1st Cir. 2012).  The complaint includes no factual allegations connecting Defendants' supposed "wrongdoing" with the state of Massachusetts.  Plaintiffs' unsupported conclusion that that "Defendants' unlawful conduct substantially affected Massachusetts' trade and commerce" (¶ 600) cannot save their claim.  *See*, *e.g., Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 690 (M.D.N.C. 2011) (noting that Rule 12(b)(6) "separates factual allegations from allegations not entitled to the assumption of truth (i.e., conclusory allegations, bare assertions amounting to nothing more than a formulaic recitation of the elements)").  Moreover,

_____

[31] Mass. Gen. Laws Ann. ch. 93A § 11.  As discussed, *infra*, since Plaintiffs do not have standing under Section 9 as non-consumers, they can only bring a claim under Section 11.

33

given that Plaintiffs allege violations of 38 states' laws and also allege that "neither company has identified a place of business or assets within Massachusetts" (¶ 603), there is no reasonable basis to conclude that the alleged wrongdoing was focused on Massachusetts. The claim under Massachusetts's CPA should be dismissed for this reason.

New Hampshire: New Hampshire's consumer protection statute requires that Defendants' alleged conduct constitute "trade or commerce within this state." N.H. Rev. Stat. Ann. § 358-A:2. This requires Plaintiffs to allege that "unfair or deceptive acts took place within New Hampshire." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1159 (N.D. Cal. 2009); *see also Precourt v. Fairbank Reconstruction Corp.*, 856 F. Supp. 2d 327, 343-44 (D.N.H. 2012) (same).

Here, Plaintiffs only allege, without support, that "Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Relevant Markets, a substantial part of which occurred within New Hampshire," that "Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of New Hampshire," and that "Defendants' unlawful conduct substantially affected New Hampshire's trade and commerce." ¶¶ 644, 646, 649. Plaintiffs fail to allege any specific conduct that occurred within the

state, and therefore, the claim under New Hampshire's consumer protection statute should be dismissed.

> ### 2. Plaintiffs Lack Standing to Sue Under the Laws of Montana and Puerto Rico, Where Antitrust Suits Are <u>Not Permitted By Indirect Purchasers</u>

Plaintiffs cannot state a claim under the laws of Montana and Puerto Rico, which do not permit antitrust lawsuits by indirect purchasers. The legislatures of Montana and Puerto Rico have not enacted an *Illinois Brick* repealer law, and courts have interpreted both states' antitrust laws harmoniously with their federal counterparts. *See, e.g., Smith*, 858 P.2d at 13-14; *Ramallo Bros. Printing v. El Dia, Inc.*, 392 F. Supp. 2d 118, 143 (D.P.R. 2005) (noting that Puerto Rico's antitrust laws "mirror the federal antitrust statutes"). Accordingly, Plaintiffs' claim under Montana and Puerto Rico antitrust laws should be dismissed.[32]

_____

[32] Courts considering the question of indirect purchaser standing under Puerto Rico's antitrust laws are divided. In the absence of a clear statement from Puerto Rico's legislature or state courts, several courts have held that *Illinois Brick* applies. *See, e.g., Staley v. Gilead Scis., Inc.*, 446 F. Supp. 3d 578, 626-28 (N.D. Cal. 2020) (dismissing indirect purchaser claims under Puerto Rico antitrust law); *United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1086-87 (N.D. Cal. 2014) (same); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1188 (N.D. Cal. 2009) (same).

35

### 3. Plaintiffs' CPA Claims Under the Laws of Five States Should Be Dismissed Because the Statutes Do Not Permit Class Actions

The CPAs of five states (Arkansas,[33] Illinois,[34] Montana,[35] South Carolina,[36] and Utah[37]) permit only suits brought in a plaintiff's individual capacity and bar class actions.

Federal Rule of Civil Procedure 23 does not negate these states' class action bars. Rule 23 "cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the

---

[33] Ark. Code Ann. § 4-88-113(f)(1); *see also Parnell v. FanDuel, Inc.*, 591 S.W.3d 315, 317 (Ark. 2019) (noting that the ADTPA expressly prohibits private class actions).

