# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## WINSTON-SALEM DIVISION

| | |
|---|---|
| IN RE CROP PROTECTION PRODUCTS LOYALTY PROGRAM ANTITRUST LITIGATION<br><br><br>This document relates to: ALL ACTIONS | Case No: 1:23-md-3062-TDS-JEP<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THEIR EXPERT REPORTS AND SYNGENTA'S COGS DATA** |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT........................................................................................................... 3

    I.  Defendants Should Produce Their Indisputedly Responsive and Relevant
    Expert Reports From the FTC Action .................................................. 3

        A. The Expert Reports are Discoverable as Responsive Documents to
          Plaintiffs' RFPs ............................................................... 3

        B. Plaintiffs Explicitly Preserved Rights to "Newly Created Data"
          Beyond Temporal Limitations ................................................ 5

        C.The Court Never Prohibited Expert Report Production—It Deferred
          Until Reports Existed .......................................................... 6

    II.  Syngenta's Global Entity is Subject to Plaintiffs' Discovery Requests and
    Should Produce the Granular COGS Data Under its Control ..................... 8

        A. Documents Demonstrate that Syngenta's North American Entity has
          Regular Access to the Data in the Ordinary Course of Business............. 9

        B. The Granular COGS Data are Relevant and Proportional to the
          Needs of the Case .................................. **Error! Bookmark not defined.**

    CONCLUSION ........................................................................................ 13

# TABLE OF AUTHORITIES

## Cases

*EEOC v. Sheffield Fin., LLC*,
No. 1:06-CV-00889, 2007 U.S. Dist. LEXIS 43070, 2007 WL 1726560
(M.D.N.C. June 13, 2007) .............................................................................. 12

*Frasier Healthcare Consulting, Inc. v. Grant Mem. Hosp. Reg'l Healthcare
Ctr.*,
2014 U.S. Dist. LEXIS 200079 (N.D. W. Va. Jan. 19, 2014) ................................ 9, 10

*FTC v. Syngenta Crop Prot. AG*,
711 F. Supp. 3d 545 (M.D.N.C. 2024) ........................................................ 12

*Mainstreet Collection, Inc. v. Kirkland's, Inc.*,
270 F.R.D. 238 (E.D.N.C. 2010) ................................................................ 8, 9

*Moses Enters., LLC v. Lexington Ins. Co.*,
2021 WL 329210 (S.D. W. Va. Feb. 1, 2021) ............................................... 9

*McDougal-Wilson v. Goodyear Tire & Rubber Co.*,
232 F.R.D. 246 (M.D.N.C. 2005) ................................................................ 9

*Natixis Fin. Prods. LLC v. Bank of Am., N.A.*,
2016 WL 7165981 (S.D.N.Y. Dec. 7, 2016) ............................................... 7

*Spectrum Pharms., Inc. v. Sandoz Inc.*,
2014 WL 3000130 (D. Nev. July 1, 2014) ................................................. 7

*Trigon Ins. Co. v. United States*,
204 F.R.D. 277 (E.D. Va. 2001) ................................................................ 4, 5

*Victus, Ltd. v. Collezione Europe U.S.A.*,
26 F. Supp. 2d 772 (M.D.N.C. 1998) ......................................................... 12

*Weare v. Bennett Bros. Yachts, Inc.*,
2019 WL 12267845 (E.D.N.C. Jun. 12, 2019) ......................................... 4, 5

*In re Zetia Ezetimibe Antitrust Litig.*,
No. 2:18-md-2836, 2020 U.S. Dist. LEXIS 183601 (E.D. Va. August
13, 2020) ................................................................................................... 11

## Statutes

Civil Rights Act Title VII ................................................................................................ 9

## Other Authorities

ABA SECTION OF ANTITRUST LAW, PROVING ANTITRUST DAMAGES:
    LEGAL AND ECONOMIC ISSUES (3d ed. 2017) ................................................................ 5

Fed. R. Civ. P. 26(a)(4) ............................................................................................... 4, 5

Fed. R. Civ. P. 26(b) .................................................................................................... 4, 5

Fed. R. Civ. P. 26(e)(1)(A) ................................................................................................ 6

Fed. R. Civ. P. 34 ...................................................................................................... 5, 9, 10

## PRELIMINARY STATEMENT

MDL Plaintiffs ("Plaintiffs") submit this reply in further support of their Motion to Compel Corteva and Syngenta to produce expert reports already exchanged in the coordinated FTC Action, and to compel Syngenta to produce outstanding granular costs of goods sold ("COGS") data relevant to calculating damages and measuring impact.