[34] When a claim brought under the Illinois Consumer Fraud Act is "actually an antitrust claim," it is barred by Section 7(2) of the Illinois Antitrust Act which provides that no person other than the Attorney General can maintain a class action on behalf of indirect purchasers asserting claims under the Antitrust Act. *See Gaebler v. N.M. Potash Corp.*, 676 N.E.2d 228, 230 (Ill. App. Ct. 1996); *In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 851 (N.D. Ill. 2020); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 539 (E.D. Pa. 2010).

[35] Mont. Code Ann. § 30-14-133(1)(a); *In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1165 (D. Minn. 2014).

[36] S.C. Code Ann. § 39-5-140(a); *Fezjulai v. Sam's W., Inc.*, 205 F. Supp. 3d 723, 727 (D.S.C. 2016).

[37] Utah's consumer protection act bars class actions for damages only, except under circumstances not applicable here. Utah Code Ann. § 13-11-19(2); *Est. of Pilgrim v. Gen. Motors LLC*, 344 F.R.D. 381, 405 (E.D. Mich. 2023).

36

scope of the state-created right." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 423 (2010) (Stevens, J., concurring).[38]  With respect to each of these states, most courts that have considered the question have concluded that these statutes "create substantive rights," and "do not establish mere rules of procedure." *Est. of Pilgrim*, 344 at 406; *see Stalvey v. Am. Bank Holdings, Inc.*, 2013 WL 6019320, at *4 (D.S.C. Nov. 13, 2013).[39]  These class action bars therefore are not preempted by Federal Rule of Civil Procedure 23, and Plaintiffs' claims under these CPAs should be dismissed.

---

[38] In *Shady Grove*, no opinion of any of the Justices received a majority of votes.  "Under standard rules of interpretation applied to plurality opinions like *Shady Grove*, a majority of courts have concluded that Justice Stevens' opinion is controlling in view of the 'narrowest grounds' principle." *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 150 F. Supp. 3d 593, 635 (D.S.C. 2015); *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011).

[39] *See also Cattle & Beef Antitrust Litig.*, 2023 WL 5310905, at *26; *In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, 2022 WL 736250, at *20 (D. Del. Mar. 11, 2022); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2017 WL 4621777, at *20 (D. Mass. Oct. 16, 2017); *In re Target Corp.*, 66 F. Supp. 3d at 1165; *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 661 n.4 (E.D. Mich. 2011).

### 4. Plaintiffs Lack Standing to Bring Claims Under CPAs That Protect Only Non-Commercial Consumers

The CPAs of the District of Columbia,[40] Massachusetts,[41] Missouri,[42]

Montana,[43] Oregon,[44] Pennsylvania,[45] Rhode Island,[46] Utah[47] and Virginia[48]

_____

[40] D.C. Code Ann. §28-3905(k)(1); *Quality Air Servs., L.L.C. v. Milwaukee Valve Co.*, 567 F. Supp. 2d 96, 103 (D.D.C. 2008); *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1043 (D.C. Cir. 2010).

[41] Massachusetts's CPA "distinguishes between 'consumer' and 'business' claims, the former actionable under [Massachusetts General Laws Chapter 93A,] § 9, [and] the latter actionable under § 11." *Frullo v. Landenberger*, 814 N.E.2d 1105, 1111 (Mass. App. Ct. 2004). Although Plaintiffs have alleged a claim under Section 9 of the CPA (¶ 602), since Plaintiffs are not consumers under Massachusetts law, they do not have standing to maintain such an action.

With respect to Section 11, under which Plaintiffs do not specifically allege that they have a claim, there is no standing for indirect purchasers, such as Plaintiffs. *See Rafferty v. Merck & Co.*, 92 N.E.3d 1205, 1223 n.7 (Mass. 2018) ("Unlike claims under § 9, claims under § 11 require not only that the defendant's conduct occur in trade or commerce but also that there be a commercial transaction between the parties."); *In re Namenda Indirect Purchaser Antitrust Litig.*, 2021 WL 2403727, at *31-32 (S.D.N.Y. June 11, 2021) ("Chapter 93A does allow indirect purchaser claims, but only if the entity is not a business and is suing under § 9, not § 11."); *see also In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1163-64 (N.D. Cal.). Accordingly, Plaintiffs' Massachusetts CPA claim should be dismissed regardless.

[42] Mo. Ann. Stat. § 407.025; *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 311 (Mo. Ct. App. 2016); *In re Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.*, 2006 WL 2632328, at *10 (E.D. Mo. Sept. 13, 2006).