First, Plaintiffs seek production of expert reports that Defendants already exchanged with the FTC on August 22, 2025, analyzing the very same loyalty programs and competitive dynamics at issue here. There can be no possible argument that the reports are not relevant to this action or that producing them would be unduly burdensome. Instead, Defendants primarily argue that these reports constitute "expert discovery" in this action subject to different timing rules rather than factual documents responsive to Plaintiffs' discovery requests. Opp. p. 11 [Doc. #291]. But as set forth below, Defendants' position (1) contradicts established law treating expert reports from parallel cases as discoverable materials; (2) ignores that Plaintiffs explicitly reserved rights to newly created data materials beyond temporal discovery limitations of custodial document collection; and (3) mischaracterizes the Court's earlier procedural ruling which contemplated—not prohibited—expert report production at a later time once the reports were actually created (in other words, now).[1] For these reasons, Defendants' expert reports from the FTC Action should be produced.

---

[1]   While MDL Plaintiffs are prepared to engage in discussions regarding expert discovery coordination between the related actions with the Court, such coordination discussions are entirely separate from the relief sought here.

1

Second, Plaintiffs seek COGS data on the relevant Active Ingredients ("AIs") from a snapshot in time for 2024. Specifically, for each of the five AIs at issue, Plaintiffs seek a listing of the component materials used to manufacture each AI and each component's contribution to total material costs, either as a dollar figure or as a percentage. *See* O'Keefe Decl. ¶17 [Doc. #279-1]. Syngenta argues (1) the data do not exist in the United States and production would be overly burdensome, requiring creation of new "bespoke data;" and (2) the data are not relevant. Opp. p. 14. On both counts, Syngenta's attempt to evade its discovery obligations misses the mark.

With respect to burden, Syngenta Crop Protection AG ("Syngenta AG")—the global Syngenta crop protection entity—is a party to this case and subject to the rules of discovery. O'Keefe Reply Decl. Ex. 7 (Hawkins Dep. 13:7-9) ("Q: And is the global crop protection business Syngenta Crop Protection AG? A: I believe that's its official name."). However, in their carefully-worded filings, Defendants restrict their claims of burden to Syngenta Crop Protection LLC ("Syngenta LLC")—the North American Syngenta entity—and do not appear even to have ***investigated*** whether Syngenta AG can produce the requested data, let alone provided concrete evidence to substantiate any claim of burden for that entity. Unsurprisingly, documents produced in discovery reveal that Syngenta LLC makes ***regular use*** of granular COGS data in the ordinary course of its own business. Syngenta could hardly do so if the data were "bespoke" or overly burdensome to produce. If the data is accessible enough for Syngenta's routine use, it is also accessible enough to produce to Plaintiffs.

2

As for relevance, Syngenta's arguments are even weaker. Plaintiffs allege they were overcharged for crop protection products containing the relevant AIs as a result of Defendants' loyalty program. The granular COGS data Plaintiffs seek will enable Plaintiffs to understand how the costs that go into manufacturing at-issue AIs affect the price that growers ultimately pay for products containing those AIs. They are therefore relevant for Plaintiffs' showing that anticompetitive loyalty programs—and *not* underlying costs—cause growers in the United States to pay inflated prices. Because the requested data are relevant and proportional to the needs of the case, the Motion to Compel should be granted and Syngenta's COGS data should be produced.

## <u>ARGUMENT</u>

I. **DEFENDANTS SHOULD PRODUCE THEIR INDISPUTABLY RESPONSIVE AND RELEVANT EXPERT REPORTS FROM THE FTC ACTION.**

Plaintiffs moved to compel expert reports that Defendants served in the parallel FTC Action on August 22, 2025. These reports analyze the very same loyalty programs, market definitions, and anticompetitive effects at issue here. Defendants concede (as they must) relevance, but oppose production, claiming these materials constitute improper "expert discovery"—which is not a permissible reason to refuse to produce a document under the Federal Rules and fails for multiple independent reasons.

A. **The Expert Reports are Discoverable as Responsive Documents to Plaintiffs' RFPs.**

Defendants' central argument—that expert reports submitted in a related action are exempt from production—misconstrues both the nature of these documents and

3

3

Case 1:23-md-03062-TDS-JEP    Document 394    Filed 09/10/25    Page 7 of 20


As for relevance, Syngenta's arguments are even weaker. Plaintiffs allege they were overcharged for crop protection products containing the relevant AIs as a result of Defendants' loyalty program. The granular COGS data Plaintiffs seek will enable Plaintiffs to understand how the costs that go into manufacturing at-issue AIs affect the price that growers ultimately pay for products containing those AIs. They are therefore relevant for Plaintiffs' showing that anticompetitive loyalty programs—and *not* underlying costs—cause growers in the United States to pay inflated prices. Because the requested data are relevant and proportional to the needs of the case, the Motion to Compel should be granted and Syngenta's COGS data should be produced.