[43] Mont. Code Ann. § 30-14-102(1); *In re DRAM Antitrust Litig.*, 516 F. Supp. 2d at 1113; *In re Auto. Parts Antitrust Litig.*, 2013 WL 2456612, at *30 (E.D. Mich. June 6, 2013).

38

all limit claims to goods purchased primarily for "personal, family or household purposes" and Plaintiffs' claims under those laws fail accordingly. Plaintiffs nowhere allege that the crop protection products at issue here were purchased for personal, family, or household purposes; rather, Plaintiffs contend that Defendants' conduct has "force[d] farmers like Plaintiffs to pay artificially inflated prices for the crop protection products that are essential *to their business*." ¶ 1. A farmer's purchase of an herbicide "for use on its crops in order to sell more [crops] at a better price" is a purchase "for commercial, rather than personal, family or household purposes." *Gooch v. E.I. DuPont de Nemours & Co.*, 40 F. Supp. 2d 857, 862 (W.D. Ky. 1998).

---

[44] Or. Rev. Stat. Ann. § 646.605; *Miller v. Hubbard-Wray Co.*, 630 P.2d 880, 905-906 (Or. Ct. App. 1981) (holding hay baler did not qualify as a good "obtained primarily for personal, family or household purposes" where "[t]he baler was used in plaintiff's family cattle business").

[45] 73 Pa. Stat. Ann. § 201-9.2; *Moran v. Rockwell Dev. Grp., LLC*, 2024 WL 246023, at *3 (E.D. Pa. Jan. 23, 2024).

[46] R.I. Gen. Laws § 6-13.1-5.2(a); *In re Glumetza Antitrust Litig.*, 611 F. Supp. 3d 848, 869-70 (N.D. Cal. 2020) (dismissing claim under Rhode Island's CPA because plaintiffs "were not using [the product in question] for 'personal, family, or household purposes' but rather to provide [said product] to subsequent consumers").

[47] Utah Code Ann. § 13-11-3(2)(a); *Miami Prods. & Chem. Co. v. Olin Corp.*, 546 F. Supp. 3d 223, 235 (W.D.N.Y. 2021); *see also Holmes v. Am. States Ins. Co.*, 1 P.3d 552, 557 (Utah Ct. App. 2000).

[48] Va. Code Ann. § 59.1-198; *Baker v. Elam*, 883 F. Supp. 2d 576, 578-79 (E.D. Va. 2012) (granting motion to dismiss where plaintiff failed to allege a "consumer transaction").

39

### 5. Plaintiffs' Claims Under CPAs that Prohibit Only Deceptive, Misleading, or <u>False Acts or Practices Should Be Dismissed</u>

Plaintiffs assert claims under the CPAs of thirteen states that require allegations of deceptive or misleading conduct.[49] Certain of these statutes require that the alleged conduct be "imbued with a degree of subterfuge." *See*, *e.g.*, *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 782-83 (D. Minn. 2020) (dismissing claims brought under New York's consumer protection laws). Some statutes require a plaintiff to plead both a deceptive act and that the plaintiff justifiably relied on the deceptive act. *See*, *e.g.*, *Plumbers' Loc. Union No. 690 Health Plan v. Apotex Corp.*, 2017 WL 4235773, at *7-9 (E.D. Pa. Sept. 25, 2017) (dismissing claims brought under Pennsylvania's consumer protection laws). For these reasons, claims sounding in antitrust, without more, squarely fall outside the scope of the CPAs of these twelve states.

For instance, Plaintiffs allege that Defendants engaged in "an unconscionable and deceptive practice" (¶ 528) that is prohibited by Section 107 of the Arkansas Deceptive Trade Practices Act (the "ADTPA"), Ark. Code Ann. § 4-88-107. However, courts have held that the ADTPA

---

[49] These thirteen states are Arkansas, Colorado, Illinois, Kansas, Minnesota, New York, North Dakota, Oregon, Pennsylvania, South Dakota, Utah, Virginia, and West Virginia.