## <u>ARGUMENT</u>

I. **DEFENDANTS SHOULD PRODUCE THEIR INDISPUTABLY RESPONSIVE AND RELEVANT EXPERT REPORTS FROM THE FTC ACTION.**

Plaintiffs moved to compel expert reports that Defendants served in the parallel FTC Action on August 22, 2025. These reports analyze the very same loyalty programs, market definitions, and anticompetitive effects at issue here. Defendants concede (as they must) relevance, but oppose production, claiming these materials constitute improper "expert discovery"—which is not a permissible reason to refuse to produce a document under the Federal Rules and fails for multiple independent reasons.

A. **The Expert Reports are Discoverable as Responsive Documents to Plaintiffs' RFPs.**

Defendants' central argument—that expert reports submitted in a related action are exempt from production—misconstrues both the nature of these documents and

Case 1:23-md-03062-TDS-JEP    Document 394    Filed 09/10/25    Page 7 of 20

established discovery principles. Expert reports analyzing business conduct, whether in parallel proceedings or within the same action, are routinely discoverable as part of fact discovery, regardless of expert discovery schedules.

Defendants' effort to distinguish *Trigon Ins. Co. v. United States*, 204 F.R.D. 277 (E.D. Va. 2001), as involving expert materials from the same case misses the point. *Trigon* makes clear that existing expert materials responsive to fact discovery requests are discoverable. *Id.* at 289 (finding the document requests—"fairly read and given their ordinary meaning"—encompass expert materials and make them discoverable). Similarly, Defendants' expert reports exchanged in the FTC action are plainly encompassed by Plaintiffs' document requests, fairly read and giving their ordinary meaning, including RFP 46 (seeking "Studies or Analyses, Concerning the anticompetitive or competitive effects of the Loyalty Programs"), RFP 61 (seeking "economic analyses of Your Loyalty Programs"), and RFP 62 (seeking economic models "used to calculate market share and market power" and "anti-competitive effects" of the loyalty programs). [Doc. #280-2]

Defendants' attempt to distinguish *Weare v. Bennett Bros. Yachts, Inc.*, No. 17-CV-155, 2019 WL 12267845 (E.D.N.C. June 12, 2019), is likewise unavailing. In *Weare*, the party seeking expert reports from a parallel arbitration had only recently become aware of the proceedings. *See* 2019 WL 12267845 at *1. The key issue was whether those expert reports constituted discoverable factual documents responsive to document requests under Rule 34—exactly what Plaintiffs seek here. *See id.* at *2. The court compelled production because the reports were responsive to the party's document

4

Case 1:23-md-03062-TDS-JEP   Document 304   Filed 09/10/25   Page 8 of 20

requests, not because of expert discovery deadlines. *See id.* at *4 ("Expert material may be discoverable under Rule 26(b) as responsive to a discovery request even though it is not a required disclosure under Rule 26(a)(4)." (citing *Trigon*, 204 F.R.D. at 282).

### B. Plaintiffs Explicitly Preserved Rights to "Newly Created Data" Beyond Temporal Limitations.

Defendants ignore that Plaintiffs explicitly preserved rights to ongoing analytical materials beyond the temporal limitations for custodial discovery. Critically, on March 4, 2025, after negotiations on custodial document collection had concluded, Plaintiffs sent an email to Corteva and Syngenta stating:

> "As you know, the MDL complaint contemplates damages until the complained-of activities cease, which extends through at least the present. **Plaintiffs are thus entitled to newly created data on a rolling basis**, including up to trial as close as is practical, to maximize the proportion of the damages period that is based on actual data... **We believe our extant document and data requests incorporate this forthcoming production**." Ex. 5 hereto (emphasis added).

Defendants' response to Plaintiffs is telling—they did not reject this position or claim all discovery was temporally limited. Instead, they stated they would "respond at the appropriate time to any such request if and when it is raised by Plaintiffs." *Id*. This demonstrates Defendants understood Plaintiffs had preserved their rights to materials beyond the temporal compromise for custodial searches.

Additionally, Defendants argue that Plaintiffs improperly seek expert reports after fact discovery closed. *See* Opp. 11-12; [Doc. #291-4]. This argument fails for a fundamental reason: Plaintiffs could not have sought documents that did not yet exist. Plaintiffs could not have filed a motion to compel for Defendants' expert reports before

July 29, 2025, the close of fact discovery, because Defendants did not exchange their expert reports in the related FTC action until August 22, 2025.