40

narrowly prohibits "a **_deceptive consumer-oriented act or practice_** which is misleading in a material respect." *Skalla v. Canepari*, 430 S.W.3d 72, 82 (Ark. 2013); *accord Dickinson v. SunTrust Mortg. Inc.*, 2015 WL 1868827, at *1-2 (E.D. Ark. Apr. 23, 2015). Plaintiffs' claim under the ADTPA fails because Plaintiffs have not alleged a materially "misleading" act by Defendants. "Absent allegations of a deceptive act or practice, the complaint fails to plead an ADTPA claim upon which relief may be granted." *Dickinson*, 2015 WL 1868827, at *2.[50]

Colorado's Consumer Protection Act similarly prohibits "deceptive trade practice[s]" including "[e]ither knowingly or recklessly engag[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice." Colo. Rev. Stat. Ann. § 6-1-105(1)(rrr).[51] None of

_____

[50] Plaintiffs' claim also fails because Plaintiffs do not allege facts showing that Defendants engaged in "consumer-oriented" conduct. The complaint is devoid of allegations showing sales by Defendants to consumers, statements or advertising to consumers, or any other consumer-oriented act by Defendants relating to the rebates or otherwise. Under these circumstances, even if Plaintiffs had pleaded that Defendants deceived distributors—and Plaintiffs have not—no ADTPA claim would lie because there are no allegations that consumers were "deceived or defrauded." *Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 822 (8th Cir. 2015).

[51] Plaintiffs incorrectly cite to subsection 105(1)(rr) as the basis for their claim based on alleged "'unfair,' 'unconscionable,' or 'deceptive' practice" (¶ 542). *Compare* Colo. Rev. Stat. Ann. § 6-1-105(1)(rr) (prohibiting "[v]iolations of the provisions of part 8 of this article"), *with id.* § 6-1-105(1)(rrr) (prohibiting "[e]ither knowingly or recklessly engag[ing] in any

41

the more than seventy provisions in the statute mentions anticompetitive conduct, and only subsection 6-1-105(1)(rrr) mentions "unfair" conduct. Courts interpreting subsection 6-1-105(1)(rrr) have concluded that it "is an elucidation of what constitutes a 'deceptive trade practice'" and that "**nondeceptive unfair trade practices** are actionable only if brought under other statutory or common law causes of action such as the Colorado Antitrust Act." *In re HIV Antitrust Litig.*, 2023 WL 3006572, at *2 (N.D. Cal. Apr. 18, 2023). Here, Plaintiffs do not, and cannot, allege that Defendants have engaged in deceptive practices, let alone that any such conduct was "knowing" or "reckless." *See*, *e.g.*, *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 144 (Colo. 2003) ("[A] deceptive trade practice … requires a false statement of fact that either induces the recipient to act or has the capacity to deceive the recipient.").

Similarly, for Plaintiffs' claims under the CPAs of ten other states, beyond conclusory allegations that Defendants engaged in "deceptive acts and practices" (*see*, *e.g.*, ¶ 518)—which fail to satisfy even the minimal federal pleading standard, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)—Plaintiffs fail to allege any deceptive, misleading, or fraudulent conduct by Defendants,

---

unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice").

42

let alone any misrepresentations or omissions upon which they relied in connection with their purchase of Defendants' crop protection products. In fact, far from alleging that Defendants engaged in subterfuge through their loyalty programs, Plaintiffs allege that the loyalty programs are "an industry norm" known throughout the crop protection industry. ¶ 225. Because there is no deceptive, misleading, or fraudulent conduct alleged here, Plaintiffs' claims under state CPAs requiring more than just allegations of anticompetitive conduct should be dismissed.[52]

---

[52] *See Laughlin v. Evanston Hosp.*, 550 N.E.2d 986, 993 (Ill. 1990) (noting that the Illinois' CPA law "is a statute directed against fraud"); *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 171 N.E.3d 1192, 1197 (N.Y. 2021) ("A plaintiff must allege that … the defendant's act or practice was deceptive or misleading in a material way."); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 584 (M.D. Pa. 2009) (dismissing Kansas CPA claims because "the Supreme Court of Kansas has distinguished between consumer harms redressable thereunder and pricing harms governed by the Kansas antitrust statute"); *Cattle & Beef Antitrust Litig.*, 2023 WL 5310905, at *10 (dismissing Oregon CPA claim); *In re Pork Antitrust Litig.*, 495 F. Supp. 3d at 782-84 (dismissing New York, North Dakota, and Utah CPA claims for failure to plead that plaintiffs materially misled them or engaged in deceptive acts and, with respect to North Dakota and Virginia, failure to plead reliance); *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d at 1171-73 (dismissing Pennsylvania, South Dakota, and West Virginia CPA claims for failure to allege deceptive acts); *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 786-87 (N.D. Ohio 2011) (dismissing Pennsylvania CPA claims for failure to plead "deceptive conduct on Defendants' part or detrimental reliance"); *Nygaard v. Sioux Valley Hosp. & Health Sys.*, 731 N.W.2d 184, 197 (S.D. 2007) (holding the South Dakota CPA prohibits does not prohibit acts that are merely "unfair, discriminatory, unconscionable, unethical, immoral and oppressive"); *Rainbow Play Sys., Inc. v. Backyard Adventure, Inc.*, 2009