Moreover, the Court explicitly anticipated this scenario. When setting the August 29, 2025, deadline for motions to compel, the Court noted that "those expert report deadlines are going to happen before any motions to compel are filed." [Doc. #267, July 16, 2025 Hr'g Tr. at 28:8-9] This demonstrates the Court's understanding that Defendants' expert materials served in the FTC Action might give rise to discovery disputes requiring resolution in this action.

The August 2025 expert reports fall squarely within this preserved category of "newly created data" analyzing ongoing anticompetitive conduct and are discoverable as part of Defendants' continued obligation to supplement fact discovery under Rule 26(e)(1)(A).

## C. The Court Never Prohibited Expert Report Production—It Deferred Until Reports Existed.

While relevant to illustrate how the FTC and MDL action are related, the Coordination Order itself is not what gives rise to Plaintiffs' Motion to Compel. On the contrary, the Coordination Order expressly did *not* address expert discovery. During the May 23, 2024 Initial Pretrial Conference, the Court stated: "I would not assume or presume to make any determination about access to expert reports now. I don't think there is any reason to." [Doc. 130, May 23, 2024, Hr'g Tr. at 90:11-13]. The Court explained that "there may be some reasons why there may be particular expert reports or information that would be appropriate to share here," *id.* at 115:24-116:1, and specifically

reserved ruling until after knowing "what the actual expert reports are" and "what the issues are that we might need to consider." *Id.* at 116:1-5.

Contrary to Defendants' assertions, Plaintiffs' request for Defendants' expert reports filed in the FTC Action is not an effort to circumvent the Court's orders, nor an effort to untimely extend fact discovery. Defendants' complaint about "unfair advantage" inadvertently reveals the profound unfairness of their position—they seek to maintain information asymmetry while potentially advancing inconsistent positions across parallel proceedings concerning the same underlying conduct. This creates an intolerable situation where Defendants could assert one market definition in the FTC Action while preparing a contradictory theory in this action, cherry-picking their strongest arguments while abandoning vulnerable theories, all while keeping private Plaintiffs in this action unaware of these inconsistencies.[2] The policy against selective disclosure and inconsistent positions supports production, not shielding. Denying production would prejudice Plaintiffs and undermine judicial efficiency, while the burden on Defendants is nonexistent.

---

[2] *Spectrum* and *Natixis* are inapposite: those out-of-circuit decisions addressed preventing access to expert reports through public court filings in ***uncoordinated*** actions, *see Spectrum Pharms., Inc. v. Sandoz Inc.*, 2014 WL 3000130, at *1-2 (D. Nev. July 1, 2014), or compelling disclosure of ***third-party*** materials in another proceeding. *See Natixis Fin. Prods. LLC v. Bank of Am., N.A.*, 2016 WL 7165981, at *3-5 (S.D.N.Y. Dec. 7, 2016). Neither case involved a motion to compel production based on expert reports that Defendants had already exchanged in an actively coordinated proceeding.

## II. SYNGENTA'S GLOBAL ENTITY IS SUBJECT TO PLAINTIFFS' DISCOVERY REQUESTS AND SHOULD PRODUCE THE GRANULAR COGS DATA UNDER ITS CONTROL.

With respect to this request for COGS data, Syngenta appears to have unilaterally limited its efforts to Syngenta LLC. There is nothing in Defendants' filings to indicate that counsel has ever even consulted Syngenta AG—the global crop protection entity which presumably manufactures the AIs in question and sells them to Syngenta LLC—to discern whether Syngenta AG can identify the material components of the AIs and their relative contribution to the overall cost.

Syngenta AG is still a live defendant in this action responsible for responding to discovery requests. *See, e.g.,* Doc. #215, Mem. Op. and Ord. (Jan. 28, 2025). Yet counsel for Syngenta have carefully tailored their voluminous denials of access to COGS data to Syngenta's operations in the United States alone, making statements like "[a]s such, it is not possible for Syngenta to provide the data requested by MDL Plaintiffs on August 29, 2025 without investigating sources outside of the United States, which would be an extensive and highly burdensome process that Syngenta would have to begin from scratch." Miller Decl. ¶13 [Doc. #291-1]; *see also id.* at ¶¶3, 6, 7, 11 (restricting efforts to Syngenta's U.S. entity). It provides no details at all about what that "extensive and highly burdensome process" would involve. Such conclusory statements do not suffice to avoid Syngenta's discovery obligations. *See Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010) ("the party resisting discovery bears the burden of showing why it should not be granted," with a "particularized showing of why discovery

should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law").