43

### 6. Plaintiffs' Claims Under Three States' CPAs Fail for Additional State-Specific Reasons

Plaintiffs' claims under the CPAs of Hawaii, Minnesota, and Virginia consumer protection laws fail for additional reasons specific to those states.

<u>Hawaii</u>: The CPA claim under Hawaii law should be dismissed because Plaintiffs fail to allege compliance with pre-trial notification requirements. Under Hawaii law, "claims for a violation of [the CPA] other than claims for unfair or deceptive acts or practices may be filed, and may be prosecuted on behalf of indirect purchasers by a person other than the attorney general" so long as "[a] filed copy of the complaint and all relevant supporting and exculpatory materials in possession of the proposed class representative or its counsel [is] served on the attorney general not later than seven days after filing of the complaint." Haw. Rev. Stat. Ann. § 480-13.3(a). Here, Plaintiffs specifically allege that "Defendants' conduct was an unfair method of competition within the conduct of commerce within the State of Hawaii" (¶ 575), and consequently, Plaintiffs did not "expressly limit their claim to the unfair and deceptive acts aspect of the Hawaii Antitrust Act." *In re Flash*

---

WL 3150984, at *7 (D.S.D. Sept. 28, 2009) ("[T]o recover in an action under the South Dakota [CPA], a plaintiff must have relied on the alleged misrepresentation."); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 760 (E.D. Pa. 2014) (dismissing Minnesota, Pennsylvania, and Virginia CPA claims for failure to plead deceptive or fraudulent conduct).

44

*Memory Antitrust Litig.*, 643 F. Supp. 2d at 1158; *see also In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 232-33 (M.D. Pa. 2010). Because Plaintiffs fail to allege that they provided any notice to the Hawaii state attorney general, and are indirect purchasers, *see supra* Point I.B.1, Plaintiffs' Hawaii CPA claim should be dismissed.

Minnesota: Plaintiffs fails to state a claim under the Minnesota Prevention of Consumer Fraud Act, which requires a showing of a prohibited practice "***with the intent that others rely thereon*** in connection with the sale of any merchandise." Minn. Stat. Ann. § 325F.69(1). Plaintiffs have made no such allegation regarding Defendants' intent. Moreover, "[t]o bring a claim under the Minnesota Consumer Fraud Act ('MCFA'), private plaintiffs must demonstrate that their cause of action ***benefits the public***, rather than just a discrete group of consumers." *Churlik v. Gate City Bank*, 2024 WL 453606, at *3 (D. Minn. Feb. 6, 2024). All Plaintiffs allege is that "[t]his action provides a public benefit to the people of Minnesota." ¶ 608. Courts have held that precisely this kind of conclusory allegation is insufficient to establish a private plaintiff's right to sue under the MCFA. *See*, *e.g.*, *Tharpe v. Hyundai Motor Am., Inc.*, 2022 WL 3137453, at *6 (C.D. Cal. July 12, 2022) (dismissing MCFA claim where plaintiffs "fail[ed] to allege a public benefit, stating only that '[defendant]'s unlawful act and practices described herein affect the public interest'").

45

<u>Virginia</u>: Plaintiffs seek injunctive relief under the Virginia CPA

(¶ 757), but "the Act provides no private cause of action for injunctive relief."

*Physicians Comm. for Responsible Med. v. Gen. Mills, Inc.*, 283 F. App'x 139,

142 (4th Cir. 2008). Plaintiffs' claim for injunctive relief should therefore be

dismissed.