Syngenta's assertion that this Court and others have already ruled on the burden of producing additional data, Opp. 15-16, also misses the mark.[3] Unlike prior requests, Plaintiffs do not seek a broad dataset of sales, profits, prices, etc., and do not seek data on any AIs other than those five that are the subject of litigation. Plaintiffs' request is well-defined, tailored to the needs of their experts, and unrelated to any earlier requests for comparator data from another geographic area. Common sense dictates that Syngenta AG should be able to identify the component materials of the AIs it manufactures and their relative costs at a specific point in time. O'Keefe Reply Decl. Ex. 7 (Hawkins Dep. 11:18-13:9) (Syngenta AG is the global crop protection business to which each geographic region reports). Syngenta has not presented any valid excuse for why it has failed to do so.

### A. Documents Demonstrate that Syngenta's North American Entity has Regular Access to the Data in the Ordinary Course of Business.

Notwithstanding Defendants' claim that the "data do not exist in, and are not directly accessible from, the United States," Opp. 15, documents produced in discovery reveal that employees in the United States use it in the ordinary course of business.

---

[3] Syngenta's cited cases do not help its argument. In *McDougal-Wilson v. Goodyear Tire & Rubber Co.*, the court limited the geographic and temporal scope of discovery to be in line with the terms of a 30(b)(6) deposition, and to the specific areas and times where employees were alleged to have violated Title VII of the Civil Rights Act. 232 F.R.D. 246, 249-252 (M.D.N.C. 2005). Likewise in *Moses Enters., LLC v. Lexington Ins. Co.,* the court limited the geographic scope of several overbroad 30(b)(6) deposition topics. 2021 WL 329210 (S.D. W. Va. Feb. 1, 2021). Plaintiffs' request does not require Syngenta to prepare or defend a 30(b)(6) deposition, merely to produce data already in its possession.

9

Because Syngenta has control over the requested data it should be produced. *Frasier Healthcare Consulting, Inc. v. Grant Mem. Hosp. Reg'l Healthcare Ctr.*, 2014 U.S. Dist. LEXIS 200079, at *12 (N.D. W. Va. Jan. 19, 2014) ("The term 'control' is liberally construed, and the applicable test under Rule 34 is whether the litigant has the ability to obtain documents upon reasonable request, either as a matter of law or as a matter of practical fact.") (quotations omitted).

Syngenta's own documents make clear that employees can and do obtain breakdowns of the material costs which go into manufacturing the AIs at issue. For example, the charts below show changes in cost of goods sold year-over-year, with specific references to changes in raw material component costs for relevant AIs:





O'Keefe Reply Decl. Ex. 5 at  -843, -855; *see also* Exs. 4, 6. Because Syngenta has the ability to obtain the data upon reasonable request, it should be produced.

**B. The Granular COGS Data are Relevant and Proportional to the Needs of the Case.**

In the antitrust context, injury occurs the moment a plaintiff incurs an overcharge. *In re Zetia Ezetimibe Antitrust Litig.*, No. 2:18-md-2836, 2020 U.S. Dist. LEXIS 183601, at *58 (E.D. Va. August 13, 2020). A manufacturer's product costs at the top of the distribution chain are relevant for calculating the amount of overcharge and the amount of overcharge passed on through the distribution chain to indirect purchaser plaintiffs. *See* ABA, Proving Antitrust Damages 270-71 (3d ed. 2017) (citing case where indirect purchasers' expert utilized product costs at start of distribution chain as variable in regression analysis).

11

Here, granular COGS data can help Plaintiffs' experts model the prices which would have been charged for crop protection products in the absence of Defendants' loyalty programs. By controlling for fluctuations in the cost of goods sold, among other factors, Plaintiffs' experts will demonstrate that without the at-issue loyalty programs, growers in the U.S. would have paid less for crop protection products. In short, the COGS data are relevant for showing overcharge and anticompetitive injury. *EEOC v. Sheffield Fin., LLC*, No. 1:06-CV-00889, 2007 U.S. Dist. LEXIS 43070, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007) (relevance is "broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party").

COGS data may also aid analysis of relevant antitrust product markets. The Hypothetical Monopolist Test, which courts recognize as relevant for defining product markets, commonly relies upon modeling the demand for candidate products. *See Victus, Ltd. v. Collezione Europe U.S.A.*, 26 F. Supp. 2d 772, 786 (M.D.N.C. 1998) (applying the test); *FTC v. Syngenta Crop Prot. AG*, 711 F. Supp. 3d 545, 567 (M.D.N.C. 2024) (collecting cases). This, in turn, requires information about factors determining the costs of producing the candidate products, including raw materials.