## III.   <u>Nearly All of Plaintiffs' Claims Are Time-Barred as to Paraquat</u>

Nearly all of Plaintiffs' claims are time-barred insofar as they pertain

to Syngenta's AI paraquat, which has not been included in Syngenta's loyalty

program since before October 2017.

On June 16, 2017, the FTC approved a final order in connection with

the merger between a Syngenta affiliate (Syngenta AG) and ChemChina that

required Syngenta to exclude paraquat from its loyalty rebate program by no

later than October 1, 2017.[53] Plaintiffs do not—and cannot—allege facts

showing that Syngenta's rebate program has included paraquat since October

1, 2017.

Plaintiffs' purported class period begins on October 27, 2018 (¶ 259),

more than a year after Paraquat was removed from Syngenta's program.

And as shown, *see supra* Point II.B, Plaintiffs lack standing to assert claims

_____

[53] *See* www.ftc.gov/system/files/documents/cases/
1610093_china_national_syngenta_decision_and_order.pdf.

own their own behalf under any states' laws other than those of Arkansas, California, Florida, Illinois, Mississippi, Missouri, Tennessee, and Wisconsin. The limitation periods under the federal antitrust laws and the laws of Arkansas, California, Florida, Illinois, Mississippi, Missouri, and Tennessee are 5 years or less.[54]  Accordingly, the latest that any of these claims could have been asserted against Syngenta with respect to paraquat was October 1, 2022, nearly a year prior to the filing of Plaintiffs' complaint (and, in any event, prior to the filing of any of the private complaints naming paraquat that preceded this consolidated action).

For these reasons, all of Plaintiffs' claims other than the claim under the Wisconsin Antitrust Act[55] should be dismissed with respect to paraquat.

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed in its entirety.

_____

[54] The limitations period under the antitrust laws of Mississippi and Tennessee and the consumer protection law of Illinois is 3 years.  Miss. Code Ann. § 15-1-49; *State ex rel. Leech v. Levi Strauss & Co.*, 1980 WL 4696, at *3 (Tenn. Ch. Sept. 25, 1980); 815 Ill. Comp. Stat. Ann. § 505/10a(e).  The period under the federal laws, the antitrust and consumer protection laws of California, and the consumer protection law of Florida is 4 years.  15 U.S.C. § 15b; Cal. Bus. & Prof. Code §§ 16750.1, 17208; Fla. Stat. Ann. § 501.207.  The period under the antitrust law of Missouri and consumer protection law of Arkansas is 5 years.  Mo. Ann. Stat. § 516.120; Ark. Code Ann. § 4-88-115.

[55] Wisconsin's antitrust law has a limitations period of 6 years.  Wis. Stat. Ann. § 133.18(2).

47

Date: March 11, 2024

/s/ Patrick M. Kane

Patrick M. Kane
N.C. Bar No. 36861
pkane@foxrothschild.com
FOX ROTHSCHILD LLP
230 N. Elm Street, Suite 1200
PO Box 21927 (27420)
Greensboro, NC  27401
Telephone:  336.378.5200
Facsimile:  336.378.5400

Paul S. Mishkin*
paul.mishkin@davispolk.com
David B. Toscano*
david.toscano@davispolk.com
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4292
Facsimile: (212) 701-5292

*Specially appearing under L.R.
83.1(d)

*Attorneys for Defendants Syngenta
Crop Protection AG, Syngenta
Corporation, and Syngenta Crop
Protection, LLC*

/s/ Mark E. Anderson

Mark E. Anderson
N.C. Bar No. 15764
manderson@mcguirewoods.com
MCGUIREWOODS LLP
501 Fayetteville Street, Suite 500
Raleigh, NC 27601
Telephone:  919.755.6600
Facsimile:  919.755.6699

David R. Marriot**
dmarriott@cravath.com
Margaret T. Segall**
msegall@cravath.com
CRAVATH, SWAINE & MOORE
LLP
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

** Specially appearing under L.R.
83.1(d)

*Attorneys for Defendant Corteva, Inc.*

48

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify that the foregoing document contains 11,233 words, excluding those portions exempted by Local Rule 7.3(d).

<u>/s/ *Patrick M. Kane*</u>
Patrick M. Kane

1

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Patrick M. Kane*
Patrick M. Kane

1