The generalized data which Syngenta did produce make it more difficult to extrapolate the changes in the cost of goods sold over time. Thus, in the alternative, if Syngenta later succeeds in making the requisite particularized showing over burden, Plaintiffs respectfully request that Syngenta be precluded from challenging Plaintiffs' expert reports on the grounds that the Plaintiff experts' empirical models fail to include

12

appropriate raw material inputs into production of the named AIs. Otherwise, the data are clearly proportional to the needs of the case and should be produced.

<u>**CONCLUSION**</u>

For the reasons outlined above, Plaintiffs respectfully ask this Court to enter an Order compelling Defendants to produce their Opening Expert Reports in the FTC Action and Syngenta to produce data identifying: (1) each of the Component Materials that contribute to the total dollar figures contained in Column D of Exhibit 3 to the O'Keefe Declaration [Doc. ##279-3/283] ; and (2) for each such Component Material, the amount of cost associated with that Component Material as either a dollar amount contribution or percentage contribution to the total Material Costs figures reflected in Column D of Exhibit 3 to O'Keefe Declaration. In the alternative to compelling Syngenta to produce COGS data, Plaintiffs respectfully request that Syngenta be precluded from challenging Plaintiffs' expert reports on the grounds that the Plaintiff experts' empirical models fail to include appropriate raw material inputs into production of the named AIs.

Dated: September 19, 2025

<table>
<tr><td>

/s/ Daniel L. Brockett
Daniel L. Brockett (pro hac vice)
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel. (212) 849-7345
Facsimile (212) 849-7100
danbrockett@quinnemanuel.com
*Interim Class Counsel*

Jeremy Andersen (pro hac vice)
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel. (213) 443-3685
Facsimile (213) 443-3100
jeremyandersen@quinnemanuel.com
*Interim Class Counsel*

Aj Aiqiao Wood (pro hac vice)
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, D.C. 20005
Tel. (202) 583-8100
ajaiqiaowood@quinnemanuel.com
*Interim Class Counsel*

/s/ Vincent Briganti
**LOWEY DANNENBERG, PC**
Vincent Briganti (pro hac vice)
Christian Levis (pro hac vice)
Margaret MacLean (pro hac vice)
Roland R. St. Louis, III (pro hac vice)
Nicole A. Veno (pro hac vice)
44 South Broadway, Suite 1100
White Plains, New York 10601
Tel. (914) 997-0500
Fax: (914) 997-0035

</td><td>

/s/ Jay J. Chaudhuri
Jay J. Chaudhuri
N.C. State Bar No. 27747
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
50 Fayetteville St., Suite 980
Raleigh, NC 27601
Telephone (919) 890-0560
Facsimile (919) 890-0567
jchaudhuri@cohenmilstein.com
*Interim Class Counsel*

Michael B. Eisenkraft (pro hac vice)
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
88 Pine Street, 14th Floor
New York, New York 10005
Telephone (212) 838-7797
Facsimile (212) 838-7745
meisenkraft@cohenmilstein.com
*Interim Class Counsel*

Nina Jaffe-Geffner (pro hac vice)
Zachary Glubiak (pro hac vice)
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
1100 New York Avenue, Suite 500, NW
Washington D.C. 20005
Tel: (202) 408-4600
njaffegeffner@cohenmilstein.com
zglubiak@cohenmilstein.com
*Interim Class Counsel*

</td></tr>
</table>

14

vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
rstlouis@lowey.com
nveno@lowey.com
*Interim Class Counsel*

/s/ Lyn K. Broom
Richard L. Pinto N.C. State Bar No. 9412
Kenneth Kyre, Jr. N.C. State Bar No. 7848
Lyn K. Broom N.C. State Bar No. 17674
**PINTO COATES KYRE & BOWERS,
PLLC**
3202 Brassfield Road
Greensboro, NC 27410
Tel: (336) 282-8848
Facsimile: (336) 282-8409
rpinto@pckb-law.com
kkyre@pckb-law.com
lbroom@pckb-law.com
*Liaison Counsel*

*/s/ Carol O'Keefe*
Carol O'Keefe (pro hac vice)
Ian Moody (pro hac vice)
**KOREIN TILLERY LLC**
505 N 7th St #3600,
St. Louis, MO 63101
Tel: (314) 241-4844
cokeefe@koreintillery.com
imoody@koreintillery.com
*Interim Class Counsel*

George Zelcs (pro hac vice)
Rosemarie Fiorillo (pro hac vice)
Randall P. Ewing, Jr. (pro hac vice)
Chad E. Bell (pro hac vice)
Labeat Rrahmani (pro hac vice)
**KOREIN TILLERY LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Tel: (312) 641-9750
gzelcs@koreintillery.com
rfiorillo@koreintillery.com
rewing@koreintillery.com
cbell@koreintillery.com
lrrahmani@koreintillery.com
*Interim Class Counsel*

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that the foregoing brief in the unredacted form to be filed with the Court under seal complies with Local Rule 7.3(d)(1) as reported by the word processing software and excluding those portions exempted by the rule.

Dated: September 19, 2025

/s/ Lyn K. Broom
Lyn K. Broom
**PINTO COATES KYRE &
BOWERS, PLLC**
3202 Brassfield Road
Greensboro, NC 27410
Tel: (336) 282-8848
Facsimile: (336) 282-8409

16

# EXHIBIT 5


**RE: In re: Crop Protection Products Loyalty Program Antitrust Litigation, No.1:23-md-03062-TDS-JEP (M.D.N.C.)**

**From** Sud, Akhil <akhil.sud@davispolk.com>

**Date** Wed 3/19/2025 9:42 AM

**To** Rrahmani, Labeat <LRrahmani@KoreinTillery.com>; CropProtectionLitigation@lists.cravath.com <CropProtectionLitigation@lists.cravath.com>; dmarriott@cravath.com <dmarriott@cravath.com>; Claire Gianotti <cgianotti@cravath.com>; Kallen Dimitroff <kdimitroff@cravath.com>; 'Lavinia Hecht' <LHecht@cravath.com>; syngenta.rebatelit <Syngenta.rebatelit@davispolk.com>; PKane@foxrothschild.com <PKane@foxrothschild.com>; McClammy, James I. <james.mcclammy@davispolk.com>; Miller, Benjamin M. <benjamin.miller@davispolk.com>; Thomson, Daniel J. <daniel.thomson@davispolk.com>; Soussan, Susan <susan.soussan@davispolk.com>; Stewart, Sharila <sharila.stewart@davispolk.com>; Ziser Smith, Caroline <caroline.zisersmith@davispolk.com>

**Cc** cropsmdlplaintiffs@lowey.com <cropsmdlplaintiffs@lowey.com>; CropsMDLPlaintiffs <CropsMDLPlaintiffs@KoreinTillery.com>; CropsMDLPlaintiffs <cropsmdlplaintiffs@quinnemanuel.com>; cropsmdlplaintiffs@cohenmilstein.com <cropsmdlplaintiffs@cohenmilstein.com>; cropsmdlplaintiffs@pckb-law.com <cropsmdlplaintiffs@pckb-law.com>

[EXTERNAL EMAIL from akhil.sud@davispolk.com]

---

Labeat,

We write on behalf of Syngenta and Corteva (together, "Defendants") in response to your email below. Defendants reserve all rights with regard to any request for additional data, and will respond at the appropriate time to any such request if and when it is raised by Plaintiffs.

Regards,
Akhil

**Akhil Sud**

**Davis Polk & Wardwell LLP**
+1 212 450 3075 office
+1 646 659 0072 mobile
akhil.sud@davispolk.com

**From:** syngenta.rebatelit <syngenta.rebatelit-bounces@davispolk.com> **On Behalf Of** Rrahmani, Labeat via syngenta.rebatelit
**Sent:** Tuesday, March 4, 2025 6:23 PM
**To:** CropProtectionLitigation@lists.cravath.com; dmarriott@cravath.com; Claire Gianotti <cgianotti@cravath.com>; Kallen Dimitroff <kdimitroff@cravath.com>; 'Lavinia Hecht' <LHecht@cravath.com>; syngenta.rebatelit <Syngenta.rebatelit@dpw.com>; PKane@foxrothschild.com; McClammy, James I. <james.mcclammy@davispolk.com>; Miller, Benjamin M. <benjamin.miller@davispolk.com>; Thomson, Daniel J. <daniel.thomson@davispolk.com>; Soussan, Susan <susan.soussan@davispolk.com>; Stewart, Sharila <sharila.stewart@davispolk.com>; Ziser Smith, Caroline <caroline.zisersmith@davispolk.com>
**Cc:** cropsmdlplaintiffs@lowey.com; CropsMDLPlaintiffs <CropsMDLPlaintiffs@KoreinTillery.com>; cropsmdlplaintiffs@quinnemanuel.com; cropsmdlplaintiffs@cohenmilstein.com; cropsmdlplaintiffs@pckb-law.com

**Subject:** In re: Crop Protection Products Loyalty Program Antitrust Litigation, No.1:23-md-03062-TDS-JEP (M.D.N.C.)

Counsel,

As you know, the MDL complaint contemplates damages until the complained-of activities cease, which extends through at least the present.  Plaintiffs are thus entitled to newly created data on a rolling basis, including up to trial as close as is practical, to maximize the proportion of the damages period that is based on actual data.

In order to avoid piecemeal productions, this production should proceed after both class certification and summary judgment.  We believe our extant document and data requests incorporate this forthcoming production.  That being said, to avoid any confusion, we are putting defendants on notice that, should we not receive that production after summary judgment and class certification, we will move to compel at that point.

Sincerely,

Labeat


Labeat Rrahmani
**Korein Tillery**
205 N Michigan Avenue, Suite 1950
Chicago, IL 60601
312-641-9750
https://www.koreintillery.com

----------------------------
This message is from a law firm and may contain privileged or confidential information for the sole use of the intended recipient(s). If you believe that you have received this email in error, please notify the sender immediately and delete it from your system. If you have received this email in error, you do not have permission to forward, print, copy or distribute or use the information in this message.
----------------------------

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON-SALEM DIVISION**

| | |
|---|---|
| IN RE CROP PROTECTION PRODUCTS LOYALTY PROGRAM ANTITRUST LITIGATION | Case No: 1:23-md-3062-TDS-JEP |
| | **DECLARATION OF CAROL O'KEEFE IN SUPPORT OF PLAINTIFFS' REPLY MOTION TO COMPEL PRODUCTION OF SYNGENTA'S COGS DATA** |
| This document relates to: ALL ACTIONS | |

I, Carol O'Keefe, hereby declare as follows:

1.      I am a Partner at Korein Tillery LLC, counsel for MDL Plaintiffs in the above-captioned matter.  I am a member in good standing of the New York, Missouri, and Illinois State Bars and am admitted to practice before several United States District Courts, including the Western and Southern Districts of New York, the Northern District of Illinois, and the District of Colorado.

2.      I respectfully submit this declaration in response to Syngenta Defendants' ("Syngenta") Opposition, and in support of Plaintiffs' Reply Motion to Compel Syngenta's Production of Certain Data Concerning Cost of Goods Sold for the Relevant Active Ingredients.

3.      I make this declaration on my own personal knowledge and, if called upon as a witness to do so, I could and would competently testify as to the matters set forth herein.

4.      Attached hereto as **<u>Exhibit 4</u>** is a true and correct copy of a document produced in this litigation by Syngenta from the custodial files of Jeff Cecil and Christian Lippuner, bearing the Bates stamp SYT_REBATELIT_00120441.

5.      Attached hereto as **Exhibit 5** is a true and correct copy of a document produced in this litigation by Syngenta from the custodial files of Vern Hawkins, Jeff Cecil, Jennifer Jackson, and the Crop Protection Leadership Team, bearing the Bates stamp SYT_REBATELIT_00023810.

6.      Attached hereto as **Exhibit 6** is a true and correct copy of a document produced in this litigation by Syngenta from the custodial files of Jennifer Jackson, bearing the Bates stamp SYT_REBATELIT_00575776.

7.      Attached hereto as **Exhibit 7** is a true and correct excerpt of pages 1-13 from the transcript of the deposition of Vern Hawkins, President of Syngenta Crop Protection LLC, taken March 4, 2025.

8.      Syngenta has designated Exhibits 4, 5, 6, and 7 as "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY" pursuant to the governing protective order. The foregoing exhibits will be filed with the Court under seal.

I declare under penalty of perjury under the laws of the State of Missouri and the United States that the foregoing is true and correct.

Executed on September 18, 2025, in St. Louis, Missouri.

*/s/ Carol O'Keefe*
Carol O'Keefe
**Korein Tillery, LLC**
505 N. 7th St. #3600
St. Louis, MO 63101
Tel: (314) 241-4844
cokeefe@koreintillery.com

3

# Exhibit 4 to O'Keefe Reply Declaration

(Being Filed Under Seal In Paper Form in the Clerk's Office)

# Exhibit 5 to O'Keefe Reply Declaration

(Being Filed Under Seal In Paper Form in the Clerk's Office)

# Exhibit 6 to O'Keefe Reply Declaration

(Being Filed Under Seal In Paper Form in the Clerk's Office)

# Exhibit 7 to O'Keefe Reply Declaration

(Being Filed Under Seal In Paper Form in the Clerk's Office)